1  Bryan J. Freedman, Esq. (SBN 151990)
       bfreedman@ftllp.com
2  September Rea (SBN 261121)
       srea@ftllp.com
3  FREEDMAN & TAITELMAN, LLP
   1901 Avenue of the Stars, Suite 500
4  Los Angeles, CA  90067
   Telephone: (310) 201-0005
5  Facsimile: (310) 201-0045

6  Attorneys for Defendants Keenen Ivory Wayans,
   Shawn Wayans, Marlon Wayans,
7  Wayans Bros. Productions, and
   SMP, LLC incorrectly named St. Martin's
8  Press, Inc. (now known as SMP (1952) Inc.)

9

10                  **UNITED STATES DISTRICT COURT**

11                  **CENTRAL DISTRICT OF CALIFORNIA**

12

13  JARED EDWARDS,                      )  CASE NO. 2:10-cv-02231 R (RCX)
                                        )
14                      Plaintiff       )  [*Honorable Manuel Real,*
                                        )  *Courtroom 8, USDC - Central District*]
15                                      )
                                        )
16  vs.                                 )  **NOTICE OF MOTION AND JOINT**
                                        )  **MOTION FOR SUMMARY**
17                                      )  **JUDGMENT PURSUANT TO FED.**
                                        )  **R. CIV. P. 56(b), OR IN THE**
18  KEENEN IVORY WAYANS,               )  **ALTERNATIVE, MOTION FOR**
    SHAWN WAYANS, MARLON               )  **SUMMARY ADJUDICATION;**
19  WAYANS, WAYANS BROTHERS            )  **MEMORANDUM OF POINTS AND**
    PRODUCTIONS, AND ST.               )  **AUTHORITIES**
20  MARTIN'S PRESS, INC.,              )
                                        )
21                                      )  Date:  January 18, 2011
                                        )  Time:  10:00 a.m.
22                      Defendants.     )  Location.: Courtroom 8
                                        )
23                                      )
                                        )  [Filed Concurrently With Statement of
24                                      )  Uncontroverted Facts and Conclusions
                                        )  of Law; Declarations of Jay S. Glick,
25                                      )  September Rea and Elizabeth Beier;
                                        )  Request for Judicial Notice and
26                                      )  [Proposed] Order Granting Summary
                                        )  Judgment]
27
28  _____

                                     1

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on January 18, 2011, at 10:00 a.m., or as soon thereafter as this matter may be heard, before the Honorable Manuel Real in Courtroom 8 of the United States District Court located at 312 N. Spring Street, Los Angeles, California, 90012, defendants Keenen Ivory Wayans, Shawn Wayans, Marlon Wayans, and Wayans Bros. Productions (hereinafter the "Wayans") and St. Martin's Press, Inc. (now known as SMP (1952) Inc.) ("SMP") (collectively "Defendants") will, and hereby do, move jointly and severally for summary judgment with respect to all claims and causes of action asserted in Plaintiff Jared Edwards's ("Plaintiff") Complaint pursuant to Federal Rule of Civil Procedure 56(b) on the following grounds:

1.     Plaintiff's first cause of action for violation of the Copyright Act of 1976 (the "Act") fails as a matter of law against all Defendants because Plaintiff has not presented any evidence to rebut the presumption that the Wayans exclusively owned the copyright to the subject work under the work for hire doctrine and as a result, neither the Wayans nor SMP violated the Act by contracting to publish the work.  Further, and in the alternative, to the extent Plaintiff independently contributed to the work (as he claims) it was to create a "joint work" co-authored by the Wayans and Plaintiff.  As a result, the Wayans owned an undivided interest in the work so that there has been no infringement by the Wayans or SMP.

2.     Plaintiff's second cause of action for unfair competition under state law fails as to all Defendants because it is preempted by federal copyright law.  To the extent that the Court finds that the claim survives preemption, the unfair competition claim still fails as a matter of law because Plaintiff has not presented any evidence that any of the named Defendants engaged in unfair, unlawful, or fraudulent business practices.

///

3.      Plaintiff's third cause of action for breach of implied contract fails as to all Defendants because it is preempted by federal copyright law.  To the extent that the Court finds that the claim survives preemption.  Plaintiff cannot provide prima facie evidence to support all of the elements of a breach of implied in fact contract claim.

To the extent the Court declines to grant this motion for summary judgment as to all Defendants on all claims, Defendants move, jointly and severally, in the alternative for an order summarily adjudicating what types of damages Plaintiff may recover.  This motion for summary adjudication is made on the following grounds:

1.      As a matter of law, Plaintiff is not entitled to statutory damages or recovery of attorneys' fees under the Act because it is undisputed that the unpublished work was not registered with the United States Copyright Office at the time of the alleged infringement as required by the Act (17 U.S.C. § 412);

2.      As a matter of law, Plaintiff's recovery for unfair competition is limited to restitutionary relief and injunctive relief.  Plaintiff cannot recover damages (including punitive damages) or attorneys' fees pursuant to an unfair competition claim; *and*

3.      As a matter of law, Plaintiff is not entitled to attorneys' fees or punitive damages for breach of implied in fact contract.

The motion is based upon this Notice and Motion for Summary Judgment, the attached Memorandum of Points and Authorities, the accompanying Separate Statement of Undisputed Facts and Conclusions of Law; Declarations of Elizabeth Beier, September Rea, Jay S. Glick, and Paul Sleven, the Joint Request to Take Judicial Notice, all other pleadings and papers on file herein, and on such oral argument and other evidence as may be allowed by the Court at the time of the hearing on this Motion.

*///*

NOTICE OF MOTION AND JOINT MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES

1

Dated: December 17, 2010        FREEDMAN & TAITELMAN, LLP

2

By:   ___/s/_____

3

Bryan J. Freedman, Esq.
September Rea, Esq.

4

Attorneys for Defendants Keenen Ivory Wayans,
Shawn Wayans, Marlon Wayans, Wayans Bros

5

Productions, and St. Martin's Press, Inc. (now known as
SMP (1952) Inc.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND JOINT MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES

# **TABLE OF CONTENTS**

I.     **Introduction** ................................................................................. 1

II.    **Statement of Facts** ........................................................................ 1

    A.   Parties to the Action ................................................................. 1

    B.   Plaintiff's Employment Relationship with Wayans Defendants ............ 1

    C.   The Wayans Developed the 101 Way Series ........................................ 3

III.   **Summary Judgment Standard** ..................................................... 5

IV.    **Copyright Claim Fails as a Matter of Law** ............................... 5

    A.   Plaintiff's Copyright Claim Fails as to All Defendants Because Any
        Contribution Was Made on a "Work For Hire" Basis ........................ 5

        1.   Edwards Was a Full Time Employee of the Wayans at the Time the
            Text of Golddigger Was Created ...................................... 6

        2.   Any Work by Edwards on Golddigger Was Done Within the Scope
            of Edwards's Employment ................................................ 7

            a.   Drafting jokes to include in the 101 Ways Project was the
                "kind of work" Edwards was employed to perform........7

            b.   Any work Edwards alleges to have done on Golddigger
                occurred substantially within work hours and space.......9

            c.   The drafting of any jokes by Edwards for inclusion in
                Golddigger was actuated, in whole or in part, by a purpose
                to serve the Wayans ........................................ 10

    B.   In the Alternative, Plaintiff's Copyright Claim Fails As to All
        Defendants Because Golddigger Was a Joint Work under the Act ..... 13

        1.   Golddigger Is a Joint Work under the Act ..................................... 13

            a.   The illustrations and jokes in Golddigger are independent
                parts of a unitary whole ................................... 14

            b.   Edwards Intended His Contribution to Be Merged With the
                Wayans at the Time of Creation ................................... 14

            c.   Text and Illustrations Independently Copyrightable .......15

        2.   Because Golddigger is a Joint Work, Edwards Cannot Maintain a ..
            Claim for Copyright Infringement as to Any Defendants ............. 15

NOTICE OF MOTION AND JOINT MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES

**IV.**  **Plaintiff's State Claims are Preempted by Federal Copyright Law**......16

   A.   California Law Applies and Plaintiff's Unfair Competition
        Claim is Preempted as Against All Defendants ............................17

        1.  California Law Governs Plaintiff's Unfair Competition Claim......17

            a.  An Actual Conflict of Law Exists...............................17

            b.  New York's "Interest Analysis" ...............................18

        2.  No Additional Element in Unfair Competition Claim ..................19

   B.   Plaintiff's Breach of Implied Contract Claim is Preempted.................20

        1.  California Law Governs Breach of Implied Contract Claim .........20

            a.  An Actual Conflict of Law Exists...............................20

            b.  New York's "Center of Gravity" Test ....................20

        2.  No Additional Element in Breach of Implied Contract Claim........21

**V.**  **State Law Claims Fail as a Matter of Law**................................22

   A.   There is No Evidence of Conduct Creating an Implied in Fact Contract
        and as a result, Plaintiff's Claim Fails as to All Defendants ................22

