```
 1  Bryan J. Freedman, Esq. (SBN 151990)
        bfreedman@ftllp.com
 2  September Rea (SBN 261121)
        srea@ftllp.com
 3  FREEDMAN & TAITELMAN, LLP
    1901 Avenue of the Stars, Suite 500
 4  Los Angeles, CA  90067
    Telephone: (310) 201-0005
 5  Facsimile: (310) 201-0045
 6
    Attorneys for Defendants Keenen Ivory Wayans,
 7  Shawn Wayans, Marlon Wayans,
    Wayans Bros. Productions, and
 8  SMP, LLC incorrectly named St. Martin's
    Press, Inc. (now known as SMP (1952) Inc.)
 9
10
                  UNITED STATES DISTRICT COURT
11                CENTRAL DISTRICT OF CALIFORNIA
12
13  JARED EDWARDS,                )  CASE NO. 2:10-cv-02231 R (RCX)
                                   )
14              Plaintiff          )  [Honorable Manuel Real,
                                   )  Courtroom 8, USDC - Central District]
15                                 )
    vs.                            )  SEPARATE STATEMENT OF
16                                 )  UNCONTROVERTED FACTS AND
                                   )  CONCLUSIONS OF LAW IN
17  KEENEN IVORY WAYANS,           )  SUPPORT OF MOTION FOR
    SHAWN WAYANS, MARLON           )  SUMMARY JUDGMENT, OR IN
18  WAYANS, WAYANS BROTHERS        )  THE ALTERNATIVE MOTION
19  PRODUCTIONS, AND ST.           )  FOR SUMMARY ADJUDICATION
    MARTIN'S PRESS, INC.,          )
20                                 )  Date:  January  18, 2011
                                   )  Time:  10:00 a.m.
21              Defendants.        )  Location.: Courtroom 8
22                                 )
                                   )  [Filed Concurrently With Notice of
23                                 )  Motion and Motion for Summary
                                   )  Judgment; Declarations of September
24                                 )  Rea, Jay Glick, Paul Sleven and
                                   )  Elizabeth Beier; and Request for
25                                 )  Judicial Notice and [Proposed]
26                                 )  Judgement]
                                   )
27                                 )
28  _____)
```

1

SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND
CONCLUSIONS OF LAW

Defendants Keenen Ivory Wayans, Shawn Wayans, Marlon Wayans, and Wayans Bros. Productions, and St. Martin's Press, Inc. (now known as SMP (1952) Inc.) (collectively, the "Defendants") respectfully submit the following Statement of Uncontroverted Facts and Conclusions of Law in Support of their Motion for Summary Judgment, or in the alternative, in support of the Motion for Summary Adjudication

## UNCONTROVERTED FACTS

1. Plaintiff Jared Edwards ("Plaintiff" or "Edwards") is a California resident.

   - Plaintiff's Complaint ("COMPL.") ¶ 5
   - Deposition of Plaintiff Jared Edwards dated November 23, 2010 attached to the Declaration of September Rea ("REA DECL.") as Exhibit B, filed concurrently herewith ("EDWARDS DEPO.") at 11:2-6

2. Defendant Keenen Ivory Wayans is a California resident.

   - COMPL. ¶ 6,
   - REA DECL., EX. C, Declaration of Keenen Ivory Wayans in Support of Motion to Transfer.

3. Defendant Marlon Wayans is a California resident.

   - REA DECL., EX. D, Declaration of Marlon Wayans in Support of Motion to Transfer.

4. Defendant Shawn Wayans is a California resident.

   - COMPL. ¶ 7
   - EDWARDS DEPO. 11:1-8.

5. Defendant Wayans Bros. Productions, Inc. is a California corporation of which the Wayans are the exclusive principals.

   - COMPL. ¶ 9;
   - Declaration of Jay S. Glick filed concurrently herewith ("GLICK DECL."), ¶¶ 2, 2(c).

1  6. St. Martin's Press, LLC, a New York limited liability company, not
2 St. Martin's Press, Inc. (now SMP (1952) Inc.), published the book entitled "101
3 Ways to Know You're a Golddigger".
4  - Declaration of Paul Sleven filed concurrently herewith ("SLEVEN DECL.") ¶¶
5    2-4.¶
6  - Declaration of Elizabeth Beier filed concurrently herewith ("BEIER DECL.")
7    ¶¶ 6, 7, 8, 11.
8  7. Plaintiff "began working as a Production Assistant for the Wayans
9 Brothers and their Company in or around 1995."
10    - COMPL. ¶ 13
11  8. Plaintiff could not recall working on "any movie sets" while
12 freelancing.
13    - EDWARDS DEPO. 61:16-20
14  9. Plaintiff worked on television shows while he was freelancing but
15 could not recall the names of those shows.
16    - EDWARDS DEPO. 61:21-25
17  10. Plaintiff could not recall if he visited any studios whole freelancing.
18    - EDWARDS DEPO. 62:1-3
19  11. Plaintiff was "[w]orking for Washington Mutual" "filing loans"
20 through Adecco, but couldn't "remember how long" he worked there.
21    - EDWARDS DEPO. 62:20-63:8
22  12. After working at Washington Mutual, Plaintiff was rehired by the
23 Wayans.
24    - EDWARDS DEPO. 64:3-65:17
25  13. Plaintiff could not list could not "recall any of the sets" he worked on
26 when he was "doing freelance".
27    - EDWARDS DEPO. 90:13-91:4
28

3
SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND
CONCLUSIONS OF LAW

14. Plaintiff could not recall the longest period of time that he worked as a runner/P.A. aside from the Wayans Brothers.

- EDWARDS DEPO. 92:23-102:20

15. Plaintiff went through a "rough period" "after not having a job for awhile."

- EDWARDS DEPO. 131:2-4

16. He was behind on his credit card bills and car payment and "a little behind" on his rent and "got a few [eviction] notices, but [he] was able to end up paying."

- EDWARDS DEPO. 130:12-134:17

17. Plaintiff borrowed $12,000 from Shawn Wayans after Shawn Wayans "offered the loan"

- EDWARDS DEPO. 130:12-131:1

18. Plaintiff took a "one-year sabbatical away from" the Wayans.

- EDWARDS DEPO. 125:22-24

19. Plaintiff was hired on the Keenen Ivory Wayans Show as a P.A. (production assistant) after he recognized Keenen Ivory Wayans "on Melrose, the street" and approached him.

- EDWARDS DEPO. 35:1-37:2

20. Plaintiff talked to Keenen Ivory Wayans about "wanting to write for him".

- EDWARDS DEPO. 37:13

21. Plaintiff talked to Keenen Ivory Wayans about how Plaintiff was "just trying to find [a] way in".

- EDWARDS DEPO. 37:14

22. Plaintiff talked to Keenen Ivory Wayans about how Plaintiff wanted "to break into writing and acting".

4

SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW

- E DWARDS D EPO. 37:1-2

23. Plaintiff "wanted to do it all."

- E DWARDS D EPO. 37:2

24. May be "one month or so" after talking to Keenen Ivory Wayans on Melrose, Plaintiff was hired as a production assistant and a runner on the Keenan Ivory Wayans Show.

- E DWARDS D EPO. 43:24-44:4

25. Plaintiff's duties generally were "to assist overall production" whether on set, on location, or in the office.

- E DWARDS D EPO. 45:11, 44:20-45:8

26. "It was open-ended."

- E DWARDS D EPO. 67:5

27. Plaintiff assisted "Shawn and Marlon" when he "[w]orked on Scary Movie 2 and Little Man."

- E DWARDS D EPO.  60:25-61:1

28. Plaintiff worked on the Keenen Ivory Wayans Show and on the Wayans Brothers television show.

- E DWARDS D EPO. 43:24-44:4; 54:4-11

29. Plaintiff took a trip with Shawn Wayans to New York because "they were hosting the MTV Awards" and he was "working at the show".

- E DWARDS D EPO. 70:13-17

30. Plaintiff worked for Shawn Wayans at Shawn Wayans's stand-up gigs.

- E DWARDS D EPO. 106:1-11

31. Plaintiff works as a personal assistant to Shawn Wayans and Marlon Wayans.

- E DWARDS D EPO. 64:23-65:20

5

SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW

1     32.     Plaintiff worked as a production assistant for the Wayans.

- EDWARDS DEPO. 54:12-16

33.     Plaintiff worked as a "runner".

- EDWARDS DEPO. 55:22-56:1

34.     Plaintiff's "job for the Wayans Brothers" was "doing extra work "as an actor

- EDWARDS DEPO. 54:4-11

35.     Plaintiff "did punch-up on Little Man"—he was "paid on [the] punch-up project".

- EDWARDS DEPO. 177:19-20; 312:18-20

36.     Plaintiff was "always on call"

- EDWARDS DEPO. 67:9

37.     Plaintiff did "whatever was needed."

- EDWARDS DEPO. 69:18-19; 44:20-45:11; 65:17

38.     Plaintiff flew commercial and on private jet[s] with the Wayans on trips.

- EDWARDS DEPO. 83:17-84:15

39.     Plaintiff traveled with the Wayans to New York

- EDWARDS DEPO. 68:15

40.     Plaintiff traveled with the Wayans to Europe—to Paris and London

- EDWARDS DEPO. 82:3-5; 83:13-16

41.     Plaintiff stayed in the "same hotel" with the Wayans where the Wayans "always had suites"

- EDWARDS DEPO. 82:15-20

42.     Plaintiff went to "clubs" and did not have to "wait in line when [he] went to a club" with the Wayans. The Wayans would get a VIP table where Plaintiff would sit with them.

6

SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND
CONCLUSIONS OF LAW

- E<small>DWARDS</small> D<small>EPO</small>. 88:4-10

43. "Shawn and Marlon [did] pay for the trip to San Diego" and Edwards did not pay for his plane ticket to Europe.

- E<small>DWARDS</small> D<small>EPO</small>. 75:11-13; 82:11-14

44. Plaintiff "didn't think it was fair" that he was asked to work when he "wasn't supposed to be working," it was "kind of unfair," and Shawn was "being unfair".

- E<small>DWARDS</small> D<small>EPO</small>. 76:11-19; 80:18-20; 106:1-11

45. He felt they expected him to "jump up and do things right away" just because [they] "wrote [his] checks."

- E<small>DWARDS</small> D<small>EPO</small>. 77:17-20

46. He wanted the Wayans to "appreciate [his] hard work [and not] write it off as not being anything."

- E<small>DWARDS</small> D<small>EPO</small>. 78:23-79:2

47. He complains that he was "always on the clock with them" even when they went to clubs and were otherwise socializing, he was "always working."

- E<small>DWARDS</small> D<small>EPO</small>. 89:12-20

48. "That was [his] job. It was either do that or not be working."

- E<small>DWARDS</small> D<small>EPO</small>. 163:10-15

49. At the time Plaintiff quit for the last time he was "still collecting a Wayans Brothers check, which [meant] yes, so [he was working for] all three of them."

- E<small>DWARDS</small> D<small>EPO</small>. 105:10-21; 225:4-5

50. The Wayans paid Plaintiff as a full-time employee through Wayans Bros. Productions, Inc. and subsequently through Shawn Wayans (or his loan-out company) and Marlon Wayans (or his loan-out company). At all relevant times, the entities filed a W2 form for Jared Edwards and also paid payroll and social

1  security taxes for him.
2  • GLICK DECL. ¶¶ 3-11, Exs. A, B, C, D, E, F, G, & H.
3  51. "I envisioned [my book] being a coffee table book, a humor book.
4  [Shawn] had done a book before, so I was doing it in the same vein as what they
5  had done before, "150 Ways to Know You're Ghetto" or whatever.
6  • EDWARDS DEPO. 137:21-138:10
7  52. In September 2005, Elizabeth Beier met with Keenen Ivory Wayans,
8  Shawn Wayans, Marlon Wayans, Rick Alvarez and Tracy Fisher from the William
9  Morris Agency to discuss the possibility of publishing a cartoon book series
10 authored by the Wayans and consisting of 101 illustrated jokes each with a
11 different common theme entitled "101 Ways to Know…" and in the vein of a book
12 entitled "150 Ways to Tell You're Ghetto" published by Dell Publishing, a division
13 of Bantam Doubleday Dell Publishing, Inc. that Shawn Wayans had co-authored in
14 1997
15 • BEIER DECL. ¶ 3.
16 53. Plaintiff understood the Wayans were going to "dust off [this]
17 property" and create a new series of illustrated joke books each with a separate
18 theme, such as 101 Ways to Know Your Mama's Ghetto ("101 Series" or "101
19 Project").
20 • EDWARDS DEPO. 140:10-141:22
21 54. Plaintiff wanted to "get in on" the 101 Project and began writing jokes
22 that he wanted to be "included in that property." He thought that if it "happened to
23 be good enough, it would go through the process of the artist illustrating it and [the
24 Wayans] finding someone to do it."
25 • EDWARDS DEPO. 140:13-141:5
26 55. He thought about this endeavor "as a means for advancement" to a
27 "earn a much more creative position"
28

8
SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND
CONCLUSIONS OF LAW

- EDWARDS DEPO. 244:20-245:3 and *Ex. JE_10* thereto, *E-mail Bates labeled JE-118*

56. Edwards intend "the style of the book" to be in the vein of the other books in the 101 Ways to Know Series which have "jokes married with illustrations, so [he] could of written just a regular book, but [he] wrote a book in the vein of what it is the property was."

- EDWARDS DEPO. 142:1-15

57. Plaintiff "wasn't told till afterwards how many illustrations were required" but his goals was to reach "101" and he "wrote over the 101 limit" because that was the name of the [101 Ways to Know] property. .

- EDWARDS DEPO. 143:1-5; 145:8-22; 194:8-195:9; 195:12-19

58. Plaintiff claims that he worked on his first draft mostly at home and at the office after hours.

- COMPL. ¶ 20

59. Plaintiff says he did not show it to his employer his manuscript of golddigger jokes until it was complete, at which time he says he dropped it off at Keenen Ivory Wayans's home.

- EDWARDS DEPO. 196:24-197:7

60. He does not allege that he provided any written or verbal notice of confidentiality nor conditional terms of review.

- COMPL. ¶¶ 22-24)

61. Plaintiff was encouraged to proceed and was tasked with various responsibilities pertaining to the 101 Series.

- EDWARDS DEPO. 194:19-195:9; 221:10-17

62. This was during the time I was still employed with them, so because it was my book …anything that happened with them, I was always e-mailed a copy."

- EDWARDS DEPO. 217:9-15; 219:8-10; 224:18-24; 225:4-9

9

SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND
CONCLUSIONS OF LAW

63. He even worked with at least one Wayans's illustrator and sat down to talk about the selection of drawings.

- EDWARDS DEPO. 194:12-195:9

64. Plaintiff understood that the Wayans had the ultimate authority to approve, modify or reject the jokes.

- EDWARDS DEPO. 218:7-11; 225:23-226:3

65. Plaintiff claims he left the employment of the Wayans on his own volition and at the time the 101 Project was ongoing.

- EDWARDS DEPO. 280:10-281:6

66. He did not ask the Wayans about the status of the 101 Series before or after his departure.

- EDWARDS DEPO. 325:6-16.

67. On or about June 9, 2009, two of the titles in the 101 Series (*Golddigger* and *Mama's House*) were published in paperback by St. Martin's Press, LLC who contracted with the Wayans to publish the book.

- BEIER DECL. at ¶ 11

68. The Wayans registered *Golddigger* with the U.S. Copyright Office, which issued a copyright registration certificate effective July 6, 2009.

- Request for Judicial Notice ("RJN"), Ex. E

69. Plaintiff claims that he was surprised to discover that the 101 Series was published.

- COMPL. ¶ 35

70. Plaintiff registered a copy of his alleged list of golddigger jokes (without illustrations) with the U.S. Copyright Office and was issued a copyright registration certificate effective August 23, 2009.

- COMPL. ¶ 34, Exs. 1, 2
- RJN, F

10
SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW

71. Plaintiff then initiated this Action alleging that the Wayans and SMP infringed on his copyrighted work and alleging pendent state claims for unfair competition and breach of implied in fact contract.

- *See generally* COMPL.

72. Plaintiff worked in the Wayans's proximity, either in their established production offices (Edwards Depo. 44:20-45:8), on location with them (*id.* 68:15; 82:3-5; 83:13-16) or at their individual homes (*id.* 64:23-65:20; 67:18-68:1).

- EDWARDS DEPO. 44:20-45:8, 68:15; 82:3-5; 83:13-16, 64:23-65:20; 67:18-68:1)

73. Mr. Edwards' professional duties in his capacities as the Wayans' Brothers' Production Assistant, and later as the Wayans Brothers' Personal Assistant, were confined to administrative responsibilities and the completion of specific tasks that the Wayans Brothers assigned to him on an *ad hoc* basis.

- COMPL. ¶14

74. Plaintiff "quit by sending [Marlon] a message saying [he] was quitting" and at that time the 101 books "were all in the stage of being illustrated. [Plaintiff's] jokes were being illustrated."

- EDWARDS DEPO. 275:11-276:7; 280:16-281:10

75. The Wayans were "excited over it" and "made him aware" that he "could possibly have an opportunity . . . to get credit and finally be recognized."

- EDWARDS DEPO. 196:24-197:7

76. The Wayans had the final "say-so" over the jokes and the jokes "were changed later when [the Wayans] did the mockup covers which had [his] name on it."

- EDWARDS DEPO. 164:23-165:7; 217:15-218:11)

77. This was during the time that Plaintiff "was still employed with them, so because it was [his] book . . . anything that happened with them, [he] was

11
SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW

always e-mailed a copy, so, you know, if they need to understand something, just as of, you know, formal way of doing things" and Ahyoung Kim exchanged emails not just with Plaintiff but with "Shane Miller, also, with all the artists," "all the people who worked on it".

- EDWARDS DEPO. 225:9
- EDWARDS DEPO. 217:12
- EDWARDS DEPO. 225:10-17
- GLICK DECL. ¶¶ 12-15

78. The "*final say-so came from Shawn and Marlon and Keenen. No one made a decision over them. . . .No one okayed [anything] but them*."

- EDWARDS DEPO. 217:15-218:11

79. The Wayans knew everything Plaintiff was working on, because "yeah, they were [his] bosses"

- EDWARDS DEPO. 195:12-19

80. Plaintiff was "always on the clock with [the Wayans]"

- EDWARDS DEPO. 89:12-20

81. Plaintiff was "always working" with the Wayans

- EDWARDS DEPO. 163:12

82. Plaintiff was "in the office every day".

- EDWARDS DEPO. 178:19

83. Plaintiff worked on the manuscript at the office on his computer and "wherever [he] was."

- EDWARDS DEPO. 137:18-20; 146:13-21

84. Plaintiff testified that the entire office was working on the 101 Ways Project, including *Golddigger*.

- EDWARDS DEPO. 182:21-185:5; 192:11-22; 203:20-204:13

12
SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW

85. "This was a draft, so once it left my hands and it was in the person—the project manager who handled it, Ahyoung Kim, she handled every document after that. The reason why you see my notes on there, it's something that, once it was given back to me, I had to read over my own jokes again." The Wayans would "have their own notes or wanted to get the artist on it…"

- EDWARDS DEPO. 217:15-218:11; 229:16-230:2

86. Plaintiff was working as a full-time employee when he started drafting jokes "in the same vein" as the 150 Ways book and he knew the Wayans "already were trying to dust that property off," and that the reason he says he wrote the Golddigger jokes was so that [he] could have a book included in that property."

- EDWARDS DEPO. (137:12-15) 137:21-139:4; 139:23-140:12

87. "[T]he artists were already on staff, so [Plaintiff's] reasons for writing the book [were that] if it happened to be good enough, it would go through the process of the artist illustrating it and [the Wayans] finding someone to do it. . . . [he] envisioned to write a book that would take [him] from being an assistant runner to progressing [him]self".

- EDWARDS DEPO. 140:13-141:5

88. Plaintiff wanted "to write as much as [he] could to try and see what could 'get on' [the 101 Project]."

- EDWARDS DEPO. 141:16-20

89. Wayans "liked" his jokes and he "could get [his] chance off that."

- EDWARDS DEPO. 244:20-245:3, *email ex. JE-118*

90. Plaintiff knew "that the goal was to reach 101" jokes (Edwards Depo. 145:8-22), because "that was the name of the property" (Edwards Depo. 145:18) so he would try "to give [the Wayans] the best options for the funniest jokes." (Edwards Depo. 145:12-13)

- EDWARDS DEPO. 145:8-22

13
SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW

91. Plaintiff in person conversations Shawn Wayans, Marlon Wayans and artists working for the Wayans such as David Torres.

- EDWARDS DEPO. 169:2-11; 194:8-195:19

92. *Golddigger* consists of jokes and illustrations.

- REA DECL., Ex. A—"101 Ways to Know You're a Golddigger"
- BEIER DECL. ¶ 3

93. Edwards testified that when he drafted jokes for *Golddigger* he envisioned the jokes with illustrations created by the Wayans (and more specifically, by illustrators "on staff").

- EDWARDS DEPO. 138:2-139:7; 139:13-14; 141:6-15; 143:6-144:3

94. Plaintiff worked with "David Torres" at Wayans Bros. Productions "to illustrate the picture, I was instructed to, you know, lead him, guide him" because "either Shawn or Marlon" told him to do that.

- EDWARDS DEPO. 194:8-195:9

95. The Wayans, through SMK, which was exclusively owned by Shawn Wayans, Marlon Wayans and Keenen Ivory Wayans, entered into a written contract with St. Martin's Press, LLC to publish three books in the 101 Ways to Know series.

- BEIER DECL. ¶¶ 3-8, Ex. A
- SLEVEN DECL. ¶¶ 2-4
- GLICK DECL. ¶ 2

96. Plaintiff had no contact with anyone at SMP in New York and testified that SMP made him "no promises".

- EDWARDS DEPO. 265:5-266:10; 266:18-267:16
- BEIER DECL. ¶ 13.

97. Edwards knew that the Wayans were "trying to redo" the 101 Ways Series.

14

SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW

- EDWARDS DEPO. 142:1-15; 177:10; 178:2-7

## CONCLUSIONS OF LAW

1. There is no genuine issue of material fact as to the applicability of the work for hire doctrine to Plaintiff Jared Edwards's contributions to *Golddigger*.

2. Plaintiff has not overcome the presumption that any work that Plaintiff did on *Golddigger* was on a "work for hire basis" as that term is defined by the 1976 Copyright Act.

3. Therefore, Plaintiff's contribution to *Golddigger* was made on a "work for hire" basis.

4. The Wayans are the authors of *Golddigger* under the work for hire doctrine.

5. Plaintiff's claim for copyright infringement fails as a matter of law as to all named defendants because the Wayans are the authors of *Golddigger*.

6. In the alternative, to the extent that Plaintiff Jared Edwards has overcome the presumption that his contributions to *Golddigger* were owned by the Wayans as a result of the work for hire doctrine, Plaintiff Jared Edwards co-authored *Golddigger* with the Wayans.

7. At the time of creating the written text of *Golddigger*, Plaintiff intended to have the text merged into a unitary whole with illustrations provided by the Wayans, through their artists and illustrators.

8. *Golddigger* is a joint work as that term is defined by the Act and the Wayans own an undivided ownership interest in the work.

9. Because the Wayans owned an undivided ownership interest in the work at the time the alleged infringement occurred, Plaintiff cannot maintain a claim for copyright infringement against any of the named defendants.

10. California law applies to Plaintiff claim for unfair competition under New York's choice of law principles.

11. Plaintiff's claim for unfair competition is preempted by federal copyright law.

12. To the extent that Plaintiff's claim for unfair competition survives preemption, Plaintiff's claim fails as a matter of law as to all Defendants because Plaintiff has not and cannot set forth evidence to establish a prima facie case for unfair competition.

13. California law applies to Plaintiff claim for breach of implied-in fact contract under New York's choice of law principles.

14. Plaintiff's claim for breach of implied-in fact contract is preempted by federal copyright law.

15. To the extent that Plaintiff's claim for breach of implied-in fact contract survives preemption, Plaintiff's claim fails as a matter of law as to all Defendants because Plaintiff has not and cannot set forth evidence to establish a prima facie case for breach of implied-in fact contract.

16. In the alternative, and to the extent the Court does not enter summary judgment, Plaintiff may not elect to recover statutory damages pursuant to 17 U.S.C. § 412 because his copyrighted work—the manuscript attached to the Complaint as Exhibit 1—was unpublished and not registered with the U.S. Copyright Office at the time of the alleged infringement by Defendants.

17. In the alternative, and to the extent the Court does not enter summary judgment, Plaintiff may not elect to recover attorneys' fees pursuant to 17 U.S.C. § 412 because his copyrighted work—the manuscript attached to the Complaint as Exhibit 1—was unpublished and not registered with the U.S. Copyright Office at the time of the alleged infringement by Defendants.

1  18.   In the alternative, and to the extent the Court does not enter summary judgment, Plaintiff may not recover any punitive damages pursuant to his claim for copyright infringement in violation of the 1976 Copyright Act.

19.   In the alternative, and to the extent the Court does not enter summary judgment, Plaintiff is precluded from recovery of attorneys' fees or damages in connection with his unfair competition claim under California law.

20.   In the alternative, and to the extent the Court does not enter summary judgment, Plaintiff cannot not recover of attorneys' fees or punitive damages in connection with his breach of contract claim.

21.   Judgment shall be entered in favor of all named defendants consistent herewith.

Dated: December 17, 2010			FREEDMAN & TAITELMAN, LLP

By:  __/s/_____
	Bryan J. Freedman, Esq.
	September Rea, Esq.
Attorneys for Defendants Keenen Ivory Wayans, Shawn Wayans, Marlon Wayans, Wayans Brothers Productions, and St. Martin's Press, Inc. (now known as SMP)

17
SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW