# EXHIBIT "A"



JUDGE McMAHON   09   CV   10263

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

RECEIVED
DEC 17 2009
U.S.D.C. S.D. N.Y.
CASHIERS

-------------------------------------------------------x

JARED EDWARDS,                      :

                     Plaintiff,   :   CASE NO. _____

                         :

       v.               :   **DEMAND FOR JURY TRIAL**

KEENEN IVORY WAYANS; SHAWN WAYANS;   :
MARLON WAYANS; WAYANS BROTHERS      :
PRODUCTIONS; and ST. MARTIN'S PRESS, INC.,  :

                  Defendants.   :

-------------------------------------------------------x

### COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Jared Edwards ("Plaintiff" or "Mr. Edwards"), by and through his

undersigned counsel, Thompson Wigdor & Gilly LLP, as and for his Complaint in this action

against Defendants Keenen Ivory Wayans, Shawn Wayans, Marlon Wayans (collectively, the

"Wayans Brothers"), Wayans Brothers Productions (the "Company") and St. Martin's Press,

Inc. (collectively, "Defendants") hereby respectfully alleges as follows:

### NATURE OF THE CLAIMS

1.     This is an action for declaratory, injunctive and equitable relief, as well as

monetary damages, liquidated damages, punitive damages, and attorneys' fees and costs, to

redress Defendants' unlawful copyright infringement of Plaintiff's literary work of original

authorship, in violation of the Copyright Act of 1976, as amended, 17 U.S.C. §§ 101 *et seq.*,

as well as Defendants' unfair competition and breach of contract.

2.     Defendants' conduct was intentional, knowing, malicious, willful and wanton

and/or showed a reckless disregard for Mr. Edwards, warranting an award of punitive

damages, and has caused, and continues to cause, Mr. Edwards to suffer substantial

economic and non-economic damages, as well as permanent harm to his professional and personal reputations.

## JURISDICTION AND VENUE

3.     The Court has jurisdiction over Plaintiff's claims arising under the Copyright Act pursuant to 28 U.S.C. § 1338(a).  The Court has supplemental jurisdiction over Plaintiffs' related claims arising under state law pursuant to 28 U.S.C. § 1367(a).

4.     Venue is proper in this district pursuant to 28 U.S.C. § 1400(a), as Defendants and/or Defendants' agents reside and may be found in this district.

## PARTIES

5.     Plaintiff Jared Edwards is a resident of Los Angeles County, California.

6.     Upon information and belief, Defendant Keenen Ivory Wayans is a resident of Los Angeles County, California, as well as New York County, New York.

7.     Upon information and belief, Defendant Shawn Wayans is a resident of Los Angeles County, California.

8.     Upon information and belief, Defendant Marlon Wayans is a resident of Westchester County, New York.

9.     Defendant Wayans Brothers Productions is a production company and California corporation located 8730 Sunset Boulevard, Suite 290, West Hollywood, California 90069.  Upon information and belief, Defendants Keenen Ivory Wayans, Shawn Wayans and Marlon Wayans are the principals of Defendant Wayans Brothers Productions.

10.     Defendant St. Martin's Press, Inc. ("St. Martin's") is a New York Corporation and publishing house with its principle place of business located at 175 Fifth Avenue, New York, New York 10010.  Upon information and belief, St. Martin's has served, and continues

to serve, as the Wayans Brothers' and Company's agent and representative in connection

with the copyright infringement, unfair competition and breach of contract alleged herein,

including without limitation, the unlawful copying, distribution, marketing and sale to the

public of Plaintiff's copyrighted book of original authorship.

<div align="center">

**PROCEDURAL REQUIREMENTS**

</div>

11.　　Plaintiff has complied in all respects with the Copyright Act of 1976 and all

other laws governing copyright by applying for copyright registration, making the required

deposit, and receiving from the Register of Copyrights a Certificate of Registration,

Registration Number "TXu 1-612-358" (effective date of registration August 23, 2009).

<div align="center">

**FACTUAL ALLEGATIONS**

</div>

**I.**　　**Mr. Edwards' Employment With the Wayans Brothers**

12.　　Defendants Keenen Ivory, Shawn and Marlon Wayans are well-known

comedians who have directed, produced and/or starred in a number of television series

and feature films, including "*In Living Color*," "*The Wayans Bros.*," "*Hollywood Shuffle*,"

"*Scary Movie*" and "*White Chicks.*"

13.　　Mr. Edwards began working as a Production Assistant for the Wayans

Brothers and their Company in or around 1995. After nearly five years of exemplary

performance in that capacity, Mr. Edwards became the Personal Assistant for Keenen Ivory,

Shawn and Marlon Wayans beginning in or around 2000.

14.　　Mr. Edwards' professional duties in his capacities as the Wayans Brothers'

Production Assistant, and later as the Wayans Brothers' Personal Assistant, were confined

to administrative responsibilities and the completion of specific tasks that the Wayans

Brothers assigned to him on an *ad hoc* basis.

<div align="center">

3

</div>

15.     Mr. Edwards always fulfilled the professional obligations associated with his role as the Wayans Brothers' Production and/or Personal Assistant diligently and with exemplary dedication to his employers.

16.     However, Mr. Edwards' responsibilities as the Wayans Brothers' Production and/or Personal Assistant never extended to, and did not include, the creation and/or authorship of original content for any of the Wayans Brothers' professional projects, nor was Mr. Edwards ever credited as an author of any of the materials that the Wayans Brothers published or performed during the course of his employment.

17.     Mr. Edwards never authored or created copyrightable subject matter in service of the Wayans Brothers at any time during his employment, nor did the Wayans Brothers request, require, expect or anticipate that he would do so.

18.     After nearly 10-years of dedicated service as the Wayans Brothers' Assistant, Mr. Edwards aspired to advance his own career to a new level, and hoped to become an author in his own right.

## II.     Mr. Edwards' Authorship of *"You know you're a Golddigger when..."*

19.     Rather than simply waiting for opportunity to knock, in 2005, Mr. Edwards developed his original concept for a book, tentatively entitled *"You know you're a Golddigger when..."* an anthology of original jokes critiquing some women who may seek material wealth, status and other benefits through superficial romantic relationships.

20.     Mr. Edwards drafted the manuscript for this work independently and at his own initiative, working late into the night on his personal computer, after completing his full days' work as the Wayans Brothers' Assistant.

21.     Mr. Edwards finally completed his manuscript by early 2006.

4

III.    **Mr. Edwards Proposed a Collaboration with the Wayans Brothers for Publication of his Manuscript *"You know you're a Golddigger when...."***

22.     Out of the relationship of mutual trust and respect that he mistakenly believed he had developed with Keenen Ivory, Shawn and Marlon Wayans over the course of his 10-years of service as their Assistant, Mr. Edwards disclosed his manuscript to them and explained his aspiration of becoming an author.

23.     In particular, Mr. Edwards outlined his proposed vision for the final publication of his manuscript, and even offered to credit the Wayans Brothers as co-authors of his proposed publication in the hope of capturing their interest and accomplishing his goal of publishing *"You know you're a Golddigger when..."* with illustrations to accompany each of the jokes set forth in his original manuscript.

24.     Mr. Edwards was delighted by the Wayans Brothers' seemingly positive response to his proposal, and their oral commitment to pursue his vision and publish his manuscript as his "co-authors."

25.     Accordingly, Mr. Edwards began discussions with a potential graphic artist, and looked forward to receiving the Wayans Brothers' input on his manuscript and proposed publication as he continued to develop his project over the coming months.

26.     However, despite the Wayans Brothers' initial expressions of enthusiasm for the manuscript *"You know you're a Golddigger when...,"* which Mr. Edwards disclosed to Keenen Ivory, Shawn and Marlon Wayans, together with his proposal for publication, months continued to pass without any apparent progress towards publication.

IV.    **The Resignation of Mr. Edwards' Employment**

27.    Although Mr. Edwards approached the Wayans Brothers with repeated inquiries as to the status of his manuscript, the Wayans Brothers' responses became increasingly discouraging.

28.    Indeed, by the end of 2006, the Wayans Brothers informed Mr. Edwards, without explanation, that his manuscript and proposed publication of *"You know you're a Golddigger when..."* had no prospect of actually being published, and that they had abandoned their initial interest in collaborating with Mr. Edwards altogether.

29.    After 10-years of exhausting and increasingly unrewarding work as the Wayans Brothers' Assistant, and after experiencing his hope of becoming an author rise and fall at their apparent whim, Mr. Edwards recognized that if he was to succeed as a published author, he would have no choice but to end his employment as the Wayans Brothers' Assistant and devote himself full-time to writing.

30.    Accordingly, Mr. Edwards tendered his resignation and began devoting himself fulltime to the realization of his dream of becoming a published author, and of making *"You know you're a Golddigger when..."* his first publication.

V.    **The Misappropriation and Infringing Publication of Mr. Edwards' Manuscript**

31.    Notwithstanding the Wayans Brothers' express repudiation of any interest in contributing to his manuscript or pursuing publication of the final work that he described to them, Mr. Edwards continued to hope that he might successfully publish and market *"You know you're a Golddigger when...,"* either independently or in collaboration with other authors or figures in the entertainment industry who might recognize its value.

6

32.     Thus, in addition to beginning work on new projects and authorship of original creative works of artistic expression, Mr. Edwards also sought to protect his ownership interest as the sole author and creator of the manuscript of "*You know you're a Golddigger when....*"

33.     Accordingly, Mr. Edwards registered his original manuscript – to which the Wayans Brothers' made no meaningful revisions or contributions, despite their initial expressions of enthusiasm for his proposal – with the WGA Intellectual Property Registry.

34.     Mr. Edwards also registered his copyright ownership as the sole author of his manuscript with the United States Copyright Office.

35.     In light of the Wayans Brothers' representations that Mr. Edwards' vision of publishing his manuscript had no prospect of success, to say nothing of the fact that he had duly registered the manuscript as his own work of authorship, Mr. Edwards was understandably shocked to discover that the original text of "*You know you're a Golddigger when...*" and his proposed coupling of each line of text with graphic artwork – was available for sale in bookstores nationwide under the title "*101 Ways to Know You're a Golddigger,*" and that Keenen Ivory, Shawn and Marlon Wayans were credited as its purported authors, without any acknowledgment of Mr. Edwards' role as the true author.

36.     Defendants' misappropriation and infringement of Plaintiff's copyrighted manuscript, including Defendants' willful deceit of Mr. Edwards by claiming that his original manuscript had little prospect of being published – while Defendants were, in fact, actively pursuing publication of Mr. Edwards' manuscript and falsely crediting themselves as its purported "authors" – was willful and malicious.

37.     As a result of Defendants' willful and malicious infringement of Mr. Edwards' copyrighted manuscript, Mr. Edwards has lost, and will continue to lose, revenues from any potential sales of "*You know you're a Golddigger when...*", and has had the value of his copyright diminished by Defendants' misappropriation and copyright infringement.

38.     As a result of Defendants' misappropriation and infringing publication of Mr. Edwards' manuscript, Mr. Edwards has also been wrongfully deprived of the opportunity to achieve his first success as the credited author of a published work, and has thereby suffered, and continues to suffer, harm to his professional and personal reputations and loss of career fulfillment and prospective professional advancement.

## AS AND FOR A FIRST CAUSE OF ACTION

### (Copyright Infringement)

39.     Plaintiff hereby repeats and realleges each allegation contained in the preceding paragraphs as if fully set forth herein.

40.     Prior to July 7, 2007, Plaintiff created and wrote the text of an original book, entitled "*You know you're a Golddigger when....*"

41.     Plaintiff's book, "*You know you're a Golddigger when...,*" is comprised of original material created by Plaintiff's own skill, labor, and judgment, and is copyrightable subject matter under the laws of the United States.

42.     Plaintiff has at all times been, and still is, the sole proprietor of all right, title, and interest in and to the copyright in his book "*You know you're a Golddigger when....*"

43.     Defendants have infringed, and are infringing, Plaintiff's copyright within this judicial district and elsewhere throughout the United States, without the consent of Plaintiff, and in complete and willful disregard of Plaintiff's rights, by copying, distributing,

publishing, selling, and marketing the infringing book entitled, "*101 Ways to Know You're a Golddigger*," the text of which was copied largely verbatim from Plaintiff's copyrighted book, entitled "*You know you're a Golddigger when....*"

44. A copy of Plaintiff's book "*You know you're a Golddigger when...,*" as deposited with the Copyright Registrar, is attached to this Complaint as <u>Exhibit 1</u>.

45. A copy of Plaintiff's Certificate of Copyright Registration, Registration Number "TXu 1-612-358," is attached to this Complaint as <u>Exhibit 2</u>.

46. A copy of Defendants' infringing publication "*101 Ways to Know You're a Golddigger*," is attached to this Complaint as <u>Exhibit 3</u>.

47. Plaintiff has notified Defendants that Defendants have infringed, and are infringing, the copyright of Plaintiff. Despite receiving that notice, Defendants have continued to willfully infringe Plaintiff's copyright.

48. Defendants' conduct set forth herein has been willful and intentional within the meaning of the Copyright Act.

49. As a result of Defendants' willful infringement and threatened infringement of Plaintiff's copyright, Plaintiff has been, and will continue to be, harmed, damaged and injured. In addition, Defendants have unlawfully and wrongfully derived, and will continue to derive, income and profits from their unlawful acts.

50. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered, and continues to suffer, substantial monetary and/or economic damages, including, but not limited to, loss of goodwill, loss of present and future revenue and loss of value to his copyright for which he is entitled to damages, including punitive damages.

## AS AND FOR A SECOND CAUSE OF ACTION

### (Unfair Competition)

51.     Plaintiff hereby repeats and realleges each allegation contained in the preceding paragraphs as if fully set forth herein.

52.     Defendants, by their unauthorized misappropriation and misuse of Plaintiff's book *"You know you're a Golddigger when...,"* have engaged, and are engaging, in acts of wrongful deception of the purchasing public, wrongful deprivation of Plaintiff's good name and reputation, and the wrongful deprivation of Plaintiff's right to public recognition and credit as author and owner of his book.

53.     Continuously, since in or around May 2009, Defendants have been publishing, selling, and otherwise marketing the book entitled *"101 Ways to Know You're a Golddigger,"* and have thereby been engaged in unfair trade practices and unfair competition against Plaintiff to Plaintiff's irreparable damage, which cannot be adequately calculated or compensated in money damages.

54.     Plaintiff's action concerning Defendants' unfair competition is related to Plaintiff's "substantial" copyright infringement action since both actions are based on the same operative facts.

55.     As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer, substantial monetary and/or economic damages, including, but not limited to, loss of goodwill, loss of present and future revenue and loss of value to his copyright for which he is entitled to damages.

10

## AS AND FOR A THIRD CAUSE OF ACTION

### (Breach of Implied Contract)

56.     At all relevant times, Plaintiff entered into an agreement with Defendants by which, through industry custom and practice in the entertainment industry, the parties understood that any disclosure of any literary materials by Plaintiff, including the book "*You know you're a Golddigger when…*," its originality and the property interest therein, would be disclosed to Defendants for review in a confidential fashion and with the understanding that any use thereof by Defendants would be subject to notification and consent by Plaintiff and compensation for the use thereof.

57.     At all relevant times, an implied contract existed between Plaintiff and Defendants, in that, the circumstances preceding and attending disclosure of the book "*You know you're a Golddigger when…*," together with the conduct of Defendants, acting with knowledge of the circumstances, show a clear promise to pay and/or compensate Plaintiff for use and or exploitation of Plaintiff's book.

58.     As a result of Defendants' breach of implied contract between the parties and Defendants' misuse of Plaintiff's book, it originality and the property interest therein, for profit and increased goodwill, Plaintiff has suffered, and continues to suffer, harm for which he is entitled to damages.

### PRAYER FOR RELIEF

59.     There is a substantial likelihood that the Plaintiff will succeed on the merits of this action.

WHEREFORE, Plaintiff respectfully requests that an award be issued in his favor containing the following relief:

11

A.      An order enjoining Defendants, their agents, and servants, during the pendency of this action, and permanently, from directly or indirectly infringing Plaintiff's aforementioned copyright in his book, "*You know you're a Golddigger when...,*" in any manner, and from publishing, selling, marketing, or otherwise disposing of any copies of the infringing book "*101 Ways to Know You're a Golddigger;*"

B.      An award of actual damages in an amount to be determined at trial, plus prejudgment interest, for all monetary and/or economic damages Plaintiff suffered as a result of Defendants' infringement of Plaintiff's copyright and Defendants' unfair trade practices and unfair competition;

C.      An order requiring Defendants to account for:

    i.      All gains, profits, and advantages derived by Defendants as a result of their unfair trade practices and unfair competition; and

    ii.     All gains, profits, and advantages derived by Defendants through their infringement of Plaintiff's copyright, or such damages as the Court deems proper within the provisions of the copyright statutes;

D.      An Order requiring Defendants to deliver to be impounded during the pendency of this action all copies of the book entitled "*101 Ways to Know You're a Golddigger*" in Defendants' possession, custody and/or control, and to deliver up for destruction all infringing copies, and all plates, molds and other matter for making such infringing copies;

E.      An award of damages for any and all other monetary and/or non-monetary losses suffered by Plaintiff in an amount to be determined at trial;

F.      An award of punitive damages;

G.    An award of costs and expenses, as well as reasonable attorneys' fees, that

Plaintiff incurred in this action to the fullest extent permitted by law;

H.    Pre-judgment interest on all amounts due; and

I.    Such other and further relief as the Court may deem just and proper.

### JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated

herein.

Dated: December 17, 2009                Respectfully submitted,
      New York, New York

**THOMPSON WIGDOR & GILLY LLP**

By: _____
      Kenneth P. Thompson

85 Fifth Avenue
New York, NY 10003
Telephone: (212) 239-9292
Facsimile: (212) 239-9001
Email: kthompson@twglaw.com

*COUNSEL FOR PLAINTIFF JARED EDWARDS*

# Exhibit 1

You know you're a Gold Digger when...

Written By: Jared Edwards

1. Super-Head is your Role Model

2. You date a celebrity's whole entourage just to get close to the celebrity

3. You know more about sports players' stats than an ESPN analyst.

4. You name your kids after all the expensive gifts you hope to attain... Porsche, Mercedes, Diamond, A'lexus, T Money.

5. You stay in an abusive relationship for the nice gifts he gives you.

6. You're only 21 and you claim you married an 80-year-old oil tycoon for love and not his $200 million dollar estate.

7. Your life-long ambition is to be one of Hugh Hefner's wives.

8. You refer to your marriage as a smart business move.

9. You do more drinking in the VIP than the Person who bought the bottle.

10. The only time you cried during your divorce was when you were awarded your settlement.

11. You tell your millionaire fiancée that a prenuptial agreement will jinx the marriage.

12. Your People I'd like to meet reads: Nicole Murphy, Daphne Wayans, Anna Nicole Smith, Tracey Edmonds and Ivana Trump.

13. You divorce your celebrity husband but keep his last name to get into clubs.

14. You use the kids' child support money for lavish trips and shopping sprees.

15. You have floor seats at the LAKER GAME but you work at Forever21.

16. The only guys you add to your MY SPACE is those making $250,000 or more.

17. Your top 8 on My Space are all celebrities you don't know but hope to sleep with.

18. You think there's something sexy about Flavor Flav, William Hong or Sam Cassell.

19. You're always in the VIP but never buy bottles.

20. You've slept with a guy hoping he'd pay to get your cavity fixed.

21. You're attracted to the son, but the father has more money, so you start dating him.

22. You marry a rich man even though his kids don't like you.

23. You made your first million in your first marriage, your second million in your second marriage then retired in your last marriage.

25. You changed your faith to conform to your rich husband's beliefs.

26. You've accepted an indecent proposal.

27. Expensive things get you off.

28. Your favorite holiday seasons are Football, Basketball and Baseball.

29. You go to the NBA Draft to look for new talent.

30. You can coach your own NBA dream team with all the players you've slept with.

31. You subscribe to Street & Smith's.

32. You have a man for each bill.

33. You have more pictures of you with celebrities than of you with your kids.

34. You went to Law School just to learn about the prenuptial laws.

35. You can't read but you subscribe to Forbes.

36. You store more celebrity sperm than a sperm bank.

37. You live in a penthouse apartment and don't pay rent.

38. Your only job is to stay pretty.

39. You have assistants and no job.

40. Your nickname is Cha-Ching.

41. Your coochie doubles as a credit card terminal.

42. You look at your boyfriend as an investment.

43. You have prenuptials named after you.

44. You started a Golddigger boot camp.

45. You pass up a young handsome poor guy for a fat ugly rich guy.

46. ESPN.com and NBA.com are the only websites you know.

47. You're eating at an expensive sushi restaurant and refer to Wasabi as the green stuff.

48. Your boyfriend gives you jewelry and you go get it appraised.

49. You went on strike with the players to dispute the salary cap.

50. There's a statue of you at Coopers Town as the greatest groupie of all time.

51. You have a better parking space at the stadium than the star player.

52. You were hired as a consultant for the movie Almost Famous.

53. You run a credit check on a guy before going on a date with him.

54. You wear a miner's hat to the club looking for rich men.

55. You refer to sleeping with a rich guy as closing a deal.

56. You've cleared more bank accounts then Enron.

57. You spend more money than the man who makes it.

58. Your idea of a day at the office is shopping.

59. You spend the your child support money on a personal
chef for yourself while the children eat the big bag of
Tyson chicken from Costco.

60. You have a guy order you Cristal even though it gives
you gas.

61. You ask a guy what kind of car he drives before you ask
him his name.

62. Your astrological sign is the dollar sign.

63. Your pubic hair is shaved in the shape of a cash
register.

64. You send out W2's at the end of all your relationships.

65. You have a subscription to Forbes and The Robb Report
but live in the projects.

66. You slept with a leprechaun just so you could get half
his pot of gold.

67. You have a price list for things a girlfriend is
suppose to do.

68. You pick up men at ATM machines instead of bars.

69. You get into clubs faster than someone famous.

70. You own more sports memorabilia than a licensed dealer.

71. You have a scrapbook full of hotel room keys.

72. Your turkey baster has never been used for cooking but
used to get you pregnant.

73. You have a hotel suite named after you and you're not a
president.

74. You sue a celebrity for an STD you already had.

75. No one knows your name but know you by the men you
slept with.

76. You have a championship ring and you never scored one point.

77. You only tell famous men that you're allergic to condoms.

78. You travel to see a guy with no luggage but come home with a whole new wardrobe.

79. Men claim you as a tax write off under charity.

80. Your name is in the credits on a rapper's album and you never worked on the project.

81. You look at someone famous and say "I want him to be my babies daddy," but hate the babies you have by the bus driver.

82. You slept with Ken Griffey Sr. in the 60's and Ken Griffey, Jr. in the 90's.

83. You slept with Magic Johnson before and after he announced that he had HIV.

84. You Google a guy's name before going on a date with him.

85. You know every rapper by their real name.

86. You ask for a guy's social security number instead of his phone number.

87. You teach your daughter how to get a rich man.

88. You got pregnant just to collect child support.

89. You lie about your children's living expenses during your divorce to get more money to support your lifestyle.

90. Your first words were Money and Dollar instead of mommy and daddy.

91. Confessions of a Video Vixen is on your bedside table instead of the bible.

92. Your G-string has pockets.

93. All your stories involve someone rich or famous.

94. You only know streets by the celebrities who live on them.

95. Star Maps call you for directions.

96. You act like you don't know who a celebrity is when you meet them.

97. Forbes listed your vagina as one of the year's 100 most wealthiest.

98. Your hands are shaped like money clips.

99. Treasure hunters use you as a gold detector.

100. Sleep, you count money instead of sheep.

101. You can spot a broke man from a mile away.

102. The tattoo on your back says Get Rich or Suck Dick Trying.

103. You scroll down your phonebook, it looks like film credits.

104. Ticket scalpers call you for tickets.

105. A man gives you his heart and you give it back because it had no money in it.

106. You get married your panties are retired.

# Exhibit 2

## Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**Registration Number:**

## TXu 1-612-358

**Effective date of registration:**

August 23, 2009

---

### Title

**Title of Work:** You know you're a Gold Digger when...

### Completion/Publication

**Year of Completion:** 2007

### Author

■ **Author:** Jared Edwards

**Author Created:** text

**Work made for hire:** No

**Citizen of:** United States                    **Domiciled in:** United States

### Copyright claimant

**Copyright Claimant:** Jared Edwards

6721 Springpark Avenue, Los Angeles, CA, 90056, United States

### Rights and Permissions

**Name:** Jared Edwards

### Certification

**Name:** Kenneth P. Thompson, Esq

**Date:** August 4, 2009

Page 1 of 1

# Exhibit 3

## (Excerpt: Complete Exhibit Filed Under Seal)



101 WAYS TO KNOW YOU'RE A GOLDDIGGER. Copyright © 2009 by Keenen Ivory
Wayans, Shawn Wayans, Marlon Wayans, and Shane Miller. All rights reserved.
Printed in the United States of Amerca. For information, address St. Martin's Press,
175 Fifth Avenue, New York, N.Y. 10010.

www.stmartins.com

Library of Congress Cataloging-in-Publication Data

Wayans, Keenen Ivory.
   101 ways to know you're a golddigger/keenen, Shawn, and Marlon Wayans.—1st
ed.
      p. cm.
   ISBN-13: 978-0-312-35969-0
   ISBN-10: 0-312-35969-1
   1. Women—Humor. 2. Invective—Humor. I. Wayans, Shawn, 1971–II. Wayans, Marlon.
III. Title.
   PN6231.W68A35 2009
   818'.5402—dc22

                                                                2009004805

First Edition: May 2009

10  9  8  7  6  5  4  3  2  1

JONES, S, PART I

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---x

JARED EDWARDS,

Plaintiff,

v.

KEENEN IVORY WAYANS; SHAWN WAYANS; MARLON WAYANS; WAYANS BROTHERS PRODUCTIONS; and ST. MARTIN'S PRESS, INC.,

Defendants.

---x

CASE NO. 09-10263

**ORDER TO FILE EXHIBIT UNDER SEAL**

WHEREAS, the Plaintiff, Jared Edwards, is commencing the above-captioned action by filing his Complaint against Defendants Keenen Ivory Wayans, Shawn Wayans, Marlon Wayans, Wayans Brothers Productions, and St. Martin's Press, Inc., for, *inter alia*, unlawful copyright infringement of Plaintiff's literary work, a copy of which is annexed to the Complaint as Exhibit 1;

WHEREAS, Defendants' allegedly infringing publication, which incorporates much of the text of Exhibit 1 largely verbatim, is annexed to the Complaint as Exhibit 3;

WHEREAS, Exhibit 3 is a bound book that cannot be readily reproduced in PDF format in accordance with this Court's electronic filing requirements;

WHEREAS, Exhibit 3 includes an Edition Notice page stating that copyright in the allegedly infringing publication is purportedly owned by persons other than Plaintiff; and

WHEREAS, the electronic filing procedures of this Court provide for the filing of a non-electronic, hard copy exhibit upon an Order of this Court to File Exhibit Under Seal;

IT IS HEREBY ORDERED that:

Plaintiff may file Exhibit 3 to his Complaint under seal by delivering a true copy thereof to Records Management, room 270, at the Daniel Patrick Moynihan U.S. Courthouse, 500 Pearl Street, New York, New York 10007; and

Plaintiff may electronically file, as Exhibit 3 to his Complaint, a PDF excerpt of Exhibit 3, consisting of the Cover Page and Edition Notice of Exhibit 3 as filed under seal, together with a copy of this Order.

Dated:  December 17, 2009
        New York, New York

_____
United States District Judge
        PART I

# EXHIBIT "B"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
                                        :

JARED EDWARDS,                          :

                    Plaintiff,        :        No. 09 Civ. 10263 (CM)

                                   :

         - against -              :

                                   :

KEENEN IVORY WAYANS, SHAWN   :
WAYANS, MARLON WAYANS, WAYANS  :
BROTHERS PRODUCTIONS, and ST.   :
MARTIN'S PRESS, INC.,          :

                                   :

                  Defendants.     :

                                   :

-------------------------------------------------------------x

## NOTICE OF MOTION TO TRANSFER VENUE, PURSUANT TO 28 U.S.C. § 1404(a)

PLEASE TAKE NOTICE that, upon the annexed Declaration of Shawn Wayans dated March 10, 2010 (together with exhibits annexed thereto), and the annexed Declaration of Keenen Ivory Wayans dated March 10, 2010, and the annexed Declaration of Marlon Wayans dated March 10, 2010, and the annexed Declaration of Paul Sleven, Esq. dated March 9, 2010, and the accompanying Memorandum of Law and upon all the pleadings and proceedings before this Court, Defendants, by their attorneys the Law Offices of Lawrence E. Fabian, will move this Court, pursuant to 28 U.S.C. § 1404(a), before the Honorable Colleen McMahon, United States District Judge for the Southern District, at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, New York 10007 at a date and time to be fixed by the Court, for an order transferring this case to the United States District Court for the Central

District of California, Los Angeles Division, and for such other and further relief as to this Court seems just and proper.

Dated: New York, New York
      March 10, 2010

                                  LAW OFFICES OF LAWRENCE E. FABIAN


By:_____

                    Lawrence E. Fabian (6251)
                    Stephanie Seto (5410)
                    *Attorneys for the Defendants*
                    250 West 57th Street, Suite 1720
                    New York, NY 10107
                    (212) 644-8096

TO:    Kenneth P. Thompson, Esq.
       Ariel Y. Graff, Esq.
       Thompson Wigdor & Gilly LLP
       85 Fifth Avenue
       New York, NY 10003

2

# EXHIBIT "C"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                             :

JARED EDWARDS,                             :
                                             :
                         Plaintiff,           :          No. 09 Civ. 10263 (CM)
                                               :
              - against -                 :
                                             :

KEENEN IVORY WAYANS, SHAWN           :
WAYANS, MARLON WAYANS, WAYANS    :
BROTHERS PRODUCTIONS, and ST.       :
MARTIN'S PRESS, INC.,                 :
                                             :
                        Defendants.         :
                                             :
------------------------------------------------------------x


**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
THEIR MOTION FOR TRANSFER OF VENUE TO THE CENTRAL
DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. § 1404(a)**

## TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES...................................................................................... ii-iv

INTRODUCTION ...................................................................................................... 1

FACTS ..................................................................................................................... 2

A.   The Parties ...................................................................................................... 2
B.   The Complaint.................................................................................................. 2
C.   Development and Creation of the "101 Ways to Know..." Series ..................... 3

ARGUMENT ............................................................................................................ 8

I.   THIS ACTION COULD HAVE BEEN BROUGHT IN THE
     CENTRAL DISTRICT OF CALIFORNIA ......................................................... 9

II.  BALANCE OF FACTS EVIDENCES TRANSFER TO THE CENTRAL
     DISTRICT OF CALIFORNIA WILL SERVE THE INTERESTS OF
     CONVENIENCE AND FAIRNESS ................................................................ 11

     A.   Convenience Of The Witnesses................................................................ 11
     B.   Convenience Of the Parties. .................................................................... 13
     C.   The Location of Documents and Other Evidence ..................................... 14
     D.   The Locus of Operative Facts.................................................................. 16
     E.   The Availability of Process to Compel The Attendance of
          Unwilling Witnesses ............................................................................... 18
     F.   The Relative Means of the Parties ........................................................... 18
     G.   The Forum's Familiarity with Governing Law .......................................... 18
     H.   Plaintiff's Choice of Forum Should Be Given No Deference...................... 19
     I.   Trial Efficiency And The Interests of Justice Favor Transfer..................... 21

CONCLUSION ....................................................................................................... 22

i

## TABLE OF AUTHORITIES

**Cases** ....................................................................................................................**Page**

AEC One Stop Group, Inc. v. CD Listening Bar, Inc., 326 F.Supp.2d
    525, 529 (S.D.N.Y. 2004)........................................................... 11, 15

AIG Financial Products Corp. v. Public Utility District No. 1 of
    Snohomish County, Washington 2009 WL 4823895, *13
    (S.D.N.Y. Dec. 15, 2009) ......................................................... 15, 19

American Steamship Owners Mut. Protection and Indem. Ass'n.,
    Inc. v. LaFarge North America, Inc., 474 F.Supp.2d 474,
    486 (S.D.N.Y. 2007) ...................................................................... 19

Berman v. Informix Corp., 30 F.Supp.2d 653, 657 (S.D.N.Y. 1998)............................ 11

Capitol Records, LLC v. VideoEgg, Inc., 611 F.Supp.2d 349,
    367 (S.D.N.Y. Mar 09, 2009) ......................................................... 15

Carrie Forbes, Inc. v. The Gap, Inc., 1994 WL 693554, *2, (S.D.N.Y.
    Dec. 8, 1994)................................................................................... 19

Cartier v. D & D Jewelry Imports, 510 F.Supp.2d 344, 346-347
    (S.D.N.Y.2007) ............................................................................... 16

Citigroup v. City Holding Co., 97 F.Supp.2d 529, 561 (S.D.N.Y. 2000)........................ 9

Comprehensive Care Corporation v. Bank of Tokyo Trust Co.,
    1991 WL 150220, *3 (July 30, 1991) .................................. 12, 13, 20

Dwyer v. General Motors Corp., 853 F.Supp. 690, 693 (S.D.N.Y. 1994)............... 11, 19

Eskofot A/S v. E/I DuPont De Nemours & Co., 872 F.Supp. 81, 96
    (S.D.N.Y. 1995) .............................................................................. 20

ESPN, Inc. v. Quicksilver, Inc., 581 F. Supp.2d 542, 546 (S.D.N.Y. 2008) .............. 8, 11, 13, 19

Frame v. While Foods Market, Inc., 2007 WL 2815613, *6
    (S.D.N.Y. Sept. 24, 2007)............................................................... 13

Fuji Photo Film Co., Ltd. v. Lexar Media, Inc., 415 F.Supp.2d 370,
    373 (S.D.N.Y. 2006) ................................................. 8, 11, 13, 15

ii

Garrel v. NYLCare Health Plans, Inc., 1999 WL 459925, *5
    (S.D.N.Y. June 29, 1999) ...................................................................................... 11

Herbert Ltd. Partnership v. Electronic Arts Inc., 325 F.Supp.2d 282 289
    (S.D.N.Y. 2004) ..................................................................................... 15, 20, 21

January Enterprises, Inc. v. Buena Vista Television, 1997 WL 43400, *2
    (S.D.N.Y. Feb. 3, 1997)............................................................................... 17

Kwick Goal, Ltd. v. Youth Sports Publishing, Inc., 2006 WL 1517598, *1
    (S.D.N.Y. May 31, 2006) ........................................................................ 8, 11

Lewis v. C.R.I., Inc. 2003 WL 1900859, *3 (April 17, 2003) ...................................... 16

MasterCard International, Inc. v. Lexcel Solutions, Inc., 2004 WL
    1368299, *6 (S.D.N.Y. June 16, 2004) ..................................................... 16

Olympia Group, Inc. v. Cooper Industries, Inc., 2001 WL 506219, *2
    (S.D.N.Y. May 14, 2001............................................................................. 13

Oriska Ins. Co. v. Brown & Brown of Texas, Inc., 2005 WL 894912, *6
    (N.D.N.Y. Apr. 8, 2005)............................................................................. 18

Oubre v. Clinical Supplies Management, Inc., 2005 WL 3077654,
    *4 (S.D.N.Y. Nov. 17, 2005) ................................................................... 15

Posven, C.A. v. Liberty Mutual Insurance Co., 303 F.Supp.2d 391, 405
    (S.D.N.Y. 2001) ........................................................................................ 19

Ravenswood Invest. Co., L.P. v. Bishop Capital Corp., 2005 WL 236440,
    *5 (S.D.N.Y. Feb. 1, 2005) .................................................................. 16, 17

Samson Lift Technologies v. Jerr-Dan Corporation, et al., 2009
    WL 2432675, *2 (Aug. 7, 2009) .......................................................... 11, 16

Stein v. Microelectronic Packaging, Inc. 1999 WL 540443, *8
    (S.D.N.Y. July 26, 1999) ........................................................................ 19

Thomas Am. Corp. v. Fitzgerald, 1994 WL 440935, *5(S.D.N.Y. Aug. 11, 1994).................... 20

Wechsler v. Macke Intern. Trade, Inc., 1999 WL 1201251, *10
    (S.D.N.Y. Dec. 27, 1999)......................................................................... 21

iii

## Statutes, Regulations and Rules

Copyright Act of 1976, 17 U.S.C. § 101.........................................................................2

FED. R. CIV. P. 45(b)(2)...............................................................................................18

28 U.S.C. § 1391(b)....................................................................................................10

28 U.S.C. § 1404(a) ...........................................................................................1, 9, 22

## INTRODUCTION

Defendants respectfully submit this Memorandum of Law in support of their motion, pursuant to 28 U.S.C. § 1404(a), to transfer the above-captioned action from this Court to the United States District Court, Central District of California.

Although Plaintiff has no residence or connection with New York, he has filed this action in New York with New York counsel.

Plaintiff is well aware that all material witnesses, including himself, and documents, are located in the Central District of California and litigating this dispute is far more expensive for Defendants in New York. As is clear from the Complaint, the center of gravity of the case and the operative events occurred in the Central District of California, namely Los Angeles. Not only did all the critical actions regarding alleged infringing acts occur in the Los Angeles area, nearly all key witnesses and relevant documents or evidence regarding Plaintiff Edwards' employment with Wayans Bros. Productions (erroneously named Wayans Brothers Productions in the Complaint)(referred herein as "Wayans Bros."), the allegedly infringing work, and the alleged acts of plagiarism occurred in Los Angeles.

Likewise, while peripheral or minor connections may exist with New York, these connections are insufficient and neutralized by the fact the Defendant St. Martin's Press, Inc [now known as SMP (1952), Inc.] (herein "SMP"), joins in this motion. Defendant SMP has agreed to appear and produce any witnesses called in California for trial, if relevant and material. Based upon the facts and well established law, this case should be transferred to the Central District of California pursuant to 28 U.S.C. § 1404(a).

1

## FACTS

A.   The Parties

The Complaint names five defendants in this action. Declaration of Shawn Wayans dated March    , 2010 ("Shawn Wayans Dec."), ¶ 1, Ex. 1, Complaint. Defendant Wayans Bros., is a California corporation with a principal place in Los Angeles, California. Shawn Wayans Dec., ¶ 6. Defendants Keenen Ivory, Shawn and Marlon Wayans are all individual Defendants who are brothers who reside and work in Los Angeles, California (together, the brothers are referred to herein as the "Wayans Brothers"). Shawn Wayans Dec., ¶¶ 4-6, 23-33; Declaration of Keenen Ivory Wayans dated March    , 2010 (herein "Keenen Ivory Wayans Dec."), ¶¶3-9; Declaration of Marlon Wayans dated March    , 2010 (herein "Marlon Wayans Dec."), ¶¶3-8. The Wayans Brothers are famous comedians that work as a team in the entertainment industry collaborating on television, film and writing projects. Shawn Wayans Dec., ¶ 5, Ex. 1, Complaint, ¶ 12.

Defendant SMP is a corporation with a principal place of business located in New York, New York. Declaration of Paul Sleven dated March 9, 2010 (herein "Sleven Dec."), ¶ 2. SMP asserts that it will not be inconvenienced by transfer, agrees California is the appropriate forum for resolution of this dispute and willingly volunteers to produce witnesses for trial in California, if relevant and material. Sleven Dec. ¶¶ 4-5.

Plaintiff Edwards is an individual who lives and during all relevant times resided and worked in Los Angeles County, and was previously employed by Defendant Wayans Bros. from February 2004 through September 2006. Shawn Wayans Dec., ¶¶ 12-15, Ex. 1, Complaint, ¶ 5.

B.   The Complaint

On or about December 17, 2009, Plaintiff, a resident  of Los Angeles County, California, commenced a lawsuit under the Copyright Act of 1976, 17 U.S.C. § 101, *et seq.* seeking

2

damages and attorney's fees for the Defendants' alleged unlawful acts of copyright infringement of Plaintiff's literary work and common law claims of unfair competition and breach of contract. See Shawn Wayans Dec., Ex.1, Complaint.

Edwards alleges he worked for the Wayans Brothers for an uninterrupted ten (10) years – first for five years starting in 1995 as a production assistant and then from 2000 through 2006 as a personal assistant to the Wayans Brothers.  Shawn Wayans Dec., Ex. 1, Complaint, ¶¶ 13, 18.

Edwards further alleges that in 2005 he developed "his original concept for a book entitled "You Know You're A Golddigger When…" (referred to herein as Plaintiff's "Manuscript"), which he describes in the Complaint as an "anthology of original jokes critiquing some women who may seek material wealth, status and other benefits through superficial romantic relationships." Shawn Wayans Dec., Ex.1, Complaint ¶ 19.  Edwards alleges he independently wrote his "Manuscript" at his home in Los Angeles County, California and completed it by early 2006.  Shawn Wayans Dec., Ex.1, Complaint ¶¶ 20-21. Plaintiff's Manuscript is a list of 106 jokes attached to the Complaint as Exhibit 1.  Shawn Wayans Dec., Ex.1, Complaint, Ex. 1.  These jokes are the same or substantially similar to most of the jokes in the text of Golddigger.  Shawn Wayans Dec., Ex.1, Complaint, compare to  Ex. 1, Plaintiff's Manuscript and Ex. 3, "101 Ways to Know...You're a Golddigger" (referred herein as "Golddigger").

Edwards further alleges that while he worked for the Wayans Defendants in California, he "disclosed" his Manuscript to the Wayans Brothers and "explained his aspiration of becoming an author."  Shawn Wayans Dec., Ex.1, Complaint ¶ 22.  Edwards "outlined his proposed vision for the final publication of his manuscript, and even offered to credit the Wayans Brothers as co-authors of his proposed publication in the hope of capturing their interest and accomplishing his

3

goal of publishing" his Manuscript. Shawn Wayans Dec., Ex.1, Complaint ¶ 23. Edwards alleges the Wayans Brothers had a "seemingly positive response to his proposal." Shawn Wayans Dec., Ex.1, Complaint ¶ 24. Edwards has provided no documentation to support these allegations. Edwards' Complaint alleges claims for (1) copyright infringement, (2) unfair competition and (3) breach of implied contract. Shawn Wayans Dec., Ex.1, Complaint ¶¶ 39-58.

The gravamen of the Complaint is that Plaintiff created of his Manuscript and the Wayans Brothers allegedly unlawfully misappropriated Plaintiff's Manuscript all which could only have occurred in Los Angeles County, California.

C.    Development and Creation of "101 Ways to Know..." Series and Golddigger

The development and creation of the "101 Ways to Know..." series and Golddigger goes back approximately fifteen (15) years, when Defendant Shawn Wayans wrote the best selling book "150 Ways to Tell If You're Ghetto" (herein "150 Ways") in collaboration with two other writer/comedians. Shawn Wayans Dec., ¶ 7, Ex. 4, 150 Ways excerpted pages. This book was a satire of life in the ghetto as a collection of one-liners or short jokes with matching illustrations. Shawn Wayans Dec., ¶ 7, Ex. 4. 150 Ways was published in 1997. Shawn Wayans Dec., ¶ 7, Ex.4, 150 Ways copyright page.

In 2003, while shooting the movie "White Chicks", Shawn Wayans and his brother Marlon developed the idea to do a series of joke books entitled "101 Ways to Know..." that grew out of the "150 Ways" concept. Shawn Wayans Dec., ¶ 8. They developed the idea of a series of many illustrated one-line joke books on a myriad of topics worth spoofing. Shawn Wayans Dec., ¶ 9. The "101 Ways to Know..." series would be structured with the same one-liner or short joke style accompanied by outrageous, comic illustrations similar to the "150 Ways" book. Shawn Wayans Dec., ¶ 9.

4

In February 2004 after shooting the motion picture "White Chicks", the Wayans Brothers returned to their newly opened offices in Los Angeles to work on several projects. Shawn Wayans Dec., ¶ 10. At this time, they began to put together a strategy to pitch and sell the "101 Ways to Know..." series to a publisher. Shawn Wayans Dec., ¶ 10. Ultimately the three "101 Ways to Know..." titles that were chosen to be published first were: "101 Ways to Know...You're a Golddigger," "101 Ways to Know...It's Time To Leave Your Momma's House", and "101 Ways to Know...You're Having a Ghetto Christmas". Shawn Wayans Dec., ¶ 11.

The development, writing and creation of "101 Ways to Know..." Series, including "Golddigger" were conducted with the Wayans Defendants staff in the Wayans Bros. Productions offices in Los Angeles, California. Shawn Wayans Dec., ¶ 19. One of the methods by which projects, such as the "101 Ways to Know..." series and Golddigger specifically, were and are developed in the Wayans Bros. office, is via an open office set up that facilitates collaboration and a collective brainstorming process amongst the employees. Shawn Wayans Dec., ¶ 20. Consequently, many different employees contributed to the "101 Ways to Know..." series. Shawn Wayans Dec., ¶ 20.

Several individuals, who are currently employed by Wayans Defendant or entities under the control of Wayans Defendants, reside in Los Angeles County and are likely to be witnesses as they have information relevant to the action (Shawn Wayans Dec. ¶ 21):

(a)     Shane Miller began work with the Wayans Defendants in May of 2005 and held the same position as Plaintiff. Mr. Miller worked with Plaintiff Edwards on the "101 Ways to Know..." series and Golddigger specifically. He has knowledge regarding the allegations made by Plaintiff in his Complaint, the creation of Golddigger and

5

Plaintiff's employment.  Mr. Miller resides in North Hollywood, Los Angeles County, California.

(b)     Le Cooper, Shawn Wayans' personal assistant since July 2001, has knowledge regarding the allegations made by Plaintiff in his Complaint, the creation of the "101 Ways to Know..." Series and Golddigger and Plaintiff's employment.  Ms. Cooper resides in Los Angeles, California.

(c)     Frederick Alvarez, a Wayans Brothers producing partner for the last eleven years, has knowledge of the development of the "101 Ways to Know..." series and Golddigger and worked as a liaison with the publisher in New York.  He has knowledge regarding the allegations made by the Plaintiff in his Complaint.  Mr. Alvarez resides in Los Angeles, California.

(d)     Michael Tiddes is currently creative executive of Wayans Bros. and was formerly the assistant of Frederick Alvarez during the time period Plaintiff worked for Wayans Bros.  Mr. Tiddes has knowledge regarding the allegations made by Plaintiff in his Complaint and Plaintiff's employment.  Mr. Tiddes shared an office space with Plaintiff while he was employed by Defendant Wayans Bros. and contributed to the "101 Ways to Know..." Series.  Mr. Tiddes resides in Los Angeles, California.

(e)     Hayachira Maturel-Mendez, currently personal assistant to Marlon Wayans and a former employee that assisted with overseeing the writing and illustrations created for the "101 Ways to Know..." series project.  Ms. Maturel-Mendez has worked with the Wayans Defendants in different capacities since October of 2004 and has knowledge regarding the creation of 101 Ways Series and the Plaintiff's employment by Defendant Wayans Bros.  Ms. Maturel-Mendez lives in Los Angeles, California.

6

(f)     Darren Huang, an artist employee working in the Wayans Bros. offices since March of 2004 who worked on illustrations for the "101 Ways to Know..." Series. Mr. Huang has knowledge of Plaintiff's allegations including the creation and development of the "101 Ways to Know..." Series project. Mr. Huang lives in Pasadena, Los Angeles County, California.

(g)     Eric Willis, an employee of Wayans Defendants from August 2005 to present that worked in the Wayans Bros. offices, who writes for Wayans Defendants and contributed to the "101 Ways to Know..." Mr. Willis lives in Los Angeles County, California.

It is also anticipated that the following persons not employed Wayans Defendants may have knowledge regarding the allegation and may provide evidence at the trial of this action but may have to be subpoenaed to appear at trial (Shawn Wayans Dec. ¶ 22):

(a)     Leroy Casey, a former employee of the Wayans Defendants that worked with them from March of 2003 through September of 2008. Mr. Casey is a songwriter that also helped out with script and joke writing. Mr. Casey worked out of the Wayans Bros. offices during the time period Plaintiff was employed and has knowledge of the development of "101 Ways to Know..." series and the Golddigger book. He also has knowledge regarding Plaintiff's employment.

(b)     Bruce Fine is a comedian and writer that worked out of Defendant Wayans Bros. Productions offices from time to time and contributed to the "101 Ways to Know..." Series. He lives in Burbank, Los Angeles County, California.

All of the Wayans Defendants' records and documents, including those records and documents relevant to the allegations made by Plaintiff in this action regarding creation and

7

development of the "101 Ways to Know..." Series and Golddigger, are located in Los Angeles, California at the Wayans Bros. Productions offices. Shawn Wayans Dec. ¶ 23.

In February of 2004, Plaintiff Jared Edwards ("Edwards") was hired as an employee of Defendant Wayans Bros. Shawn Wayans Dec. ¶ 12. Among his responsibilities, Edwards was assigned to work on the "101 Ways to Know..." series as a writer, writing jokes. Shawn Wayans Dec. ¶ 12.

Prior to February of 2004, Edwards had not worked on any Wayans projects for approximately a year. Edwards worked as a production assistant on and off on different Wayans Brothers projects for a number of years at different times on different film and television projects. Shawn Wayans Dec. ¶ 15-16.

During the time Edwards was employed from February 2004 through September of 2006, Edwards was assigned to create or "punch up" and revise jokes on the "101 Ways to Know..." series, including, specifically, "Golddigger" and to write for other projects. Shawn Wayans Dec. ¶ 15. Edwards was terminated in October of 2006. Shawn Wayans Dec. ¶ 17. Therefore, any work that Edwards prepared on the "101 Ways to Know..." Series and specifically "Golddigger" was prepared within the scope of his employment as a W-2 employee. Shawn Wayans Dec. ¶ 18.

8

## ARGUMENT

Transfer of cases between federal district court is provided for in 28 U.S.C. § 1404(a). In its discretion, "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

The courts make a "two-part inquiry" when determining whether transfer is appropriate, Fuji Photo Film Co., Ltd. v. Lexar Media, Inc., 415 F.Supp.2d 370, 373 (S.D.N.Y. 2006); Kwick Goal, Ltd. v. Youth Sports Publishing, Inc., 2006 WL 1517598, *1 (S.D.N.Y. May 31, 2006); ESPN, Inc. v. Quicksilver, Inc., 581 F. Supp.2d 542, 546 (S.D.N.Y. 2008). First, it must be established whether (i) the "action is one that might have been brought in the district" and if so (2) determine that transfer is appropriate based on the convenience and the interests of justice. Fuji Photo Film Co., Ltd., 415 F. Supp.2d at 373.

As for the second step, the courts examine nine factors:

> "In determining whether transfer is warranted for the convenience of parties and witnesses and in the interests of justice, courts consider the following factors:  (1) the convenience of witnesses, (2) the convenience of parties, (3) the location of relevant documents and the relative ease of access to sources of proof, (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses, (6) the relative means of the parties, (7) the forum's familiarity with governing law, (8) the weight accorded to plaintiff's choice of forum, and (9) trial efficiency and the interests of the justice, based on the totality of the circumstances." Id.

There is no rigid formula for balancing these factors and no single one of them is determinative." ESPN, Inc., 581 F.Supp.2d at 547, citing Citigroup v. City Holding Co., 97 F.Supp.2d 529, 561 (S.D.N.Y. 2000).

## POINT I

## THIS ACTION COULD HAVE BEEN BROUGHT IN THE CENTRAL DISTRICT OF CALIFORNIA

First, it is clear from an examination of the venue statute in non-diversity actions, the Central District of California is a district of proper venue.

Under 28 U.S.C. § 1391(b), when jurisdiction is not founded solely on diversity, venue may be properly found in "(1) a judicial district where any defendant resides, if all reside in the state, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or (3) a judicial district in which any defendant may be found." 28 U.S.C. § 1391(b).

It is clear from the face of the Complaint that the Central District of California is the place in which a substantial part of the events or omissions giving rise to Plaintiff's claims occurred and therefore venue is properly placed there. Specifically, Edwards allegedly created the Manuscript in Los Angeles County, was employed by Wayans Bros. in Los Angeles County, allegedly entered into an implied agreement with Wayans Defendants in Los Angeles County, the Manuscript was allegedly misappropriated in Los Angeles County and the alleged infringing work, Golddigger, was created in Los Angeles County.

10

## POINT II

### BALANCE OF FACTORS EVIDENCES TRANSFER TO THE
### CENTRAL DISTRICT OF CALIFORNIA WILL SERVE
### THE INTERESTS OF CONVENIENCE AND FAIRNESS

A.    Convenience Of The Witnesses

"Convenience of both the party and non-party witnesses is probably the single most

important factor in the analysis of whether transfer should be granted." Berman v. Informix

Corp., 30 F.Supp.2d 653, 657 (S.D.N.Y. 1998); followed by, Fuji Photo Film Co., Ltd., 415

F.Supp.2d at 373; ESPN, Inc., 581 F.Supp.2d at 547; see also, Garrel v. NYLCare Health Plans,

Inc., 1999 WL 459925, *5 (S.D.N.Y. June 29, 1999).  Indeed, this consideration is specifically

mentioned in the venue transfer statute.

Further, "it is not the number of prospective witnesses that determines the

appropriateness of a transfer but, rather, the materiality of their anticipated testimony." Dwyer v.

General Motors Corp., 853 F.Supp. 690, 693 (S.D.N.Y. 1994); followed by, Samson Lift

Technologies v. Jerr-Dan Corporation, et al., 2009 WL 2432675, *2 (Aug. 7, 2009); see also,

Fuji Photo Film Co. Ltd., 415 F.Supp.2d at 373.

In infringement cases, the key witnesses are "those officers and employees who were

involved in the design, production and sale of the [allegedly infringing] products." ESPN, Inc.,

581 F.Supp.2d at 548, citing AEC One Stop Group, Inc. v. CD Listening Bar, Inc., 326

F.Supp.2d 525, 529 (S.D.N.Y. 2004); see also, Kwik Goal, Ltd., 2006 WL 1517597 at *4.

The key witnesses in this action are those that were involved in the creation of the "101

Ways to Know..." Series and Golddigger.  Defendants' potential witnesses who have knowledge

of the creation of the "101 Ways to Know..." series and Golddigger all reside and work in the

Central District of California.  Besides, the three (3) Wayans Brothers and Plaintiff, there are 7

11

employees of the Wayans Defendants or related entities that have knowledge regarding the creation and development of Golddigger and Plaintiff's employment.  Shawn Wayans Dec., ¶¶ 4-6, 21, Ex. 1, Complaint; Keenen Ivory Wayans Dec., ¶¶3-9; Marlon Wayans Dec., ¶¶3-8.   All of these employees reside in Los Angeles County, California.  Shawn Wayans Dec., ¶¶ 4-6, 21, Ex. 1, Complaint; Keenen Ivory Wayans Dec., ¶¶3-9; Marlon Wayans Dec., ¶¶3-8.  Further, there are two individuals who reside in Los Angeles County who have knowledge of the creations and development of the allegedly infringing work.  Shawn Wayans Dec. ¶ 22.  In the event this action is not transferred, some or all of these individuals will have to be subpoenaed, if they are called as witnesses at trial.  Finally, Plaintiff alleges in the Complaint that he "began discussions with a potential graphic artist" regarding illustrations for his Manuscript while employed by Wayans Defendants.  Shawn Wayans Dec. Ex. 1, Complaint, Ex. 1, ¶ 25.  While not identified, since Plaintiff lived and worked in the Los Angeles area at that time (as he still does), most likely this witness resides and works in California.

Further, since the Defendants' affirmative defenses involve, *inter alia*, the fact that Plaintiff's work on the "101 Ways to Know..." series and Golddigger specifically was within the scope of Plaintiff's employment with Defendant Wayans Bros. as a W-2 employee.  Shawn Wayans Dec., ¶ 18.  Plaintiff's employment and the scope of his employment will be vital issues in resolving this dispute.  The Wayans Brothers and five of the above named witnesses are all key as to the issue of Edwards' employment as they are all familiar with Mr. Edwards' duties as an employee and his involvement with "101 Ways to Know..." Series and might be called to testify at trial as they possess pertinent information.  Shawn Wayans Dec., ¶¶ 21-22.

As Defendant SMP joins in this motion for a transfer and has volunteered to produce witnesses for trial, none of SMP's employees residing in New York should pose a barrier to

12

transfer.  See <u>Comprehensive Care Corporation v. Bank of Tokyo Trust Co.</u>, 1991 WL 150220,

*3 (July 30, 1991)(In examination of convenience to witness factor, New York defendant

employer's 5 employees residing in New York did not "pose any real barrier to transfer" as New

York defendant "willingly volunteered to produce witnesses for trial in Virginia" the transferee

forum).

     Accordingly, this factor, the convenience of the witnesses, weighs strongly in favor of

transferring to the Central District of California.

B.    <u>Convenience of the Parties</u>

     The Central District of California is clearly a more convenient forum for all of the

Wayans Defendants and the Plaintiff, as they all reside there.  Defendant SMP is the only party

present in the Southern District of New York.  As indicated above, it supports the motion to

transfer this action to the Central District of California and joins in the motion herein.  Defendant

SMP will not be inconvenienced by the transfer and agrees that California is the appropriate

forum for adjudication of this matter.  Consequently, Defendant SMP will not be inconvenienced

by the transfer.  See <u>Comprehensive Care Corp.</u>, 1991 WL 150220 *4.  (A co-defendant, that

was sole party with presence in forum, supported motion to transfer; therefore, convenience of

parties dictated transfer.)

     In the instant action, the transfer would not shift the inconvenience to the Plaintiff; rather,

transfer will result in no additional inconvenience to any parties.  In fact, transfer will result in

making the forum substantially more convenient for the almost all parties including Plaintiff.

California is clearly a more convenient forum for Plaintiff, who resides in the Central District of

California.  See <u>Fuji Photo Film Co., Ltd.</u>, 415 F.Supp.2d at 374 (California was more

convenient for defendant which resided in forum and was "as-if not more-convenient" for one

plaintiff as Japan to California was easier travel then Japan to New York travel.) <u>Frame v. While Foods Market, Inc.</u>, 2007 WL 2815613, *6 (S.D.N.Y. Sept. 24, 2007) (Transfer of case eliminated inconvenience to defendant headquartered in transferee forum and "plaintiff only slightly more inconvenienced since travel was necessary and there was little difference between travel from North Carolina to New York versus North Carolina to Texas"); <u>Olympia Group, Inc. v. Cooper Industries, Inc.</u>, 2001 WL 506219 *2(S.D.N.Y. May 14, 2001)(Plaintiff not present in New York, therefore, "this is a case where transfer would aid one party and not disadvantage its adversary.")

While Defendant SMP is not in the transferee forum, all the rest of the parties (five including Plaintiff) are in the Central District of California. Defendant SMP is the only party with a legitimate interest in maintaining this action in New York SMP has stated it will not be inconvenienced and favors transfer, and agrees to provide witnesses in California. Therefore, upon weighing inconvenience/convenience of transfer upon the parties, the convenience of New York for Defendant SMP should be a neutral factor. See <u>Comprehensive Care Corp.</u>, 1991 WL 150220 at *4 (When only party with "legitimate interest in maintaining action in New York" supports motion to transfer, "convenience of the parties dictates transfer.")

Finally, the fact that New York may be a more convenient forum for Plaintiff's counsel, "is unavailing as 'the convenience to counsel is not an appropriate factor to consider on a motion to transfer.'" <u>Fuji Photo Film Co., Ltd.</u> at 374 (citations omitted); see also, <u>Olympia Group, Inc.</u>, 2001 WL 506219 at *2("...the convenience of the parties' lawyers is not relevant to the decision whether to transfer.")

14

Therefore, the convenience of the parties weighs heavily in favor of transfer as the

transfer reduces the burden of travel on all parties, except for Defendant SMP who has waived

any claim to inconvenience.

C.      The Location of Documents and Other Evidence

All of the Wayans Defendants' records and documents which relate to the claims

regarding the origin of Golddigger, including Plaintiff's text, and Plaintiff's employment, are

located in the Central District of California.  The court has noted that "in infringement cases, the

bulk of the relevant evidence usually comes from the accused infringer."  AEC One Stop Group

Inc. v. CD Listening Bar, Inc., 326 F.Supp.2d 525 530 (S.D.N.Y. 2004).

Further, any documentation required from Defendant SMP has been promised to be

produced by SMP in the Central District of California, if necessary.

It is clear that in this day and age, this factor has taken on much less significance then

previously.  ESPN, Inc., 581 F. Supp.2d at 548-49.  But, the court should consider the

"incrementally greater burden, however slight, on Defendants to copy or transport documents

that they would not incur if the case proceeded in California."  Id., citing Herbert Ltd.

Partnership v. Electronic Arts Inc., 325 F.Supp.2d 282, 289 (S.D.N.Y. 2004), Fuji Photo Film

Co., Ltd., 415 F.Supp.2d at 374-375.  It remains true that copying and transporting documents to

New York is an expense that could be spared, in great part, by relocating the case to California.

Therefore, the fact that the New York defendant has cited no inconvenience in

transporting documents to California, while the rest of the parties' documents are located in

California, favors transfer.

D.    The Locus of Operative Facts

"In determining the locus of operative facts, courts look to the 'site of the events from which the claim arises.'" <u>AIG Financial Products Corp. v. Public Utility District No. 1 of Snohomish County, Washington</u> 2009 WL 4823895, *13 (S.D.N.Y. Dec. 15, 2009), citing, <u>Oubre v. Clinical Supplies Management, Inc.</u>, 2005 WL 3077654, *4 (S.D.N.Y. Nov. 17, 2005).

"The operative facts in infringement cases usually relate to the design, development and production of an infringing product." <u>Capitol Records, LLC v. VideoEgg, Inc.</u>, 611 F.Supp.2d 349, 367 (S.D.N.Y. Mar 09, 2009), citing, <u>AEC</u>, 326 F.Supp.2d at 531, citing, <u>MasterCard International, Inc. v. Lexcel Solutions, Inc.</u>, 2004 WL 1368299, *6 (S.D.N.Y. June 16, 2004); *see also* *368 <u>Cartier v. D & D Jewelry Imports</u>, 510 F.Supp.2d 344, 346-347 (S.D.N.Y.2007)).  Further, where "the heart of a complaint is that defendants conspired to and schemed to deceive and swindle plaintiff" and allegedly wrongfully acquire the Plaintiff's product through misrepresentations, the place where such misrepresentations to the Plaintiff are made is the locus of the operative facts.  See <u>Samson Lift Technologies</u>, 2009 WL 2432675 at *3-4 (Plaintiff created a patented product that they alleged defendants misappropriated for their own benefit and locus of operative event was forum where misstatements inducing Plaintiff into agreement occurred.) "Where the operative facts are concentrated in a specific district other than the district in which plaintiff has sued, the action should be transferred to that district, notwithstanding plaintiff's choice of forum". <u>Lewis v. C.R.I., Inc.</u> 2003 WL 1900859, *3 (April 17, 2003); followed by, <u>Ravenswood Invest. Co., L.P. v. Bishop Capital Corp.</u>, 2005 WL 236440, *5 (S.D.N.Y. Feb. 1, 2005)(where all "critical events" occur in transferee's forum, transfer is proper).

The alleged infringing book was created, developed, written and illustrated in the Central District of California. Plaintiff's alleged creation of his work on which he bases his infringement claim was in the Central District of California. Thus, the operative facts, as to creation of the alleged infringing work and the alleged work upon which the infringing work is based, occurred in the Los Angeles County, California. Plaintiff claims that his "original idea" was allegedly plagiarized or copied and allegedly the Defendants misled Plaintiff and misappropriated his Manuscript. As all of these alleged bad acts also occurred in the Los Angeles County, California that places the loci of operative facts there. Further, Plaintiff alleges misappropriated work was created in the Los Angeles County, California.

Additionally, a key to Plaintiff's claims and Defendants' defense revolves around the Plaintiff's employment which was also in the Los Angeles County, California. Accordingly, the core determination as to the "center of gravity" of the litigation is that it is in the Los Angeles County, California. See January Enterprises, Inc. v. Buena Vista Television, 1997 WL 43400, *2 (S.D.N.Y. Feb. 3, 1997)(In action under Copyright Act and Lanham Act arising from defendants creation TV game show allegedly similar to plaintiff's show "Jeopardy!", the court granted defendants motion to transfer from Southern District to the Central District of California because defendants' program was developed and produced in Los Angeles area.) Here, it is clear that the place where all of these alleged acts in the Complaint took place is one place: the Central District of California.

Plaintiff's Complaint does not even allege any key events occurred in New York.

Since all critical events alleged in the Complaint occurred in the Central District of California, it is respectfully submitted the locus of operative facts is there. Therefore, this important factor weighs heavily in favor of transfer.

17

E.    The Availability of Process to Compel The Attendance of Unwilling Witnesses

Most, if not all, of the likely non-party witnesses in this case are located in the Los Angeles area, well beyond the 100-mile radius in which a subpoena issued by this Court could be served effectively under FED. R. CIV. P. 45(b)(2). The Courts have found that even the risk that some witnesses will be unwilling to appear weighs in favor of transfer. Ravenswood Investment Co. L.P., 2005 WL 236440 at *4.

There are at least three possible non-party witnesses that may have to be subpoenaed. Two are former employees of Wayans Defendants controlled entities; a possible third is a graphic artist referenced in Plaintiff's Complaint. Shawn Wayans Dec. ¶ 21, Ex. 1,  Two of these witnesses lives in the Los Angeles area and the third is believed to be in California.

Accordingly, this factor supports transferring the case to the Central District of California.

F.    The Relative Means of the Parties

This factor is relevant only "where a disparity exists between the means of the parties." Oriska Ins. Co. v. Brown & Brown of Texas, Inc., 2005 WL 894912, *6 (N.D.N.Y. Apr. 8, 2005). Defendants are not privy to Plaintiff's financial condition, but note that, Plaintiff apparently has sufficient means and capacity to litigate in New York, a district that is geographically remote from his residence, the Central District of California. This factor, therefore, is neutral and should bear no weight in determination of this motion.

G.    The Forum's Familiarity with Governing Law

"A forum's familiarity with the governing law...is one of the least important factors in determining a motion to transfer, especially where no complex questions of foreign law are

18

involved." ESPN, Inc. 581 F.Supp.2d at 551, citing, Posven, C.A. v. Liberty Mutual Insurance
Co., 303 F.Supp.2d 391, 405 (S.D.N.Y. 2001). This court has noted that both the Southern
District of New York and the Central District of California are familiar with federal copyright
law. ESPN, Inc., 581 F. Supp.2d at 551. As to the state common law claims for an implied
contract and unfair competition, these would fall under California law as the Complaint alleges
the implied contract and the alleged misappropriation of Plaintiff's "manuscript" between the
Wayans Defendants and Plaintiff occurred in the Central District of California. "While Federal
courts in other states are capable of construing..." state common law " ...the forum's familiarity
with the governing law may be a factor even in contract cases." AIG Financial Products Corp.,
2009 WL 4823895 at *15, citing American Steamship Owners Mut. Protection and Indem.
Ass'n., Inc. v. LaFarge North America, Inc., 474 F.Supp.2d 474, 486 (S.D.N.Y. 2007).

     Since California courts, rather then New York courts, are more familiar with California
law, this factor supports transferring the case to the Central District of California.


H.    Plaintiff's Choice of Forum Should Be Given No Deference

     "The plaintiff's choice of forum is generally entitled deference, unless the forum chosen
is not plaintiff's home forum." ESPN, Inc., 581 F.Supp.2d at 547; see also, Carrie Forbes, Inc.
v. The Gap, Inc., 1994 WL 693554, *2, (S.D.N.Y. Dec. 8, 1994) (citing Dwyer, 853 F.Supp. at
694). Deference to the plaintiff's choice is greatly diminished where the operative facts have
"little connection" with the forum chosen and/or the forum chosen is not the plaintiff's residence.
Samson Lift Technologies, 2009 WL 2432675 at *2. (Court afforded plaintiff's choice of forum
little weight as it was not plaintiff's residence and underlying dispute had little connection with
New York.); Stein v. Microelectronic Packaging, Inc. 1999 WL 540443, *8 (S.D.N.Y. July 26,

19

1999)(Weight given to plaintiff's choice of venue was diminished where the operative facts have "little or no connection" with forum chosen by plaintiff.); Eskofot A/S v. E/I DuPont De Nemours & Co., 872 F.Supp. 81, 96 (S.D.N.Y. 1995)("The deference accorded plaintiff's choice of forum...is diminished substantially where forum is neither plaintiff's home district nor the place where events or transactions underlying the action occurred."); Thomas Am. Corp. v. Fitzgerald, 1994 WL 440935, *5(S.D.N.Y. Aug. 11, 1994)("[T]he plaintiff's choice of forum is accorded less weight where plaintiff's chosen forum is neither plaintiff's home nor the place where the operative facts of the action occurred."); Herbert Ltd Partnership, 325 F.Supp.2d at 291 ([T]he plaintiff's choice of forum receives less deference when the forum is not the Plaintiff's home district and there is no material connection between either the plaintiff or the underlying transactions and the chosen forum.")

Plaintiff's choice of forum should be given little weight, since Plaintiff's only nexus with the forum is Plaintiff's counsel. The absolute lack of connection between Plaintiff and the Southern District of New York belies his choice of forum.

Plaintiff did not choose either his own forum which is also the home forum of his former employers Wayans Defendants. In fact Plaintiff and Wayans Defendants share the same home forum; and this forum is the situs of all of the key events or acts alleged in the Complaint, i.e. the Central District of California. The fact that Defendant SMP is present in New York does not support giving deference to Plaintiff's choice of the New York venue and does not establish the Central District as an inconvenient forum. Therefore, if Plaintiff's choice is based on Defendant SMP's presence, such a justification is nullified by the fact of Defendant SMP's consent to transfer to the Central District of California. See, e.g., Comprehensive Care Corp., 1991 WL 150220 at *3-4. Since Plaintiff's home is not in New York and there is little connection to a New

20

York forum, Plaintiff's choice of the forum should be granted little deference and constitutes an

insufficient basis for maintaining this action in New York, particularly in light of the

overwhelming support in favor of transferring this action to the Central District of California.

I.      Trial Efficiency and the Interests of Justice Favor Transfer

Trial efficiency will be greatly increased by transferring this action to the Central District

of California.  Transfer of this action, which is in its earliest stages, will not impose any

inconvenience on the Plaintiff.  In fact, the Central District of California is more convenient for

the Plaintiff.  He could have more easily brought this action in the Central District of California.

Moreover, transfer will encourage greater efficiency in both pretrial and trial stages, inasmuch as

the bulk of documentary, physical and testimonial evidence is in the Central District of

California.  See Wechsler v. Macke Intern. Trade, Inc., 1999 WL 1201251, *10 (S.D.N.Y. Dec.

27, 1999) ("Transfer of an action facilitates discovery when: (1) the action is in the early stages

of litigation; and 2) the transferee district is the place where the operative events occurred and

where many witnesses and documents are located.").

Accordingly, this factor weighs heavily in favor of transferring this action to the Central

District of California, and as Plaintiff has no connection whatsoever to New York, the interest of

justice dictate that this action should be transferred to the Central District of California.

As the Herbert Ltd. Partnership found: "Essentially the Court concludes that this case is

a California-based action that, although permissibly filed in this District, should more

appropriately proceed in California in the interests of convenience and fairness." Herbert Ltd.

Partnership, 325 F.Supp.2d at 292-93.  The same is true here, and therefore, this factor favors

transfer.

## CONCLUSION

All the relevant factors for consideration under 28 U.S.C. § 1404(a) strongly support the Defendants' motion to transfer this action to the Central District of California.  Moreover, all factors to be considered overwhelmingly support the conclusion that the transfer of this action will serve the interests of convenience and fairness.

Accordingly, the Defendants' motion to transfer this action from the Southern District of New York to the Central District of California, pursuant to 28 U.S.C. § 1404(a) should be granted as Defendants have met their burden to show that the relevant factors weigh strongly in favor of transfer; and Defendants should be awarded the costs and disbursement of this motion.

Dated: New York, New York
      March 10, 2010

                          LAW OFFICES OF LAWRENCE E. FABIAN

                          By: _____

                              Lawrence E. Fabian (6251)
                              Stephanie Seto (5410)
                              *Attorneys for the Defendants*
                              250 West 57th Street, Suite 1720
                              New York, NY 10107
                              (212) 644-8096

TO:    Kenneth P. Thompson, Esq.
        Ariel Y. Graff, Esq.
        Thompson Wigdor & Gilly LLP
        85 Fifth Avenue
        New York, NY  10003

# EXHIBIT "D"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

——————————————————————x

JARED EDWARDS,

                Plaintiff,

   -against-                               09 Civ. 10263 (CM)

KEENEN IVORY WAYANS, SHAWN
WAYANS, MARLON WAYANS, WAYANS
BROTHERS PRODUCTIONS and ST.
MARTIN'S PRESS, INC.,

              Defendants.

——————————————————————x

ORDER

McMahon, J.:

     It is hereby ORDERED that this case is transferred to the Central District of California pursuant to 28 U.S.C. § 1404(a). For substantially the reasons stated in defendants' memorandum in support of transfer (Docket No. 25), the relevant § 1404(a) factors weigh in favor of transferring this action to the Central District of California. Accordingly, the Court grants defendants' motion to transfer.

Dated: March 12, 2010

                                           ————————————————
                                              U.S.D.J.

BY ECF TO ALL COUNSEL

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/12/10

# EXHIBIT "E"

# Certificate of Registration



Form TX Certificate (17 U.S.C. 705)

This Certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**Registration Number**

**TX 7-064-388**

**Effective date of registration:**

July 6, 2009

## Title

**Title of Work:** 101 WAYS TO KNOW YOU'RE A GOLDDIGGER

## Completion/ Publication

**Year of Completion:** 2008

**Date of 1st Publication:** May 20, 2009      **Nation of 1st Publication:** United States

## Author

- **Author:** Keenen Ivory Wayans

  **Author Created:** co-authored work

  **Work made for hire:** No

  **Anonymous:** No      **Pseudonymous:** No

- **Author:** Shawn Wayans

  **Author Created:** co-authored work

  **Work made for hire:** No

- **Author:** Marlon Wayans

  **Author Created:** co-authored work

## Copyright claimant

**Copyright Claimant:** Keenen Ivory Wayans, Shawn Wayans, Marlon Wayans, Shane Miller

c/o St. Martins' Press, LLC, 175 Fifth Avenue, New York, NY 10010-7848

## Certification

**Name:** Ria Almestica

**Date:** June 30, 2009

**Registration #:**   TX0007064388

**Service Request #:**   1-224396468

Ria Almestica c/o St. Martins' Press, LLC
175 Fifth Avenue
Room 603
New York, NY 10010-7848

# EXHIBIT "F"

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**Registration Number:**

## TXu 1-612-358

**Effective date of registration:**

August 23, 2009

## Title ─────────────────────

Title of Work: You know you're a Gold Digger when...

## Completion/Publication ─────

Year of Completion: 2007

## Author ────────────────────

■    **Author:** Jared Edwards

**Author Created:** text

**Work made for hire:** No

**Citizen of:** United States      **Domiciled in:** United States

## Copyright claimant ─────────

**Copyright Claimant:** Jared Edwards

6721 Springpark Avenue, Los Angeles, CA, 90056, United States

## Rights and Permissions ─────

**Name:** Jared Edwards

## Certification ──────────────

**Name:** Kenneth P. Thompson, Esq

**Date:** August 4, 2009

Registration #:   TXU001612358

Service Request #:   1-227381301

Thompson Wigdor & Gilly LLP
Kenneth Thompson
85 Fifth Ave
New York, NY 10003  United States