   B.   Plaintiff's Unfair Competition Claims Fails.........................................23

**VI.**  **In the Alternative, The Court Should Grant Summary Adjudication
        With Respect to Damages** ..................................................23

   A.   No Statutory Damages or Attorney's Fees Under Copyright Act.........23

   B.   No Damages or Attorney's Fees for Unfair Competition  ...................24

   C.   No Attorneys' Fees or Punitive Damages for Breach of Contract. .......25

**VII.**  **Conclusion** ..................................................................25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

NOTICE OF MOTION AND JOINT MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES

# TABLE OF AUTHORITIES

**Federal Cases**                                                    **Pg. #**

*Aalmuhammed v. Lee,*
  202 F.3d 1227 (9th Cir. 2000) ................................................ 14, 19, 20

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242, 249-50 (1986).................................................................5

*Ashton-Tate Corp. v. Ross,*
  916 F.2d 516 (9th Cir. 2000) ............................................ 13, 14, 15

*Avon Periodicals, Inc. v. Ziff-Davis Pub. Co.,*
  27 Misc. 2d 160, 164 (N.Y. Sup. Ct. 1952) .................................. 18

*Aymes v. Bonelli,*
  980 F.2d 857 (2d Cir. 1992)...................................................................6

*Babcock v. Jackson,*
  12 N.Y.2d 473 (N.Y. 1963) ...............................................................18

*Calente-Kritzer Video v. Pinckney,*
  881 F.2d 772, 774 (9th Cir. 1989) ....................................................21

*Cambridge Literary Props., Ltd. v. W. Goebel Porzellanfabrik G.m.b.H. & Co. Kg.,*
  510 F.3d 77, 86 (1st Cir. 2007).........................................................13

*Community for Creative Non-Violence v. Reid,*
  490 U.S. 730, (1989) ............................................................................6

*Celotex Corp. v. Catrett,*
  477 U.S. 317, 323 (1986).......................................................................5

*Curley v. AMR Corp.,*
  153 F.3d 5, 12 (2d Cir. 1998)...........................................................17

*Davis v. Gap, Inc.,*
  246 F.3d 152 (2d Cir. 2001)..............................................................24

*Del Madera Properties v. Rhodes & Gardner, Inc.,*
  820 F.2d 973 (9th Cir. 1987)...................................................16, 17, 19

*Dumas v. Gommerman,*
  865 F.2d 1093 (9th Cir. 1989) .............................................................6

*Einhorn v. Mergatroyd Productions,*
  426 F. Supp. 2d 189, 197 (S.D.N.Y. 2006). ......................................24

NOTICE OF MOTION AND JOINT MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES

*Gaiman v. McFarlane,*
   360 F.3d 644 (7th Cir. 2004)...................................................................15

*Genzmer v. Public Health Trust of Miami-Dade County,*
   219 F.Supp. 2d 1275 (S.D. Fla. 2002) ........................................... 8, 9

*Getty Petroleum Corp. v. Island Transp. Corp.,*
   878 F.2d 650 (2d Cir. 1989).....................................................................17

*GlobalNet Financial.Com, Inc. v. Frank Crystal & Co., Inc.,*
   449 F.3d 377, 382 (2d. Cir. 2006)........................................................17

*Grosso v. Miramax Film Corporation,*
   2004 U.S. App. LEXIS 28043 at *3 (9th Cir. Sept. 8, 2004) ............21

*Hamilton v. ACCU-TEK,*
   47 F.Supp. 2d 330, 335-36 (E.D.N.Y. 1999) ....................................18

*Locascio v. Aquavella,*
   185 A.D.2d 689 (N.Y. App. Div. 4th Dep't 1992)...........................25

*Lazard Freres & Co. v. Protective Life Insurance Co.,*
   108 F.3d 1531 & n.5 (2d Cir. 1997) ....................................................20

*M.G.B. Homes, Inc. v. Ameron Homes, Inc.,*
   903 F.2d 1486 (11th Cir. 1990) ...........................................................16

*Martha Graham School & Dance Foundation v. Martha Graham Center of
Contemporary Dance, Inc.,*
   380 F.3d 624 (2d Cir. 2004)...................................................................10

*Mayer v. Josiah Wedgwood & Sons, Ltd.,*
   601 F. Supp. 1523, 1535 (S.D.N.Y. 1985)fn.[6] .................................20

*McKenna v. Lee,*
   318 F. Supp. 2d 296 (E.D.N.C. 1984)....................................................9

*Meredith v. Smith,*
   145 F.2d 620 (9th Cir. 1944) ................................................................16

*Miller v. CP Chemicals, Inc.,*
   808 F.Supp. 1238, (D.S.C. 1992)............................................................8

*Montz v. Pilgrim Films & Television,*
   606 F.3d 1153, 1158 (9th Cir. 2010) ..................................................21

NOTICE OF MOTION AND JOINT MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES

*Oboler v. Goldin,*
  714 F.2d 211 (2d Cir. 1983).....................................................................24

*Oddo v. Ries,*
  743 F.2d 630 (9th Cir. 1984)....................................................................16

*Pacific MDF Prods. v. Bio-Mass Energy Concepts, LLC,*
  2006 U.S. Dist. LEXIS 89844, at *26-27 (Nov. 17, 2006 E.D. Cal.) ...............25

*Picture Music, Inc. v. Bourne,*
  457 F.2d 1213 (2d Cir. 1972) ............................................... 10, 11, 12

*Piper Aircraft Co. v. Reyno,*
  454 U.S. 235 (1981) ..............................................................................17

*Playboy Entertainment, Inc. v. Dumas,*
  53 F.3d 549 (2d Cir. 1995).........................................................10, 11, 12

*Pye v. Mitchell,*
  574 F.2d 476 (9th Cir. 1978);  ..................................................................16

*Roselink Investors, L.L.C. v. Shenkman,*
  386 F. Supp. 2d 209, 225 (S.D.N.Y. 2004) ........................................18

*Samara Bros. v. Wal-Mart Stores,*
  165 F.3d 120, 131 (2d Cir. 1998)fn.[6]......................................................20

*Self-Realization Fellowship Church v. Ananda Church of Self Realization,*
  206 F.3d 1322, 1326 (9th Cir. 2000)...................................................11

*S.O.S., Inc. v. Payday, Inc.,*
  886 F.2d 1081, (9th Cir. 1989) ...............................................................5

*Shaul v. Cherry Valley-Springfield Central School District,*
  363 F.3d 177 (2d Cir. 2004)..............................................................7, 9

*Siegel v. Time Warner, Inc.,*
  496 F. Supp. 2d 1111 (C.D. Cal. 2007) ...................................... 13, 14, 15

*Streeter v. Rolfe,*
  491 F. Supp. 416 (W.D. La. 1980)......................................................24

*Twentieth Century Fox Film Corp. v. Marvel Enterprises,*
  155 F. Supp. 2d 1 (S.D.N.Y. 2001).....................................................19

*Walker v. Time Life Films, Inc.,*
  784 F.2d 44, 53 (2d Cir.), cert. denied, 476 U.S. 1159 (1986).........................19

*Warner Bros. Inc. v. Am. Broadcasting Cos.,*
  720 F.2d 231, 247 (2d Cir. 1983)........................................................19

viii

NOTICE OF MOTION AND JOINT MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES

1

2 **<u>California Cases</u>**

3 *Bank of the West v. Superior Court,*
  2 Cal. 4th 1254, 1267 (Cal. 1992)........................................................18

4

5 *Desny v. Wilder,*
  46 Cal.2d 715 (Cal. 1956)..................................................................21

6

7 *Foley v. Interactive Data Corporation,*
  47 Cal. 3d 654  (Cal. 1988)................................................................22

8 *Korea Supply Co. v. Lockheed Martin Corp.,*
  29 Cal. 4th 1134 (Cal. 2003)..............................................................24

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND JOINT MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES

# FEDERAL STATUTES

17 U.S.C. section "Copyright Act of 1976" ........................................................i, 14

      17 U.S.C. §102(a) ...................................................................15

      17 U.S.C. §106 ....................................................... 16, 21, 22

      17 U.S.C. §201(a) ................................................................. 5

      17 U.S.C. §201(b) ................................................................. 5

      17 U.S.C. §301(a) ...............................................................17

      17 U.S.C. §412 ....................................................................24

28 U.S.C. §404(a) ..................................................................17

Federal Rule of Civil Procedure 56(b) .............................................i, 24

# CALIFORNIA STATUTES

CAL. BUS. & PROF. CODE §17200 .............................................17

CAL. BUS. & PROF. CODE §17203 ..........................................17, 24

California Civil Code section 3294(a).............................................25

CAL. CIV. PRO. § 1033.5 (a)(10) ................................................25

# SECONDARY SOURCES

1 NIMMER ON COPYRIGHT § 6.03 at 6-7 .......................................16

4 NIMMER ON COPYRIGHT § 14.02 B, at 14-23 ...............................24

1-5 NIMMER ON COPYRIGHT §5.03 (B)(1)(b).................................7

Restatement (Second of Agency §229 cmt B.......................................7

NOTICE OF MOTION AND JOINT MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

The subject matter of this litigation is the illustrated joke book "101 Ways to Know You're a Golddigger" ("*Golddigger*") authored by Keenen Ivory Wayans, Marlon Wayans, and Shawn Wayans and published by St. Martin's Press, LLC ("SMP")[1] in June 2009.  The book is one in a three-book series referred to as the "101 Ways" Series.  Plaintiff Jared Edwards, a former Wayans employee, claims that he owns the copyright to the text of *Golddigger*.  Irrefutable evidence shows, however, that to the extent Plaintiff worked on *Golddigger*, it was alongside the Wayans in the context of his employment with a team of other Wayans employees including illustrators.  The Wayans are the authors of the work and neither the Wayans nor SMP have acted unlawfully.  Edwards may harbor hurt feelings for not having received credit on the finished product of *Golddigger*, but this does not provide a basis for federal litigation.

## II.   STATEMENT OF FACTS

### A.   Parties to the Action

Plaintiff Jared Edwards ("Plaintiff" or "Edwards") is a California resident. (STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW ("SF") 1.) Defendants Keenen Ivory Wayans, Marlon Wayans, Shawn Wayans (the "Wayans") are also California residents and celebrity comic writers, directors and actors.  (COMPL. ¶¶ 7, 9, 12; SF 2-4.)  Defendant Wayans Bros. Productions, Inc. is a California corporation of which the Wayans are the exclusive principals. (SF 5.)

### B.   Plaintiff's Employment Relationship with Wayans Defendants

Plaintiff worked for the Wayans in one capacity or another for the better part of a decade – from sometime in or around 1995 (SF 7) until sometime in or around

---

[1] Though notified that St. Martin's Press, Inc. (now SMP (1952) Inc.) did not publish the book at issue, Plaintiff has not amended his Complaint to properly name St. Martin's Press, LLC.  (SF. *See generally* COMPL. (naming St. Martin's Press, Inc.).)

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE MOTION FOR SUMMARY ADJUDICATION

October 2006 – with the exception only of one period of time when he says he took a "sabbatical." [2] (SF 18)  Plaintiff has otherwise been employed by the Wayans ever since he recognized Keenan Ivory Wayans on the street (SF 19) and talked to him about "wanting to write for him" (SF 20), explaining that he was "just trying to find [a] way in" (SF 21); he wanted "to break into writing and acting" (SF 22), he "wanted to do it all."  (SF 23.)  One month later, Plaintiff was hired as a production assistant and a runner on the Keenan Ivory Wayans Show.  (SF 24.) Since then, Plaintiff has worked for the Wayans in a chameleonic fashion, doing whatever needed to be done to "to assist overall production," (SF 25) whether on set, on location, or in the office (SF 25) in support of whatever creative endeavor the Wayans were working on at the time.

Plaintiff describes the nature of his work with the Wayans as "open-ended." (SF 26)  Over the years, Plaintiff has worked for the Wayans on movies (SF 27), television shows (SF 28), award shows, (SF 29) at stand-up gigs (SF 30), as a personal assistant (SF 31), a production assistant (SF 32), a runner (SF 33), doing extra work as an actor (SF 34), and working with Wayans' writers "punching up" jokes (SF 35).  He says he was "always on call" (SF 36) and did "whatever was needed." (SF 37)  He traveled with them frequently, often on a private plane (SF 38), to places like New York (SF 39), Paris and London (SF 40)  He stayed in luxury hotels and went to elite night clubs on a VIP basis (SF 41,42).  The Wayans financed these extravagancies and also paid his salary.  (SF 43)

Although he chose to remain on the Wayans's payroll in some capacity or another for the better part of ten years, Plaintiff says he sometimes felt that his employment with the Wayans was "not fair."  (SF 44)  He felt they expected him

---

[2] Plaintiff says he freelanced during his "sabbatical" but could not describe what he did or for how long. (SF 8-11, 13, 14)  He went through a "rough period" when he was not working for the Wayans.  (SF 15)  He was behind on his credit card bills and car payment and was about to evicted from his apartment (SF 16) until Shawn Wayans offered to loan and did loan him $12,000. (SF 17)  Shortly thereafter, the Wayans rehired Plaintiff. (SF 12)

NOTICE OF MOTION AND JOINT MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES

to "jump up and do things right away" just because [they] "wrote [his] checks." (SF 45) He wanted the Wayans to "appreciate [his] hard work [and not] write it off as not being anything." (SF 46) He complains that he was "always on the clock with them" even when they went to clubs and were otherwise socializing, he was "always working." (SF 47) But, alas: "That was [his] job. It was either do that or not be working." (SF 48)

### C.     The Wayans Developed the 101 Ways Series.

In 2005, Plaintiff was working as a full-time employee for the Wayans through their production company Wayans Bros. Productions. (SF 49) The Wayans paid Plaintiff as a full-time employee through a W2 form and also paid payroll and social security taxes for him. (SF 50.) Around this time, Plaintiff alleges he became aware that his employers were working on creating a series of books based on a style of joke book that Shawn Wayans had authored and published through Dell Publishing in 1997: "150 Ways To Tell If You're Ghetto." (SF 51, 52) Plaintiff understood the Wayans were going to "dust off [this] property" and create a new series of illustrated joke books each with a separate theme, such as 101 Ways to Know Your Mama's Ghetto ("101 Series" or "101 Project"). (SF 53.) Plaintiff wanted to "get in on" the 101 Project and began writing jokes that he wanted to be "included in that property." (SF 54.) He thought that if it "happened to be good enough, it would go through the process of the artist illustrating it and [the Wayans] finding someone to do it." (*Id.*) This endeavor "[w]as a means for advancement" to a "earn a much more creative position." (SF 55.)

Accordingly, Plaintiff says he commenced work on various jokes for inclusion in the 101 Series, including *Golddigger*. His work on the project was proscribed by his employer's guidelines, including the layout of the book, the number of jokes and the number of illustrations. (SF 56, 57.)

Edwards claims that he worked on his first draft mostly at home and at the

office after hours.  (SF 58)  He says he did not show it to his employer until it was complete, at which time he says he dropped it off at Keenen Ivory Wayans's home. (SF 59)  He does not allege that he provided any written or verbal notice of confidentiality nor conditional terms of review. (SF 60)   Upon review by his employer, Plaintiff was encouraged to proceed and was tasked with various responsibilities pertaining to the 101 Series.  (SF 61)  Plaintiff received group work emails about *Golddigger* and other proposed titles for inclusion in the 101 Series from the project manager who was coordinating the overall project.  (SF 62 ("This was during the time I was still employed with them, so because it was my book …anything that happened with them, I was always e-mailed a copy.").)  He even worked with at least one Wayans's illustrator and sat down to talk about the selection of drawings.  (SF 63)  Plaintiff understood that the Wayans had the ultimate authority to approve, modify or reject the jokes.  (SF 64.)  Plaintiff claims he left the employment of the Wayans on his own volition even though the 101 Project was ongoing.  (SF 65.)  He did not ask the Wayans about the status of the 101 Series before or after his departure.  (SF 66.)

On or about June 9, 2009, two of the titles in the 101 Series (*Golddigger* and *Mama's House*) were published in paperback by St. Martin's Press, LLC who contracted with the Wayans to publish the book.  (SF 67.)  Shortly thereafter , the Wayans registered *Golddigger* with the U.S. Copyright Office, which issued a copyright registration certificate effective July 6, 2009. (SF 68, Declaration of September Rea, Ex. 1, "101 Ways to Know You're a Golddigger").  Plaintiff claims that he was surprised to discover that the 101 Series was published.  (SF 69.)  Subsequently, Plaintiff registered a copy of his alleged list of golddigger jokes (without illustrations) with the U.S. Copyright Office and was issued a copyright registration certificate effective August 23, 2009.  (SF 70)  Plaintiff then initiated this Action.  (SF 71)

*///*

NOTICE OF MOTION AND JOINT MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES

## III.   SUMMARY JUDGMENT STANDARD

Defendants have no burden to negate or disprove matters on which Plaintiff has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Rather, Plaintiff satisfies Rule 56 by "showing--pointing out to the district court-- that there is an absence of evidence to support [Plaintiff's,] the non-moving party's[,] case."  *Id*. at 325.  A failure of proof concerning an essential element renders all other facts immaterial, and summary judgment must be granted.  *Id*. at 323.  A factual dispute bars summary judgment *only* if the nonmovant's evidence is sufficient to require trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.  *Id.*

## IV.   COPYRIGHT CLAIM FAILS AS A MATTER OF LAW

### A.   Plaintiff's Copyright Claim Fails as to All Defendants Because Any Contribution Was Made on a "Work For Hire" Basis.

Plaintiff claims that Defendants have infringed his copyrighted work in violation of the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.* (the "Act"). Under section 201(a) of the Copyright Act, the copyright in a protected work vests initially in the author or authors of the work.  17 U.S.C. § 201(a).  In the case of a work made for hire, however, "the employer or other person for whom the work was prepared is considered the author . . . and, unless the parties have expressly agreed in a written instrument signed by them, owns all of the rights comprised in the copyright."  17 U.S.C. § 201(b).  A work prepared by an employee within the scope of his or her employment is a "work made for hire" as defined under section 101 of the Copyright Act.[3]  Summary judgment is appropriate where there is no genuine issue of material fact as to the applicability of the work for hire doctrine.

---

[3] In addition, certain works specially ordered or commissioned can be works for hire under the Act where a written agreement between the parties exists; however, this application of the work for hire doctrine is not relevant to the facts of this case. Edwards was not an independent contractor and the parties did not have a written agreement governing the copyright to the work.

NOTICE OF MOTION AND JOINT MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

*E.g., S.O.S., Inc. v. Payday, Inc.,* 886 F.2d 1081, 1086 (9th Cir. 1989).

>    1.    Edwards was a Full Time Employee of the Wayans.

Although the term "employee" is  not defined by the Act, the Supreme Court has clarified that its meaning should be construed within the scope of traditional agency law.  *Community for Creative Non-Violence v. Reid*, 490 U.S. 730 (1989) (*"Reid"*).  In *Reid*, the Supreme Court analyzed multiple factors to ascertain whether the plaintiff was an independent contractor or an employee using the general principles of agency law.  Factors that are said to be "significant in virtually every situation" include: (1) the provision of employee benefits; (2) the tax treatment of the hired party, (3) the skill required; (4) the hiring party's right to control the manner and means of creation; and (5) whether the hiring party has the right to assign additional projects to the hired party. *Aymes v. Bonelli*, 980 F.2d 857, 861 (2d Cir. 1992).

Edwards was a "formal, salaried employee" of the Wayans during the relevant time period and thus an "employee" under the most restrictive test of employment.  *See Dumas v. Gommerman*, 865 F.2d 1093 (9th Cir. 1989) (discussing formal indicia of employment applied before the more flexible evaluation of *Reid*).  Moreover, the circumstances of Plaintiff's employment are opposite to those of *Reid* where the plaintiff that was found <u>not</u> to be an employee.

First and foremost, the Wayans filed a W2 on Edwards's behalf, and they paid payroll and/or Social Security taxes for him as a full time employee (SF 50). *Cf. Reid*, 490 U.S. at 753; *Aymes,* 980 F.2d at 861 (noting that payment status of taxes is "highly indicative" if not dispositive of employment status).  In addition, unlike the plaintiff in *Reid*, Plaintiff did not work in a separate city from his employer but instead worked in the Wayans's proximity, either in their established production offices, on location with them, or at their individual homes (SF 72), and thus was "supervised on a daily basis." *Cf. Reid*, 490 U.S. at 753.  Finally, as his full-time employers, the Wayans had the right to assign additional projects to

NOTICE OF MOTION AND JOINT MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES

Edwards, and indeed they did on a regular basis.  (*E.g.,* SF 73.)  Edwards performed a variety of duties and worked on a range of products based on "whatever they needed." (SF 37)  Edwards's status as a full time employee is not an issue of dispute.

> 2.   Any Work by Edwards on *Golddigger* Was Done Within the Scope of Edwards's Employment.

Just as the Supreme Court relies on the Restatement of Agency ("Restatement") to define who is an employee (*Reid*, 490 U.S. at 753), courts rely on the Restatement to determine whether the employee's conduct falls within the scope of his employment.  1-5 NIMMER ON COPYRIGHT §5.03 (B)(1)(b). Specifically, courts focus their analysis on whether (1) it was the kind of work he is employed to perform, (2) it occurs substantially within work hours and space, and (3) it was actuated, at least in part, by a purpose to serve the employer.  *Id.  See also, e.g., Shaul v. Cherry Valley-Springfield Cent. Sch. Dist.*, 363 F.3d 177, 186 (2d Cir. 2004) (holding school owned copyright in tests, quizzes and homework problems created by teacher because "kind of work" teacher was employed to perform, he was motivated by duties as a teacher though he may also have had a desire to publish the materials, and that it did not matter that he created the work off of the school premises or not during work hours).

> a.   *Drafting jokes to include in the 101 Ways Project was the "kind of work" Edwards was employed to perform.*

An employee does not have to have been hired for the specific purpose of creating the copyrighted subject matter for it to be the "kind of work" he was employed to do.  The creation of the work is within the scope of employment where it is "***within the ultimate objective of the principal* and [is] an act which it is not unlikely that such a servant might do**.  RESTATEMENT (SECOND) OF AGENCY § 229, cmt. B.  "The fact that a particular employer has no reason to expect the particular servant to perform the act is not conclusive." *Id.; see also*

NOTICE OF MOTION AND JOINT MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES

*Miller v. CP Chemicals, Inc.,* 808 F.Supp. 1238 (D.S.C. 1992) (computer program created by lab supervisor" within scope of employment where "within the ultimate objective of the principal and an act which is not unlikely that a servant might do"). This analysis is particularly appropriate when an employee's duties are "open-ended." *See Genzmer v. Public Health Trust of Miami-Dade County*, 219 F.Supp. 2d 1275, 1276-80 (S.D. Fla. 2002). In *Genzmer*, the Court held that authorship of computer programs fell within the ambit of the "kind of work" a medical doctor was "hired to perform" where the nature of the research program the doctor was participating in was "open-ended" and "myriad activities" comprised his responsibilities. In addition, a supervisor's awareness of, encouragement of, or control over the project or work in question militates towards a finding that the work is within the scope of employment and thus a work for hire. For example, in *Genzmer*, the court found it instructive that the doctor in *Genzmer* "apprized his supervisor . . . about his activities" and the supervisor provided "guidance and praise." *Id*. at 1281.

Here, Plaintiff describes the parameters of his work with the Wayans as "open-ended," (SF 26), whereby he was "always on call" (SF 36) to do "whatever was needed." (SF 37) Plaintiff states that his job was "to assist overall production," whether on set, on location, or in the office (SF 25). Over the years, he worked on behalf of the Wayans on movies (SF 27), television shows (SF 28), award shows (SF 29), stand-up gigs (SF 30), as a personal assistant (SF 31), a production assistant (SF 32), a runner (SF 33), doing extra work as an actor (SF 34), and working with Wayans writers punching up jokes to make them funnier (SF 35). Most recently, before he claims he quit on his own accord, Plaintiff was working on the 101 Ways Series. (SF 74) There is no dispute that the parameters of Edwards's employment were not well defined and his responsibilities varied depending on the needs of the Wayans. Plaintiff concedes that any jokes penned by him were created to further the development of the 101 Series, a Wayans's

NOTICE OF MOTION AND JOINT MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES

"property" he knew they were "dusting off" and that he wanted to work on.  (SF 54)  The contribution of jokes for use in a project that his comedic-writer employers were working on was exactly in line with the "ultimate objective" of Wayans Bros. and the Wayans.

In addition, Plaintiff contends the *Golddigger* material he proposed for inclusion in the 101 Ways Series was well-received by the Wayans: they were "excited over it" and "made him aware" that he "could possibly have an opportunity . . . to get credit and finally be recognized."  (SF 75)  They assigned him to the office team working on the 101 Ways Project as a writer whereby his jokes were subject to a variety of input and multiple edits (SF 76) and where there was "formal" office involvement including a "production manager" to coordinate with "all of the people who were working on the 101 Ways Series" including the artists and the writers (SF 77).  On top of all that, the "***final say-so came from Shawn and Marlon and Keenen.  No one made a decision over them. . . .No one okayed [anything] but them***." (SF 78)  The evidence is undeniable that assisting with drafting jokes for inclusion in a Wayans's publication was the "kind of work" Plaintiff was hired to perform and indeed was performing openly in the context of his employment.  *See Genzmer,* 219 F.Supp. 2d at 1276-80.

        b.    *Any work Edwards alleges to have done on Golddigger occurred substantially within work hours and space.*

The next inquiry under the Restatement factors is whether the work occurred "substantially within work hours and space."   Nevertheless, a work may be within the scope of an employee's duties even if it was prepared at home during nonworking hours.  *See Shaul,* 363 F.3d at 186 (teacher's work deemed "for hire" despite being created at home); *Genzmer*, 19 F.Supp. 2d at 1280 (doctor developed work-for-hire computer program in his home, using his home computer, during off-duty hours); *McKenna v. Lee,* 318 F. Supp. 2d 296, 298 (E.D.N.C. 1984), *aff'd mem*., 53 Fed. Appx. 268 (4th Cir. 2002) (work was made "for hire" even though

1   plaintiff created it during nonworking hours).

2        Here, Plaintiff asserts that given the nature of his job, the Wayans knew

3   everything he was working on, because "yeah, they were [his] bosses" (SF 79), he

4   was "always on the clock with [the Wayans]" (SF 80) "always working" (SF 81),

5   "in the office every day" (SF 82).  He claims he worked on the manuscript

6   sometimes at the office on his computer but also "wherever [he] was."  (SF 83)

7   Indeed, Plaintiff testified that the entire office was working on the 101 Ways

8   Project, including *Golddigger*.  (SF 84)  Plaintiff received work emails about the

9   project (SF 62), used office resources to work on the project (SF 83), and

10   collaborated with others as part of his job while on the clock at work.  (SF 85)  The

11   fact that he may have also brought his work home or worked at the office after

12   hours does not alter the conclusion that Plaintiff's contributions were created

13   "substantially within work hours or space."

14              c.   *The drafting of any jokes by Edwards for inclusion in*

15                  *Golddigger was actuated, in whole or in part, by a purpose*

16                  *to serve the Wayans.*

17        There is "no need for the employer to suggest any particular project" for it to

18   be motivated by a desire to serve the employer.  *Martha Graham Sch. & Dance*

19   *Found. v. Martha Graham Ctr. of Contemporary Dance, Inc.,* 380 F.3d 624, 640

20   (2d Cir. 2004) (stating also that "[t]here is no need for the employer to be the

21   precipitating force behind each work created by a salaried employee, acting within

22   the scope of her regular employment").  Evaluation of whether the work was

23   "actuated" at least in part to "serve" the principal is informed by the "instance

24   test," which examines (in the context of the 1909 Copyright Act) whether "the

25   motivating factor in producing the work was the employer who induced the

26   creation."  *See 20th Century Fox Film Corp. et al v. Ent't Dist. et al*, 429 F.3d 869,

27   878 (9th Cir. 2005); *Playboy Ent., Inc. v. Dumas*, 53 F.3d 549, 554 (2d Cir. 1995).

28        The degree to which the "hiring party had the right to control or supervise

1  the artist's work informs the analysis of whether the work was created at the

2  "instance of" the employer, and in turn, whether its creation was "actuated" or

3  "motivated" by a desire to serve the employer.  *See 20th Century Fox Film Corp.,*

4  429 F.3d at 879 (citing *Self-Realization Fellowship Church v. Ananda Church of*

5  *Self Realization*, 206 F.3d 1322, 1326 (9th Cir. 2000) (finding "no evidence of

6  supervision or control" to satisfy applicable work for hire doctrine)).  Limited

7  supervisory powers are sufficient to meet the requisite level of control: "complete

8  control over the author's work is not necessary."  *20th Century Fox Film Corp. et*

9  *al,* 429 F.3d at 880 ("sufficient supervisory powers" existed where publisher

10  "discuss[ed] possible improvements with the author," had "face to face meetings,"

11  and provided "notes and comments" on the work).  *See also Picture Music, Inc. v.*

12  *Bourne*, 457 F.2d 1213, 1217 (2d Cir. 1972) (supervision sufficient to survive

13  "instance" test where party had power to "accept, reject, or modify [the] work");

14  *Playboy,* 53 F.3d at 556 (employer was "motivating factor" in the creation of

15  artist's paintings where artist would not have created "those particular paintings" if

16  he had not been given the assignments by Playboy despite the fact that his work

17  was not overseen by Playboy).

18  The record here is unequivocal that Plaintiff was "actuated" or "motivated"

19  by a desire to serve his employers.  Plaintiff admits as much.  He testified he was

20  working as a full-time employee when he started drafting jokes (SF 86) "in the

21  same vein" as the 150 Ways book previously published by the Wayans (SF 86)

22  because he knew the Wayans <u>already were trying to dust that property off," and</u>

23  <u>that the reason he says he wrote the *Golddigger* jokes was so that [he] could have a</u>

24  <u>book included *in that property*</u>."  (SF 86.)  He knew that "the artists were already

25  on staff, <u>so [his] reasons for writing the book [were that] *if it happened to be good*</u>

26  <u>***enough***, it would go through the process of the artist illustrating it and [the</u>

27  <u>Wayans] finding someone to do it. . . . [he] envisioned to write a book that would</u>

28  <u>take [him] from being an assistant runner to progressing [him]self</u>" internally.  (SF

---

11

87.)  Plaintiff's stated goal was thus "to write as much as [he] could to try and see what could 'get on' [the 101 Project]."  (SF 88.)  As Plaintiff states in an email he wrote to the Wayans's full-time "production manager" of the project, he wrote the jokes "as a means for advancement" to a "earn a much more creative position" (SF 55.)  He was hoping the Wayans "liked" his jokes and he "could get [his] chance off that."  (SF 89.)

Moreover, it is clear that he would not have written this particular style of book but for the specifications provided by his employer.  *See Playboy*, 53 F.3d at 556.  Indeed, Plaintiff says he chose "the style of book to have jokes married with illustrations" rather than just a "regular book" or a "script" because the 101 Series "was a property that [the Wayans] already had . . . [and he] wanted to get a project going . . . [so he chose to] write something that had potential to get on, and at the time, ***this was something they were trying to do. They were trying to do this series again."*** (SF 56)  His work on the project was thus proscribed by his employer's guidelines.  He knew "that the goal was to reach 101" jokes, because "that was the name of the property" so he would try "to give [the Wayans] the best options for the funniest jokes."  (SF 90.)

Finally, sufficient supervisory powers existed here where the Wayans had face to face meetings with Plaintiff and provided notes and comments (SF 91) on the work (*20th Century Fox Film Corp.,* 429 F.3d at 880) in addition to retaining the ultimate authority to "accept, reject, or modify [the] work."  *Picture Music,* 457 F.2d at 1217.  As Plaintiff testified, in the end, the "final say-so came from Shawn and Marlon and Keenen.  No one made a decision over them. . . .No one okayed [anything] but them." (SF 78)

The record is clear that to the extent Plaintiff did draft jokes for *Golddigger*, the work was created in the scope of Plaintiff's full-time employment with the Wayans and is thus presumed by operation of law to be a work for hire.  Plaintiff has not submitted any evidence to contradict this presumption.  As a result, the

1  Court should dismiss Plaintiff's copyright claim as a matter of law against all

2  Defendants.

3  **B.     In The Alternative, Plaintiff's Copyright Claim Fails As To All**

4  **Defendants Because *Golddigger* Was a Joint Work under the Act.**

5  Even assuming Plaintiff has overcome the work for hire presumption,

6  Plaintiff's testimony, *at best*, indicates that the Wayans and Edwards co-authored

7  *Golddigger* as a "joint work" as that term is defined by the Act and as a result, the

8  Wayans possessed an undivided ownership interest in *Golddigger*.  Although the

9  Wayans deny that Plaintiff contributed as he claims, even assuming what Plaintiff

10  claims is true, there is no cause for copyright infringement.  If the Court finds that

11  based on Plaintiff's testimony, *Golddigger* is a joint work, then the Wayans and

12  SMP acted lawfully in contracting to publish the work and Plaintiff cannot

13  maintain a claim for copyright infringement claim against any of the Defendants.

14  1.  At Best, *Golddigger* Is a Joint Work under the Act.

15  The Act defines a "joint work" as "a work prepared by two or more authors

16  with the intention that their contributions be merged into inseparable or

17  interdependent parts of a unitary whole."  17 U.S.C. § 101.[4]  In the Ninth Circuit,

18  the Court looks at three issues to determine joint authorship: (1) whether the work

19  consists of interdependent or inseparable components that were merged to create a

20  unitary whole, (2) whether the work was created by two or more authors with the

21  intention that their components be merged, and (3) whether each component is

22  independently copyrightable.  *See Siegel v. Time Warner, Inc.*, 496 F. Supp. 2d

23  1111, 1144 (C.D. Cal. 2007); *Ashton-Tate Corp. v. Ross*, 916 F.2d 516, 521 (9th

24  Cir. 2000).

25

26

27  [4] Federal law is controlling on this issue.  *See, e.g., Cambridge Literary Props., Ltd. v. W.*

28  *Goebel Porzellanfabrik G.m.b.H. & Co. Kg.*, 510 F.3d 77, 86 (1st Cir. 2007) ("Determination of copyright ownership based on a disputed allegation of co-authorship presents a federal question that arises under, and must be determined according to, the Copyright Act.").

NOTICE OF MOTION AND JOINT MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES

a.      *Golddigger illustrations and jokes are interdependent parts of a unitary whole.*

Components of a unitary work are considered "interdependent" when the parts "could stand alone but achieve greater effect when combined."  *Siegel*, 496 F. Supp. 2d at 1145 (citing the House Report submitted in connection with the passage of the 1976 Act).  In *Siegel v. Time Warner, Inc.* ("*Siegel*"), this Court addressed the issue of whether a comic book created by two men—Siegel and Schuster—was a "joint work" for purposes of summary judgment.  *See Siegel*, 496 F.Supp.2d at 1144-1149.  Siegel had written the text for the comic book while Shuster provided illustrations four years later.  The Court held that the text and illustrations were interdependent parts of a unitary whole.  *See Siegel*, 496 F.Supp.2d at 1145 (holding that the comic book "would be considered comprised of interdependent parts–Siegel's dialogue and storyline (as contained in his submissions) and Shuster's artwork giving life and color to those words.").

Similarly, *Golddigger* is comprised of jokes and illustrations/visualizations of those jokes which were merged to make one unitary work.  (*See* SF 92; SR Decl, Ex. 1, "101 Ways to Know You're a Golddigger".)  The illustrations bring to life the visual jokes and stir further interest by the readership.  *See Aalmuhammed v. Lee*, 202 F.3d 1227, 1234 (9th Cir. 2000) (noting that in a joint work "the audience appeal of the work turns on both contributions").  Accordingly, the first prong of the analysis is satisfied.

b.   *Edwards Intended His Contribution to Be Merged With the Wayans at the Time of Creation.*

The touchstone of a joint authorship is an intention at the time of creation that the parts be combined into an integral unit.  *Siegel*, 496 F.Supp.2d at 1145 (citing the Senate Committee Report submitted with the passage of the 1976 Copyright Act).  The Court looks to objective evidence of this intention, but contemporaneous and coordinated action is not required.  *Id.* at 1145-46.

1    Edwards expressly testified that when he drafted jokes for *Golddigger* he

2    envisioned the jokes would "married with illustrations" (SF 56) created by the

3    Wayans (and more specifically, by illustrators "on staff").  (SF 93.)  And, although

4    contemporaneous and coordinated action is not required for joint authorship,

5    Edwards claims he did sit down to collaborate with the Wayans and their

6    illustrators on at least one of the illustrations.  (SF 94.)  Edwards clearly intended

7    his written contributions to be merged with illustrations by the Wayans to create

8    *Golddigger*.  *See Siegel*, 496 F.Supp.2d at 1145.

9    c.  *Text and Illustrations Independently Copyrightable.*

10    In the Ninth Circuit, each contribution to a joint work must contain

11    independently copyrightable material.  *See Ashton-Tate Corp. v. Ross*, 916 F.2d

12    516, 521 (9th Cir. 1990), *but see Gaiman v. McFarlane*, 360 F.3d 644, 658-59 (7th

13    Cir. 2004) (declining to apply rule in mixed media situations).  As a literary work,

14    two requirements must be met to be considered copyrightable: it must be fixed in a

15    tangible medium of expression; and it must be original.  *See* 17 U.S.C. § 102(a).

16    *See also Ashton-Tate Corp.*, 916 F.2d at 521 (noting that to be an author, "one

17    must 'translate[] an idea into a fixed tangible expression entitled to copyright

18    protection.'")(quoting *Reid*, 490 U.S. 730 (1989)).

19    Here, there is no dispute that the illustrations and jokes in *Golddigger* are

20    each independent expressions that were reduced to fixed tangible expressions and

21    thus could be copyrighted independently.  *Cf. Siegel*, 496 F.Supp.2d at 1149

22    (holding that the one factor precluding summary judgment was the lack of

23    evidence was an issue of whether the comic book characters were derivate works

24    or independently copyrightable).

25    2.  To the Extent *Golddigger* is a Joint Work, Edwards Cannot

26    Maintain a Claim for Copyright Infringement.

27    Each contributor to the joint work automatically acquires an undivided

28    ownership in the entire work, including all of the contributions contained therein.

NOTICE OF MOTION AND JOINT MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES

1  *Pye v. Mitchell*, 574 F.2d 476 (9th Cir. 1978); *M.G.B. Homes, Inc. v. Ameron*

2  *Homes, Inc.*, 903 F.2d 1486 (11th Cir. 1990) ("equally entitled to claim a copyright

3  in the undivided whole"); 1 NIMMER ON COPYRIGHT § 6.03 at 6-7.  Because each

4  contributor has an undivided ownership, each joint owner may freely publish the

5  original or the revised work without the consent of the other co-contributors and

6  without infringing their rights.  *Oddo v. Ries*, 743 F.2d 630, 633 (9th Cir. Cal.

7  1984) (holding that "each co-owner has an independent right to use the copyright")

8  (citing *Meredith v. Smith*, 145 F.2d 620, 621 (9th Cir. 1944)).  Likewise, the co-

9  contributor who publishes, licenses, or transfers the joint work to a third-party is

10  not liable for copyright infringement, nor is the third-party who contracted to

11  publish the work with the co-contributor.  *Id.*

12      Therefore, to the extent Plaintiff did contribute to *Golddigger*, he did so in

13  the context of creating joint work, which vested in the Wayans an undivided

14  ownership interest in *Golddigger.  See Oddo v. Ries*, 743 F.2d at 633.  The Wayans

15  were free to revise, license and publish *Golddigger* without Plaintiff's consent.

16  *See id.*  Therefore, Plaintiff cannot maintain a claim for copyright infringement

17  against any of the Defendants.  *See id.*

18  **IV.   PLAINTIFF'S STATE CLAIMS ARE PREEMPTED BY FEDERAL**

19  **COPYRIGHT LAW**

20      The Ninth Circuit has devised a two-part test to determine whether a

21  particular state law claim is preempted by copyright law.  *Del Madera Properties*

22  *v. Rhodes & Gardner, Inc.*, 820 F.2d 973, 976 (9th Cir. 1987).  First, it must be

23  determined whether the work at issue is subject to the Copyright Act.  The parties

24  agree that *Golddigger* satisfies this requirement.  Second, it must be determined if

25  the state law claim is "equivalent to any of the exclusive rights within the general

26  scope of copyright" as specified by the Act (17 U.S.C. §106).  17 U.S.C. § 301(a)

27  (1982).  "[T]o survive preemption, the state causes of action must protect rights

28  which are qualitatively different from copyright rights.  The state claim must have

an 'extra element' that changes the nature of the action."  *Del Madera,* 820 F.2d at 977.  It is therefore necessary to examine the state law claims alleged to determine if there is an "extra element" that provides protection outside the scope of copyright law.  In order to do so, however, it must be determined which state's law applies to Plaintiff's unfair competition and breach of implied contract claims.

### A.   California Law Applies and Plaintiff's Unfair Competition Claim is Preempted as Against All Defendants.

#### 1.   California Law Governs Plaintiff's Unfair Competition Claim.

When a case has been transferred from another state's federal court under 28 U.S.C. § 1404(a), as is the case here, the choice-of-law provisions of the originating state govern.  *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 243 n.8 (1981).  (*See* RJN, Ex. 1)  This case originated in New York and was transferred to California 28 U.S.C. § 1404(a).[5]  Therefore, New York choice-of-law rules apply.  In New York, the choice-of-law analysis "begins with a threshold determination as to whether an actual conflict of laws exists."  *GlobalNet Financial.Com, Inc. v. Frank Crystal & Co., Inc.*, 449 F.3d 377, 382 (2d. Cir. 2006).

##### a.   *An Actual Conflict of Law Exists*

Under California law, an unfair competition claim is a statutory claim that limits recovery to restitution and injunctive relief, whereas, under New York law, unfair competition is a common law tort that permits the recovery of damages including punitive damages.  *Compare* Cal. Bus. & Prof. Code §§ 17200, 17203 *with Getty Petroleum Corp. v. Island Transp. Corp.,* 878 F.2d 650, 657 (2nd Cir. 1989) (holding that New York law "clearly permits punitive damages" for an unfair competition claim).  Accordingly, a conflict of law exists.  *See Curley v. AMR Corp.*, 153 F.3d 5, 12 (2nd Cir. 1998) (noting a conflict exists when "the applicable law from each jurisdiction provides different substantive rules").

---

[5]  Notably, one factor used by the Court in determining whether to transfer the case was the application of California law to Plaintiff's state law claims.  (*See* SR Decl., Exs. A, B, and C.)

NOTICE OF MOTION AND JOINT MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES

1

### b. *New York's "Interest Analysis"*

2      For tort conflicts, New York uses an "interest analysis" requiring courts to

3   give "controlling effect to the law of the jurisdiction which, because of its

4   relationship or contact with the occurrence or the parties has the greatest concern

5   with the specific issue raised in the litigation." *Babcock v. Jackson*, 12 N.Y.2d 473

6   (N.Y. 1963) (citations omitted).  "Under this analysis, the court should focus

7   almost exclusively on the parties' domiciles and the locus of the tort" (*Roselink*

8   *Investors, L.L.C. v. Shenkman*, 386 F. Supp. 2d 209, 225 (S.D.N.Y. 2004)) and

9   give the "greatest weight to those contacts which are relevant to the policies

10  animating the particular rules in conflict."  *Hamilton v. ACCU-TEK*, 47 F.Supp. 2d

11  330, 335-36 (E.D.N.Y. 1999).

12      Although New York and California have expressed substantive different

13  rules regulating unfair competition, the purpose of an unfair competition claim in

14  both states is similar:  to deter misconduct and disgorge ill-gotten gains.  *See Bank*

15  *of the West v. Superior Court*, 2 Cal. 4th 1254, 1267 (Cal. 1992) (noting that under

16  California law, the purpose of unfair competition claims is "to deter future

17  violations . . . and to foreclose retention by the violator of its ill-gotten gains");

18  *Avon Periodicals, Inc. v. Ziff-Davis Pub. Co.*, 27 Misc. 2d 160, 164 (N.Y. Sup. Ct.

19  1952) ("[Unfair competition] seeks to prevent unfair and unconscionable

20  advantages taken by one against his competitor").  To give effect to this common

21  purpose, the Court should focus on the location of the alleged conduct giving rise

22  to the claim.  *See* RESTATEMENT (SECOND) OF CONFLICTS § 145, comment. f.  It is

23  undisputed that Plaintiff was a California employee and life-long resident, working

24  in California for California employers.  (SF 1-5, 49, 72.)  Admittedly, the Wayans

25  contracted with SMP to publish the 101 Series, a company based in New York (SF

26  95), but *Plaintiff* had *no* contact with SMP in New York or otherwise.  (SF 96.)

27  Moreover, to state a viable unfair competition claim, there must be something

28

NOTICE OF MOTION AND JOINT MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES

more than mere publication of an alleged copyrighted work.  *See, e.g., Del Madera Properties v. Rhodes & Gardner, Inc.,* 820 F.2d 973, 977 (9th Cir. 1987) (applying California law, *Walker v. Time Life Films, Inc.,* 784 F.2d 44, 53 (2d Cir.)*, cert. denied,* 476 U.S. 1159 (1986) ("Following this 'extra element' test, we have held that unfair competition and misappropriation claims grounded solely in the copying of a plaintiff's protected expression are preempted by section 301");*Warner Bros. Inc. v. Am. Broadcasting Cos*., 720 F.2d 231, 247 (2d Cir. 1983)(same).  Anything "more" must necessarily have taken place in California, where Plaintiff and the Wayans resided and worked.  California—not New York—has the greatest interest in regulating the remedies available to employees of this state and regulating conduct of employers that operate in California.  *Cf. Aalmuhammed v. Lee*, 202 F.3d 1227, 1237 (9th Cir. 2000) (noting that "California's **interest** in protecting its residents from stale claims arising **from work done outside the state is a weak one** … [and] New York's **interest in governing the remedies available to parties working [in-state] in New York is far more significant**" (emphasis added)).  Therefore, California law applies to Plaintiff's unfair competition claim.

2.  <u>No Additional Element in Unfair Competition Claim</u>

The Ninth Circuit has held that an allegation of unfair competition "does not add any 'extra element' which changes the nature of the action . . . [where it] is constructed upon the premise that the documents and information [] furnished to the defendants belonged to the [plaintiff] and were misappropriated by defendants."  *Del Madera Properties v. Rhodes & Gardner, Inc.,* 820 F.2d 973, 977 (9th Cir. 1987).  Plaintiff alleges in the Complaint that the "unauthorized *misappropriation* and misuse of Plaintiff's book . . . constituted the wrongful deprivation of Plaintiff's right to public recognition and credit as *author and owner of the book*."  (COMPL. ¶ 52.)  Moreover, Plaintiff explicitly states that his "action

concerning Defendants' unfair competition is related to Plaintiff's substantial copyright infringement action since *both actions are based on the same operative facts.*" (COMPL. ¶ 54.)  Plaintiff thus concedes and cannot contest that the unfair competition claim asserts rights equivalent to the copyright claim. Plaintiff's unfair competition claim is preempted by copyright law as against all of the Defendants.[6]

### B.  Plaintiff's Breach of Implied Contract Claim is Preempted

Similarly, Plaintiff's claim for breach of implied contract is preempted.

#### 1.  California Law Governs Breach of Implied Contract Claim

##### a.  *An Actual Conflict of Law Exists*

At least one federal court has acknowledged that "[t]here are clear differences between New York and California common law rules with respect to breach of contract in general, and contract interpretation and performance in particular." *Twentieth Century Fox Film Corp. v. Marvel Enters.*, 155 F. Supp. 2d 1, 13 (S.D.N.Y. 2001).

##### b.  *New York's "Center of Gravity" Test*

For contract claims, New York uses the "center of gravity" test, focusing on "the place of contracting, the places of negotiation and performance, the location of the subject matter, and the domicile or place of business of the contracting parties." *Lazard Freres & Co. v. Protective Life Ins. Co.,* 108 F.3d 1531, 1539 & n.5 (2d Cir. 1997).

Although Plaintiff has not clearly articulated the basis for claiming an implied-in-fact contract existed, if any conduct gave rise to such an implied

---

[6] Even if the Court concludes that New York law applies under New York's "interest analysis," the result is the same.  Plaintiff has failed to allege or provide evidence of an "extra element" that qualitatively changes the nature of his copyright infringement claim.  *See Samara Bros. v. Wal-Mart Stores*, 165 F.3d 120, 131 (2d Cir. 1998) (quoting *Mayer v. Josiah Wedgwood & Sons, Ltd.*, 601 F. Supp. 1523, 1535 (S.D.N.Y. 1985) (holding that under New York law the "extra element" must change the "nature of the action so that it is qualitatively different from a copyright infringement claim.").  Instead, Plaintiff has merely re-asserted his infringement claim.  (*See* COMPL. ¶ 53.)  Therefore, Plaintiff's unfair competition claim under New York is also preempted by federal copyright law.

NOTICE OF MOTION AND JOINT MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES

1  contract, it must have occurred in California by and between California residents.

2  Plaintiff admits he had zero contact with SMP and that SMP made him "no

3  promises". (SF 96.) There is no credible argument that New York law should

4  apply based on SMP's presence in New York. California law should apply to

5  Plaintiff's contract claim.

6  　　　　　2.  No Additional Element in Breach of Implied Contract Claim

7  　　　　Section 106 of the Copyright Act confers upon copyright owners the

8  exclusive rights to reproduce, distribute and display original works of authorship,

9  and to prepare works derived from the originals. 17 U.S.C. §106.  When the

10  gravamen of the claim is that the defendants used the plaintiff's work, without

11  authorization, the rights asserted under the implied contract are equivalent to the

12  rights of copyright owners under section 106 of the Act – namely, the exclusive

13  right to *use*.  *See, e.g.*, *Montz v. Pilgrim Films & Television*, 606 F.3d 1153, 1158

14  (9th Cir. 2010); *Calente-Kritzer Video v. Pinckney*, 881 F.2d 772, 774 (9th Cir.

15  1989).

16  　　　　An implied contract claim based on the conveyance of an "underlying idea"

17  may survive preemption, in part, because ideas alone are not protected by

18  copyright law.  *Grosso v. Miramax Film Corp.,* 2004 U.S. App. LEXIS 28043 at

19  *3 (9th Cir. Sept. 8, 2004).  Such claims are referred to as *Desny* claims after the

20  California Supreme Court case *Desny v. Wilder*, 46 Cal.2d 715 (Cal. 1956).  To

21  establish a *Desny* claim, the plaintiff must show that he prepared the work,

22  disclosed the work to the offeree *for sale*, and did so under circumstances from

23  which it could be concluded that the offeree voluntarily accepted the disclosure

24  knowing the conditions on which it was tendered.  *See Grosso v. Miramax,* 2004

25  U.S. App. LEXIS at *3-4.

26  　　　　Here, Edwards has not alleged any facts that could establish a *Desny* claim.

27  Plaintiff does not allege that the concept or idea of the work originated with him

28  (*See* SF 56, SF 97.)  To the contrary, Plaintiff knew that his employers were

NOTICE OF MOTION AND JOINT MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES

1    engaged in creating the 101 Ways Series when he claims he prepared his work and

2    dropped it off at Keenen Ivory Wayans's home.  (SF 59, 86-89.)  The gravamen of

3    Plaintiff's claim is that Defendants violated Plaintiff's asserted right to use and

4    authorize the use of content he claims belonged to him.  (*See* COMPL. ¶ 56

5    (asserting Plaintiff's "property interest" in *Golddigger* and his alleged

6    "understanding" that "any use" by Defendants would be "subject to notification

7    and consent by Plaintiff and compensation for *use* thereof").)  The right to use and

8    authorize the use of creative work is expressly within the exclusive domain of

9    copyright law.  *See* 17 U.S.C. § 106.  Plaintiff's breach-of-implied contract claim

10   is, accordingly, preempted by federal copyright law.

11   **V.    STATE LAW CLAIMS FAIL AS A MATTER OF LAW.**

12       **A.    Plaintiff's Contract Claim Fails as to All Defendants.**

13           In order to establish an implied in fact contract, the party asserting it must

14   allege and prove existence of conduct from which a binding contract may be

15   inferred.  *See, e.g., Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 676, fn. 20

16   (Cal. 1988).  Here, Plaintiff only generally and vaguely alleges that "[a]t all

17   relevant times, an implied contract existed between Plaintiff and Defendants"

18   (COMPL. ¶ 57.)  Plaintiff does not identify any conduct on the part of *any* of the

19   Defendants that would give rise to an implied-in-fact contract.  (*See* COMPL.¶¶ 56-

20   58.)

21           Plaintiff expressly states that he had no interactions with SMP (265:5-

22   266:10; 266:18-267:16) and that SMP did not make any promises to him.  (270:12-

23   21)  Therefore, Edwards cannot set forth any evidence that would establish that he

24   had an implied-in-fact contract with SMP.  In addition, Plaintiff admits that he has

25   no understanding or agreement with the Wayans with respect to confidentiality or

26   payment when he allegedly dropped off his manuscript.  (SF 59.)  Accordingly,

27   Plaintiff's claim for breach of contract fails as a matter of law.

28   ///

**B.    Plaintiff's Unfair Competition Claim Fails**

An unfair competition claim is essentially a common law copyright infringement claim, where, as Plaintiff admits, it is based on the "same operative facts" as his copyright infringement action.  (*See* COMPL. ¶54.)  Plaintiff's Complaint asserts that the "unauthorized misappropriation" of "Plaintiff's book" constituted a "wrongful deprivation" of his right to "credit as author and owner of the book."  (COMPL. ¶56.)  Plaintiff's unfair competition claim is thus based on his purported assumption that he had an exclusive ownership interest in jokes he allegedly drafted for inclusion in *Golddigger* while he was employed by the Wayans.  This assumption, however, is entirely without legal or factual support.

As discussed above, Plaintiff was a full-time employee of the Wayans at the time the underlying work was created, and if Plaintiff wrote jokes to be included in *Golddigger,* he did so within the scope of his employment on a work-for-hire basis. (*See, supra,* Section III.A.)  The work is thus owned by the Wayans in its entirety. A common law copyright infringement or misappropriation theory of liability fails as a matter of law.  Further, by extension, the unfair competition claim fails as a matter of law also against SMP who cannot be said to have committed any wrongdoing in contracting with the exclusive copyright owners to publish the 101 Ways Series.

**VI.    IN THE ALTERNATIVE, THE COURT SHOULD GRANT SUMMARY ADJUDICATION WITH RESPECT TO DAMAGES.**

To the extent that the Court does not grant summary judgment as to Plaintiff's entire claims, the Court should issue an order summarily adjudicating the issue of what types of damages and costs are recoverable by Plaintiff.  *See* FED. R. CIV. P. 56(b).

**A.    No Statutory Damages or Attorneys' Fees under Copyright Act.**

Plaintiff seeks punitive damages, statutory damages, and attorneys' fees in connection with his copyright claim.  (COMPL. ¶ 59, B, E, F, G.)  When the work

that is the subject of a copyright claim has not been published, as is the case with Plaintiff's manuscript, registration of the copyright prior to commencement of the alleged infringement is a prerequisite to recovery of attorneys' fees and statutory damages under the Act.  *See* 17 U.S.C. § 412.  *See also Streeter v. Rolfe*, 491 F. Supp. 416, 421 (W.D. La. 1980) (holding that Section 412(2) "applies only to published works").  Plaintiff cannot elect to recover statutory damages because his alleged copyrighted work—the manuscript attached to the Complaint as Exhibit 1—was unpublished and not registered with the U.S. Copyright Office at the time of the alleged infringement.  *Einhorn v. Mergatroyd Prods.*, 426 F. Supp. 2d 189, 197 (S.D.N.Y. 2006) ("In view of the foregoing, the complaint fails to allege facts that, if proved, would permit the conclusion that the work has been published.  In consequence, Section 412(1) precludes recovery of statutory damages or attorney fees for the alleged infringements prior to December 10, 2004, the effective date of the copyright registration.")  Therefore, Plaintiff is ineligible to recover statutory damages and attorneys' fees.  *See* 17 U.S.C. § 412.

Moreover, absent an election for statutory damages, punitive damages are not recoverable under the Act.  *See Davis v. Gap, Inc*., 246 F.3d 152, 172 (2d Cir. 2001) ("As a general rule, punitive damages are not awarded in a statutory copyright infringement action.") (citing 4 Nimmer on Copyright § 14.02 B, at 14-23 to 24; *Oboler v. Goldin*, 714 F.2d 211, 213 (2d Cir. 1983)).  To the extent Plaintiff may maintain a copyright claim at all, Plaintiff is foreclosed from recovery of statutory damages or attorneys' fees.

### B.    No Damages or Attorneys' Fees for Unfair Competition.

It is well-settled that in California, a private litigant may not recover attorney fees or damages, including punitive damages, for unfair competition.  Cal. Bus. & Prof. Code § 17203.  *See also Korea Supply Co. v. Lockheed Martin Corp*., 29 Cal. 4th 1134, 1147-1148 (Cal. 2003).  To the extent Plaintiff may maintain an unfair competition claim, he is prohibited from recovery of attorneys' fees or

damages in connection therewith.  *See, e.g., Pacific MDF Prods. v. Bio-Mass Energy Concepts, LLC*, 2006 U.S. Dist. LEXIS 89844, at *26-27 (Nov. 17, 2006 E.D. Cal.) (granting summary adjudication on damages for unfair competition).

### C.   No Attorneys' Fees or Punitive Damages for Breach of Contract.

California law clearly prohibits recovery of punitive damages for a claim sounding in contract.  CAL. CIV. CODE § 3294(a).  Moreover, attorneys' fees are not recoverable unless provided by a statute, law or the terms of the contract.  CAL. CIV. PRO. § 1033.5 (a)(10).  Plaintiff has not, and cannot, reference any term of the contract, statute or law that permits recovery of attorneys' fees in connection with his breach of contract claim.[7]  (COMPL. ¶¶12-38, 56-58.)  Accordingly, Plaintiff cannot recover either in connection with his third cause of action.

## VII.   CONCLUSION

Based on the foregoing, all Defendants are entitled to summary judgment as a matter of law on each of Plaintiff's causes of action.  Further, and in the alternative, all Defendants are entitled to an order precluding Plaintiff from recovering (1) statutory damages or attorneys' fees in connection with Plaintiff's first cause of action; (2) non-restitutionary relief in connection with Plaintiff's second cause of action, and (3) attorneys fees or punitive damages in connection with Plaintiff's third cause of action for breach of implied in fact contract claim.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

---

[7] Under New York law, Plaintiff is also precluded from recovery.  *See Locascio v. Aquavella*, 185 A.D.2d 689 (N.Y. App. Div. 4th Dep't 1992) ("in the absence of a statutory or contractual basis for payment of attorney's fees they are generally not recoverable"); *Umfrey v. NeMoyer*, 184 A.D.2d 1047, 1048 (N.Y. App. Div. 4th Dep't 1992) (same).

1   Dated: December 17, 2010          FREEDMAN & TAITELMAN, LLP

2

3                                    By:   ___/s/_____
                                          Bryan J. Freedman, Esq.
4                                         September Rea, Esq.
                                          Attorneys for Defendants Keenen Ivory Wayans,
5   Shawn Wayans, Marlon Wayans, Wayans Brothers
    Productions, and St. Martin's Press, Inc. (now known
6   as SMP 1952) Inc.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND JOINT MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES