Bryan J. Freedman, Esq. (SBN 151990)
    bfreedman@ftllp.com
September Rea (SBN 261121)
    srea@ftllp.com
FREEDMAN & TAITELMAN, LLP
1901 Avenue of the Stars, Suite 500
Los Angeles, CA  90067
Telephone: (310) 201-0005
Facsimile: (310) 201-0045

Attorneys for Defendants Keenen Ivory Wayans,
Shawn Wayans, Marlon Wayans,
Wayans Bros. Productions, and
SMP, LLC incorrectly named St. Martin's
Press, Inc. (now known as SMP (1952) Inc.)

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JARED EDWARDS,<br><br>                    Plaintiff<br><br>vs.<br><br>KEENEN IVORY WAYANS, SHAWN WAYANS, MARLON WAYANS, WAYANS BROTHERS PRODUCTIONS, AND ST. MARTIN'S PRESS, INC.,<br><br>                    Defendants. | CASE NO. 2:10-cv-02231 R (RCX)<br><br>[Honorable Manuel Real, Courtroom 8, USDC - Central District]<br><br>**DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW**<br><br>Final Pre-trial Conference: Jan. 10, 2011<br>Time:  11:00 a.m.<br>Location: Courtroom 8<br><br>Trial:  February 15, 2011<br>Time:  9:00 a.m. |

# TABLE OF CONTENTS

**I. PLAINTIFF'S FIRST CLAIM FOR COPYRIGHT INFRINGEMENT**

A. Copyright Law and Work for Hire Doctrine ..........................................1

  1. Elements to Show Plaintiff Was an Employee ...............................1

      *a.* *The skills required to create the work*..............................2

      *b.* *The source of the tools or instruments used to create the work* ..................................................3

      *c.* *The location where the work was done* .............................3

      *d.* *Applicability of employee benefits, like a pension plan or insurance*...........................................................4

      *e.* *Tax treatment of the creator by the employer* ...................4

      *f.* *Whether the creator had discretion over when and how long to work* ..................................................4

      *g.* *Whether the employer had the right to assign additional projects to the creator*........................................5

      *h.* *Duration of the relationship between the parties*...............5

      *i.* *The method of payment*......................................5

      *j.* *Whether the creator hired (or could have hired) and paid his or her own assistants*................................................6

      *k.* *Whether the employer is a business*...................................6

  2. Elements to Show Work Done in Scope of Employment and Summary of Evidence that Shows Same ...........................................6

      *a. Work was Kind of Work Plaintiff Employed to Perform*.............................................................7

      *b. Work Was Created Substantially within Work Hours and Space*..........................................................8

DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

     *c. Work was Actuated by a Desire to Serve the*

      *Employer* .......................................................................9

 B. Joint Work under the Copyright Act ...................................12

**II. PLAINTIFF'S SECOND CLAIM FOR UNFAIR COMPETITION**

 A. California Law Governs Plaintiff's Unfair Competition Claim ...........14

 B. Plaintiff's Unfair Competition Claim is Preempted ...............16

 C. State Law Claim Fails Even if Not Preempted ......................17

**III. PLAINTIFF'S THIRD CLAIM FOR BREACH OF IMPLIED**

   **CONTRACT**

 A. California Law Governs Breach of Implied Contract Claim ................19

 B. Plaintiff's California Claim of Breach of Implied Contract

  Is Preempted by Federal Copyright Law ..................................20

 C. Plaintiff's Implied Contract Claim Fails Even if Not Preempted ..........22

**IV. DAMAGES**

 A. No Statutory Damages or Attorneys' Fees under the Act.......................23

 B. No Damages or Attorneys' Fees for Unfair Competition Claim ...........23

 C. No Attorneys' Fees or Punitive Damages for Breach of Contract..........24

 D. Plaintiff Will Not Be Able to Show that He Suffered Any Damages.....24

## <u>TABLE OF AUTHORITIES</u>

<u>UNITED STATES SUPREME COURT CASE LAW</u>

*Community for Creative Non-Violence v. Reid*,

 490 U.S. 730 (1989) .......................................................2

*Feist Publications v. Rural Tel. Serv. Co.*,

  499 U.S. 340, 361 (1991) .........................................1

*Piper Aircraft Co. v. Reyno*,

 454 U.S. 235 (1981) .......................................................14, 19

DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

**<u>FEDERAL CASE LAW</u>**

*20th Century Fox Film Corp. et al v. Ent't Dist. et al,*

    429 F.3d 869 (9th Cir. 2005) ....................................................................9, 10, 11

*Aalmuhammed v. Lee,*

    202 F.3d 1227 (9th Cir. 2000) ...............................................................16

*Ashton-Tate Corp. v. Ross,*

    916 F.2d 516 (9th Cir. 1990) ..................................................................14

*Calente-Kritzer Video v. Pinckney,*

    881 F.2d 772 (9th Cir. 1989) ..................................................................20

*Curley v. AMR Corp.,*

    153 F.3d 5, 12 (2nd Cir. 1998) ...............................................................15

*Davis v. Gap, Inc.,*

    246 F.3d 152, 172 (2d Cir. 2001) ...........................................................23

*Del Madera Properties v. Rhodes & Gardner, Inc.,*

    820 F.2d 973, 977 (9th Cir. 1987) ..........................................................16

*Einhorn v. Mergatroyd Prods.,*

    426 F. Supp. 2d 189, 197 (S.D.N.Y. 2006) .............................................23

*Genzmer v. Public Health Trust of Miami-Dade County,*

    219 F.Supp. 2d 1275 (S.D. Fla. 2002) .............................................7, 8

*Getty Petroleum Corp. v. Island Transp. Corp.,*

    878 F.2d 650 (2nd Cir. 1989) .................................................................15

*GlobalNet Financial.Com, Inc. v. Frank Crystal & Co., Inc.,*

    449 F.3d 377, 382 (2d. Cir. 2006) ....................................................15,19

*Grosso v. Miramax Film Corp.,*

    2004 U.S. App. LEXIS 28043 (9th Cir. Sept. 8, 2004) ............................20, 21

*Hamilton v. ACCU-TEK,*

    47 F.Supp. 2d 330, 335-36 (E.D.N.Y. 1999) ................................................15

DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

1

**<u>FEDERAL CASE LAW CONT'D</u>**

2   *Lazard Freres & Co. v. Protective Life Ins. Co.,*

3      108 F.3d 1531 & n.5 (2d Cir. 1997)................................................................19

4   *Martha Graham Sch. v. Martha Graham Ctr.,*

5      380 F.3d 624 (2d Cir. 2004) ............................................................9

6   *McKenna v. Lee,*

7      318 F. Supp. 2d 296, 298 (E.D.N.C. 1984),

8      *aff'd mem.*, 53 Fed. Appx. 268 (4th Cir. 2002) ...............................................8

9   *Miller v. CP Chemicals, Inc.,*

10     808 F.Supp. 1238, (D.S.C. 1992) ....................................................7

11   *Nadel v. Play-By-Play Toys & Novelties, Inc.*

12     208 F.3d 368 (2d Cir. 2000) ...................................................22 n.2

13   *Oboler v. Goldin*

14     714 F.2d 211, 213 (2d Cir. 1983) ............................................... 23

15   *Oddo v. Ries,*

16     743 F.2d 630, 633 (9th Cir. Cal. 1984) ...........................................12

17

18

**<u>FEDERAL CASE LAW CONT'D</u>**

19   *Pacific MDF Prods. v. Bio-Mass Energy Concepts, LLC*,

20     2006 U.S. Dist. LEXIS (Nov. 17, 2006 E.D. Cal.) .....................................24

21   *Picture Music, Inc. v. Bourne*,

22     457 F.2d 1213, 1217 (2d Cir. 1972) ..........................................10, 11

23   *Playboy Ent., Inc. v. Dumas*,

24     53 F.3d 549, 554 (2d Cir. 1995) .................................................9-11

25   *Samara Bros. v. Wal-Mart Stores*,

26     165 F.3d 120, 131 (2d Cir. 1998)..............................................17 n.1

27

28

DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

*Shaul v. Cherry Valley-Springfield Cent. Sch. Dist.*,
   363 F.3d 177 (2d Cir. 2004) ........................................................6, 8

*Siegel v. Time Warner, Inc.*,
   496 F. Supp. 2d 1111, 1144 (C.D. Cal. 2007).............................13, 14

*Self-Realization Fellowship v. Ananda Church*,
   206 F.3d 1322 (9th Cir. 2000) ...........................................................10

*Streeter v. Rolfe*,
   491 F. Supp. 416, 421 (W.D. La. 1980) .............................................23

*Twentieth Century Fox Film Corp. v. Marvel Enters.*,
   155 F. Supp. 2d 1, 13 (S.D.N.Y. 2001) ..............................................20

*Willis v. HBO*,
   57 Fed. Appx. 902, 903 (2d Cir. 2003) ........................................22 n.2

## CALIFORNIA CASE LAW

*Cortez v. Purolator Air Filtration Products Co.*,
   23 Cal 4th 163, 173–174 (Cal. 2000) ................................................17

*Desny v. Wilder*,
   46 Cal.2d 715 (Cal. 1956) ...........................................................20-21

*Foley v. Interactive Data Corp.*,
   47 Cal. 3d 654, 676, fn. 20 (Cal. 1988) ............................................22

*Hodge v. Superior Court*,
   145 Cal. App. 4th 278, 284 (Cal. Ct. 2006) ........................... 17, 23- 24

*Korea Supply Co. v. Lockheed Martin Corp.*,
   29 Cal. 4th 1134, 1147-1148 (Cal. 2003)................................... 23

DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

**NEW YORK CASE LAW**

*Babcock v. Jackson*,

    12 N.Y.2d 473 (N.Y. 1963)...................................................................15

*Locascio v. Aquavella*,

    185 A.D.2d 689 (N.Y. App. Div. 4th Dep't 1992) .......................................24 n.3

*Umfrey v. NeMoyer*,

    184 A.D.2d 1047 (N.Y. App. Div. 4th Dep't 1992) ....................................24 n.3

**PATTERN JURY INSTRUCTIONS**

9 Ninth Circuit Manual of Model Jury Instructions Civil 2007 § 17.4.............1

9 Ninth Circuit Manual of Model Jury Instructions Civil 2007 § 17.5.............1

9 Ninth Circuit Manual of Model Jury Instructions Civil 2007 § 17.9............2

9 Ninth Circuit Manual of Model Jury Instructions Civil 2007 § 17.7............12, 13

9 Ninth Circuit Manual of Model Jury Instructions Civil 2007 § 17.22...........26

**FEDERAL STATUTES**

17 U.S.C. §§ 101 *et seq* ....................................................................1

17 U.S.C. § 106...........................................................................16.20

17 U.S.C. §201(b)..........................................................................2

**FEDERAL STATUTES  CONT'D**

17 U.S.C. §301(a) .........................................................................16

17 U.S.C. § 412............................................................................24

28 U.S.C. § 1404(a) ....................................................................15, 19

**CALIFORNIA STATUTES**

Cal. Bus. & Prof. Code § 17200 ...................................................15

Cal. Bus. & Prof. Code § 17203 ................................................15,18,24

DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

**CALIFORNIA STATUTES CONT'D**

CAL. CIV. PRO. § 1033.5 (a)(10) ................................................................. 25

CAL. CIV. CODE § 3294(a) ......................................................................... 25

**SECONDARY SOURCES**

1-5 NIMMER ON COPYRIGHT §5.03 (B)(1)(b) ......................................... 6

4 NIMMER ON COPYRIGHT § 14.02 B ..................................................... 24

Restatement (Second) of Agency § 229, cmt. B ................................. 7

8 Bender California Unfair Competition and Business Torts § 2.06 ................. 18

DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

1    Pursuant to Local Rule 16-4, defendants Keenan Ivory Wayans, Marlon

2  Wayans, Shawn Wayans (the "Wayans"), Wayans Bros. Productions, Inc.

3  ("Wayans Bros. Productions") (jointly, the "Wayans Defendants") and St. Martin's

4  Press, Inc. (now known as SMP (1952) Inc.) ("SMP") (collectively "Defendants")

5  submit this memorandum of contentions of fact and law.

## I.  PLAINTIFF'S FIRST CLAIM FOR COPYRIGHT INFRINGEMENT

7    Plaintiff Jared Edwards ("Plaintiff") alleges that he created and wrote the text of

8  an original illustrated book entitled "*You Know You're a Golddigger When . . .*"

9  and that Defendants have infringed and are infringing his copyright in this work in

10  violation of the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.* (the "Act").

### A. <u>Copyright Law and Work for Hire Doctrine</u>

12    In order to prove a case of copyright infringement, Plaintiff is required to

13  demonstrate that (1) he is the owner of a valid copyright; and (2) Defendants

14  copied original elements from the copyrighted work.  *See* 9 Ninth Circuit Manual

15  of Model Jury Instructions Civil 2007 ("NCMJI") at 17.4; *see also Feist*

16  *Publications v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).  The resolution of

17  this case hinges on whether Plaintiff is the owner of a valid copyright.  Defendants

18  do not contest that the work that Plaintiff claims to have authored is substantially

19  similar to the work published by Defendants.

#### 1.  Elements to Show Plaintiff Was an Employee

21    In order to show that Plaintiff is the owner of a valid copyright, Plaintiff is

22  required to prove by a preponderance of the evidence that (1) the plaintiff's work is

23  original, and (2) the plaintiff is the author or creator of the work.  *See* NCMJI at

24  17.5.  The controlling issue here is whether the Plaintiff is the author or creator of

25  the work.  <u>It is not contested</u> that the work is the type of content that would be

26  protected by copyright if Plaintiff had authored the work.  Here, however, to the

27  extent that Plaintiff did write and create any of the text that appears in the work,

28

DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

1  the Wayans Defendants are the authors of the work under the work-for-hire

2  doctrine.

3       In the case of a work made for hire, the employer is considered to be the

4  author of the work and owns the copyright (unless the employer and employee

5  have agreed otherwise in writing).   *See* NCMJI at 17.9.  A work made for hire is

6  (i) one that is prepared by an employee (ii) in carrying out the employer's business.

7  *See* NCMJI at 17.9; 17 U.S.C. §201(b).  Here, the evidence is unequivocal that

8  Plaintiff created the work (if he created it at all) in the scope of his employment as

9  a work for hire.  Accordingly, Plaintiff's former employers, the Wayans

10 Defendants, are the authors of the work, not Plaintiff.

11      The following factors are considered to determine whether the creator of the

12 work was an employee of the Wayans Defendants.  *See* NCMJI at 17.9; *see also*

13 *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 109 S. Ct. 2166,

14 2172 104 L. Ed. 2d 811 (1989) ("*Reid*").  <u>Beneath</u> each factor is a summary

15 description of the evidence that Defendants will present to support that Plaintiff

16 was an "employee" of the Wayans Defendants during the relevant time period.

17      a.    <u>**The skills required to create the work**</u>.  The higher the skills

18 required, the more likely the creator was an independent contractor rather than an

19 employee.

20      <u>Evidence:</u>   It is Plaintiff's testimony that he spent only about two weeks

21               allegedly creating the work in question, which consisted of 101

22               low-brow jokes.  <u>Plaintiff's testimony will confirm</u> that Plaintiff

23               did not have a graduate or even an undergraduate degree.  In

24               addition, the published work in question consists of illustrations

25               that give life to the visual jokes, which Plaintiff concedes were

26               created by artists who worked for the Wayans Defendants.  In

27               sum, Plaintiff will not be able to prove under the facts here that

28               the drafting of 101 jokes about "101 Ways to Know You're a

2

DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

Golddigger" required a high level of skill.

b. **The source of the tools or instruments used to create the work**.
The more the creator had to use his own tools or instruments, the more likely the
creator was an independent contractor rather than an employee.

Evidence:  The creation of the work in question – the alleged drafting of
101 "Golddigger" jokes – did not require particular tools or
instruments, so this element is not entirely relevant here.
Nevertheless, Defendants will present evidence that shows that
Plaintiff worked on the *Golddigger* project using his office
computer and other office resources, including a full-time staff
employee of the Wayans Defendants who was assigned as the
project manager on the project.  In addition, Defendants will
show that the published work also required the employment <u>or</u>
<u>"use"</u> of artists to create the illustrations that accompanied the
text of the work.  These artists "used" to create the illustrations
were paid for and <u>therefore</u> provided by the Wayans
Defendants.

c. **The location of where the work was done**. The less the creator
worked at his employer's place of business, the more likely the creator was an
independent contractor rather than an employee.

Evidence:  Defendants will present evidence that shows that Plaintiff
worked on the *Golddigger* project using his office computer
and other office resources, including a full-time staff employee
of the Wayans Defendants who was assigned as the project
manager on the project and artists hired by the Wayans
Defendants.  This work was performed at the office of the
Wayans Defendants. The Wayans Defendants and other
employees of the Wayans Defendants will also testify that

3

Plaintiff worked on the *Golddigger* material at the office in conjunction with other Wayans' employees.

d. **Applicability of employee benefits, like a pension plan or insurance**. The more the creator is covered by the benefit plans that the employer offers to other employees, the less likely that the creator was an independent contractor rather than an employee.

Evidence: Defendants will present evidence that although Plaintiff did not receive insurance or pension benefits, such benefits were not provided to other similar employees of the Wayans Defendants.

e. **Tax treatment of the creator by the employer**. If the employer reported to tax authorities payments to the creator with no withholding or by use of a Form 1099, the more likely the creator was an independent contractor rather than an employee.

Evidence: Defendants will present evidence – including official tax documents filed with the state of California and the federal government – that shows that the Wayans Defendants paid Plaintiff's salary through the use of a W2 form for Plaintiff (as opposed to a 1099 form) and that the Wayans Defendants withheld payroll and social security taxes for Plaintiff.

f. **Whether the creator had discretion over when and how long to work**. The more the creator can control his or her work times, the more likely the creator was an independent contractor rather than an employee.

Evidence: Defendants will submit documentary and witness testimony evidence that shows that Plaintiff did not maintain discretion over when and how long to work but instead that his hours were dictated by his employers, the Wayans Defendants. Indeed, Plaintiff has testified and complained at length about the fact that he did not control his own schedule and that he instead was

4

DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

1    always on call with the Wayans.

2       g.    **Whether the employer had the right to assign additional projects**

3    **to the creator**. The more the creator could refuse to accept additional projects

4    unless additional fees were paid, the more likely the creator was an independent

5    contractor rather than an employee.

6       Evidence:    Defendants will present testimony and documentary evidence

7                   including emails that show that the Wayans had the right to

8                   assign and did assign additional projects to Plaintiff as a matter

9                   of course.  Plaintiff's testimony, in addition to the Wayans

10                  Defendants' records, show that Plaintiff was paid a base salary

11                  and that he did not refuse additional projects unless additional

12                  fees were paid.

13      h.    **Duration of the relationship between the parties**. The more the

14   creator worked on a project basis for the employer, the more likely the creator was

15   an independent contractor rather than an employee.

16      Evidence:    Plaintiff's own testimony has shown and will show at trial that

17                  Plaintiff has worked for the Wayans Defendants for the better

18                  part of ten years.  Defendants will also submit documentary

19                  evidence supporting same.

20      i.    **The method of payment**. The more the creator usually works on a

21   commission or onetime-fee basis, the more likely the creator was an independent

22   contractor rather than an employee.

23      Evidence:    Plaintiff's deposition testimony has shown and his testimony at

24                  trial will show at trial that Plaintiff was paid a base salary

25                  during the course of his employment with the Wayans

26                  Defendants and was not paid on a commission basis.

27                  Defendants will also submit documentary evidence supporting

28                  same.

DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

j.      **Whether the creator hired (or could have hired) and paid his or her own assistants.** The more the creator hires and pays for his or her own assistants, the more likely the creator was an independent contractor rather than an employee.

Evidence:      There is no evidence that Plaintiff hired or could have hired and paid his own assistants.

k.      **Whether the employer is a business**.  If the party that did the hiring is not a business, it is more likely that the creator was an independent contractor rather than an employee.

Evidence:   Defendants will present documentary evidence and testimony that shows that Wayans Bros. Productions is a California corporation with established offices in Los Angeles, California and employed Plaintiff.

**2.      Elements to Show Work Done in Scope of Employment and Summary of Evidence that Shows Same**

Courts rely on the Restatement to evaluate whether the employee's conduct falls within the scope of his employment.  1-5 NIMMER ON COPYRIGHT §5.03 (B)(1)(b).  Specifically, work is deemed to be a work for hire where: (1) it was the kind of work he is employed to perform, (2) it occurs substantially within work hours and space, and (3) it was actuated, at least in part, by a purpose to serve the employer.  *Id.  See also, e.g., Shaul v. Cherry Valley-Springfield Cent. Sch. Dist.*, 363 F.3d 177, 186 (2d Cir. 2004).

*a.  Work was Kind of Work Plaintiff Employed to Perform*

An employee does not have to have been hired for the specific purpose of creating the copyright subject matter for it to be the "kind of work" he was employed to do.  The creation of the work is within the scope of employment where it is "***within the ultimate objective of the principal* and [is] an act which it is not unlikely that such a servant might do**.  Restatement (Second) of Agency

§ 229, cmt. B.  "The fact that a particular employer has no reason to expect the particular servant to perform the act is not conclusive."  *Id.; see also Miller v. CP Chemicals, Inc.,* 808 F.Supp. 1238, (D.S.C. 1992) (computer program created by lab supervisor" within scope of employment where "within the ultimate objective of the principal and an act which is not unlikely that a servant might do").  This analysis is particularly appropriate when an employee's duties are "open-ended." *Genzmer v. Public Health Trust of Miami-Dade County*, 219 F.Supp. 2d 1275, 1276-80 (S.D. Fla. 2002).

Here, Plaintiff has testified that his work with the Wayans was "open-ended," whereby he was "always on call" to do "whatever was needed." Plaintiff has stated that his job was "to assist overall production," whether on set, on location, or in the office.  Witness testimonial evidence, including testimony by Plaintiff, will show that over the years, Plaintiff worked in his capacity as an employee of the Wayans on movies, television shows, award shows, stand-up gigs, as a personal assistant, a production assistant, a runner, doing extra work as an actor, and was also given the opportunity to learn about the business by sitting in on "punch up" sessions to hence jokes on a script.  Defendants will also submit documentary and testimonial evidence, including the testimony of Plaintiff, that will show that before Plaintiff left the employment of the Wayans Defendants, he was working on the 101 Ways Series, which was a three-book series originated by the Wayans Brothers that included, in part, the *Golddigger* work at issue here.  The evidence will also show that Plaintiff concedes that any jokes penned by him were created to further the development of the 101 Series, a Wayans "property" he knew they were "dusting off" and that he wanted to work on.

In addition, Defendants will submit documentary and testimonial evidence, including testimony by Plaintiff, to show that the *Golddigger* material Plaintiff proposed for inclusion in the 101 Ways Series was well-received by the Wayans: that they were "excited over it" and that they "made him aware" that he "could

possibly have an opportunity . . . to get credit and finally be recognized." Defendants will also present documentary and testimonial evidence that shows that to the extent Plaintiff worked on the 101 Ways Project, which included *Golddigger* as one component, as an apprentice writer and that his jokes were subject to a variety of input and multiple edits. Defendants will present documentary and testimonial evidence that shows that there was "formal" office involvement including a "production manager" who coordinated with "all of the people who were working on the 101 Ways Series" including the Wayans, the artists and writers apprentices including Plaintiff and another writer apprentice—Shane Miller. And Defendants will present evidence, including the testimony of Plaintiff that shows that Plaintiff understood at the time the work was created that the "***final say-so came from Shawn and Marlon and Keenen. No one made a decision over them. . . .No one okayed [anything] but them***." The evidence is undeniable that assisting with drafting jokes for inclusion in a Wayans's publication was the "kind of work" Plaintiff was hired to perform and indeed was performing openly in the context of his employment. *See Genzmer,* 219 F.Supp. 2d at 1276-80.

### b. Work Was Created Substantially within Work Hours and Space

The next inquiry under the Restatement factors is whether the work occurred "substantially within work hours and space." A work may be within the scope of an employee's duties, however, even if it was prepared at home during nonworking hours. *See Shaul,* 363 F.3d at 186 (teacher's work deemed "for hire" despite being created at home); *Genzmer*, 19 F.Supp. 2d at 1280 (doctor developed work-for-hire computer program in his home, using his home computer, during off-duty hours); *McKenna v. Lee,* 318 F. Supp. 2d 296, 298 (E.D.N.C. 1984), *aff'd mem.*, 53 Fed. Appx. 268 (4th Cir. 2002) (work was made "for hire" even though plaintiff created it during nonworking hours).

DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

Here, Plaintiff has testified that the nature of his job was that the Wayans brothers knew everything he was working on, because "yeah, they were [his] bosses," he was "always on the clock with [the Wayans]" "always working," was "in the office every day."  Plaintiff has testified and is expected to testify at trial that he worked on the manuscript sometimes at the office on his computer but also "wherever [he] was."  Plaintiff has testified and is expected to testify at trial that the entire office was working on the 101 Ways Project, including *Golddigger.* Defendants will also submit documentary and testimonial evidence to show that Plaintiff received work emails about the project, used office resources to work on the project, and collaborated with others as part of his job while on the clock at work.  Defendants will also submit testimony that Plaintiff would sit in writing sessions with Shawn Wayans and Marlon Wayans and take notes for inclusion in *Golddigger.*

### c.  Work was Actuated by a Desire to Serve the Employer

There is "no need for the employer to suggest any particular project" for it to be motivated by a desire to serve the employer.  *Martha Graham Sch. & Dance Found. v. Martha Graham Ctr. of Contemporary Dance, Inc.,* 380 F.3d 624, 640 (2d Cir. 2004) (stating also that "[t]here is no need for the employer to be the precipitating force behind each work created by a salaried employee, acting within the scope of her regular employment").  Evaluation of whether the work was "actuated" at least in part to "serve" the principal is informed by the "instance test," which examines (in the context of the Copyright Act of 1909) whether "the motivating factor in producing the work was the employer who induced the creation."  *See 20th Century Fox Film Corp. et al v. Ent't Dist. et al*, 429 F.3d 869, 878 (9th Cir. 2005); *Playboy Ent., Inc. v. Dumas*, 53 F.3d 549, 554 (2d Cir. 1995).

1    The degree to which the "hiring party had the right to control or supervise

2   the artist's work" informs the analysis of whether the work was created at the

3   "instance of" the employer, and in turn, whether its creation was "actuated" or

4   "motivated" by a desire to serve the employer.  *See 20th Century Fox Film Corp.,*

5   *supra,* 429 F.3d at 879 (citing *Self-Realization Fellowship Church v. Ananda*

6   *Church of Self Realization*, 206 F.3d 1322, 1326 (9th Cir. 2000) (finding "no

7   evidence of supervision or control" to satisfy applicable work for hire doctrine).

8   Limited supervisory powers are sufficient to meet the requisite level of control:

9   "complete control over the author's work is not necessary."  *20th Century Fox*

10  *Film Corp. et al, supra,* 429 F.3d at 880 ("sufficient supervisory powers" existed

11  where publisher "discuss[ed] possible improvements with the author," had "face to

12  face meetings," and provided "notes and comments" on the work).  *See also*

13  *Picture Music, Inc. v. Bourne*, 457 F.2d 1213, 1217 (2d Cir. 1972) (supervision

14  sufficient to survive "instance" test where party had power to "accept, reject, or

15  modify [the] work"); *Playboy,* 53 F.3d at 556 (employer was "motivating factor"

16  in the creation of artist's paintings where artist would not have created "those

17  particular paintings" if he had not been given the assignments by Playboy despite

18  the fact that his work was not overseen by Playboy).

19    Defendants will submit evidence here that shows without a doubt that

20  Plaintiff was "actuated" or "motivated" by a desire to serve his employers.  Indeed,

21  Plaintiff has testified that he was working as a full-time employee when he says he

22  started drafting jokes "in the same vein" as the 150 Ways book previously authored

23  by Shawn Wayans, because he knew the Wayans "already were trying to dust that

24  property off," and that the reason he says he wrote the *Golddigger* jokes was so

25  that [he] could have a book included *in that property*."  Plaintiff has testified that

26  he knew that "the artists were already on staff, so [his] reasons for writing the book

27  [were that] *if it happened to be good enough*, it would go through the process of

28  the artist illustrating it and [the Wayans] finding someone to do it. . . . [he]

DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

1 | envisioned to write a book that would take [him] from being an assistant runner to

2 | progressing [him]self" internally.  He has stated that his goal was "to write as

3 | much as [he] could to try and see what could 'get on' [the 101 Project]."

4 | Defendants will also submit documentary evidence including emails from Plaintiff

5 | that show that Plaintiff wrote the jokes (if he wrote them at all) "as a means for

6 | advancement" to a "earn a much more creative position."  Plaintiff was hoping the

7 | Wayans "liked" his jokes and he "could get [his] chance off that."

8 |      Defendants will also present evidence that shows that that Plaintiff would

9 | not have written this 'particular style of book' but for the specifications provided

10 | by his employer.  *See Playboy,* 53 F.3d at 556.  Indeed, Plaintiff testified that he

11 | chose "the style of book to have jokes married with illustrations" rather than just a

12 | "regular book" or a "script" because the 101 Series "was a property that [the

13 | Wayans] already had . . . [and he] wanted to get a project going . . . [so he chose

14 | to] write something that had potential to get on, and at the time, ***this was***

15 | ***something they were trying to do***.  ***They were trying to do this series again.***"

16 | Defendants will submit documentary and testimonial evidence that shows that

17 | Plaintiff's work on the 101 Ways Project was proscribed the Wayans Defendants'

18 | guidelines.  Plaintiff knew at the time the work was allegedly created, for instance,

19 | "that the goal was to reach 101" jokes, because "that was the name of the property"

20 | he would try "to give [the Wayans] the best options for the funniest jokes."

21 | Finally, Defendants will submit documentary and testimonial evidence that shows

22 | sufficient supervisory powers existed here where the Wayans had face to face

23 | meetings with Plaintiff and provided notes and comments the work (*20th Century*

24 | *Fox Film Corp.,* 429 F.3d at 880) in addition to retaining the ultimate authority to

25 | "accept, reject, or modify [the] work."  *Picture Music,* 457 F.2d at 1217.

26 |      The evidence is thus irrefutable that even if Plaintiff did draft original jokes

27 | for *Golddigger*, the work was created in the scope of Plaintiff's long-standing, full-

28 | time employment with the Wayans and is thus presumed by operation of law to be

1   a work for hire.  Furthermore, Plaintiff has not alleged – nor could he allege – that

2   a written agreement exists between Defendants and Plaintiff to rebut this

3   presumption.  Accordingly, Plaintiff cannot prove by a preponderance of the

4   evidence that he was the author of the work in question under the Copyright Act.

5         B.    <u>Joint Work under the Copyright Act</u>

6        In the alternative, Defendants will show at trial that *Golddigger* is a "joint

7   work" as that term is defined by the Act, and that the Wayans Defendants were, at

8   a minimum, co-authors of the work.  Each author of a joint work shares an

9   undivided interest in the entire joint work. A copyright owner in a joint work may

10  enforce the right to exclude others in an action for copyright infringement.  *See*

11  NCMJI at 17.7.  Accordingly, if the Wayans are joint authors of the work, Plaintiff

12  cannot allege a copyright infringement claim against them or SMP with whom they

13  contracted to publish the work.  *See Oddo v. Ries*, 743 F.2d 630, 633 (9th Cir. Cal.

14  1984)

15       A work is a joint work under the Act where there are two authors of the

16  work and (i) each author has made a substantial and valuable contribution to the

17  work; (ii) each author intended that their contributions be merged into inseparable

18  or interdependent parts of a unitary whole; and (iii) each author contributed

19  material to the joint work which could have been independently copyrighted.  *See*

20  NCMJI at 17.7; *see also Siegel v. Time Warner, Inc.*, 496 F. Supp. 2d 1111, 1144

21  (C.D. Cal. 2007).

22       In making a substantial and valuable contribution to a work, each author's

23  contribution to the joint work need not be equal.  *See* NCMJI at 17.7.  Defendants

24  will present evidence, including the published work itself, that shows that the work

25  is comprised of two components: 101 jokes and 101 illustrations of those jokes.

26  Defendants will also present testimonial and documentary evidence that shows that

27  this genre of joke book always consists of two components including text of jokes

28  that lends itself to illustrations and the corresponding illustrations.  Defendants will

    further prevent testimonial evidence that shows that defendant SMP would not

have published the text of the jokes on its own without the illustrations for each joke.  The evidence will therefore show that each component of the work – the text and the illustrations – is a substantial and valuable component of the work that were merged into a unitary whole.

Components of a unitary work are considered "interdependent" when the parts "could stand alone but achieve greater effect when combined."  *Siegel*, 496 F. Supp. 2d at 1145 (citing the House Report submitted in connection with the passage of the Copyright Act of 1976).  The Court's opinion in *Siegel v. Time Warner, Inc.* ("*Siegel*") is particularly illustrative here.  In *Siegel*, the Court addressed the issue of whether a comic book authored by two men—Siegel and Schuster—was a "joint work" for purposes of summary judgment.  *See Siegel*, 496 F.Supp.2d at 1144-1149.  Siegel had written the text for the comic while Shuster provided illustrations four years later.  The Court concluded that the text and illustrations were interdependent parts of a unitary whole.  *See Siegel*, 496 F.Supp.2d at 1145 (holding that a comic book "would be considered comprised of interdependent parts–Siegel's dialogue and storyline (as contained in his submissions) and Shuster's artwork giving life and color to those words.").

Here, Defendants will present evidence that shows that *Golddigger* is comprised of jokes and illustrations of those jokes which were merged to make one unitary work. The tangible and testimonial evidence will show that the illustrations bring life to the visual jokes and stir further interest by the readership. Further testimonial evidence will establish that the illustrations are the more labor-intensive portion of the work.

The touchstone of a joint authorship is an intention at the time of creation that the parts be combined into an integral unit.  *Siegel*, 496 F.Supp.2d at 1145 (citing the Senate Committee Report submitted with the passage of the Copyright Act of 1976).  The Court looks to objective evidence of this intention.  *Id.* Contemporaneous and coordinated action is <u>not</u> required.  *Id.* at 1145-46.

Plaintiff has testified that when he drafted jokes for *Golddigger* he expected that the jokes would be illustrated by the Wayans (and more specifically, by illustrators working for the Wayans). And, although "contemporaneous and coordinated action" is not required, Defendants will present testimonial evidence including that of Plaintiff himself, the illustrators and other Wayans employees that will show that Plaintiff *did* sit down to collaborate with the Wayans and their illustrators on at least one of the illustrations for *Golddigger*. Defendants will also present testimonial evidence that shows that Plaintiff always intended the work to include illustrations of his text.

In the Ninth Circuit, each contribution to a joint work must contain independently copyrightable material. *See Ashton-Tate Corp. v. Ross*, 916 F.2d 516, 521 (9th Cir. 1990). In this case, there is no issue of whether the text or illustrations of *Golddigger* are independently copyrightable. *Cf. Siegel*, 496 F.Supp.2d at 1149 (holding that the one factor preventing the Court from finding the comic book a joint work was issue of whether the comic characters at issue were derivate works). There is no such issue here, where the text and illustrations are original works that could be independently copyrightable. Accordingly, *Golddigger* is a joint work under the Act.

## II.   PLAINTIFF'S SECOND CLAIM FOR UNFAIR COMPETITION

### A.  <u>California Law Governs Plaintiff's Unfair Competition Claim Law</u>

When a case is transferred under 28 U.S.C. § 1404(a) from a federal court in one state to a federal court in another state, the choice-of-law provisions of the originating state govern. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 243 n.8 (1981). This case was transferred under 28 U.S.C. 1404(a) from New York to California; thus, New York choice-of-law rules apply. In New York, the choice-of-law analysis "begins with a threshold determination as to whether an actual

conflict of laws exists."  *GlobalNet Financial.Com, Inc. v. Frank Crystal & Co., Inc*., 449 F.3d 377, 382 (2d. Cir. 2006).

Under California law, an unfair competition claim is a statutory claim that limits recovery to restitution and injunctive relief.  *See* CAL. BUS. & PROF. CODE §§ 17200, 17203.  Under New York law, unfair competition is a common law tort that permits the recovery of damages (including punitive damages).  *See, e.g., Getty Petroleum Corp. v. Island Transp. Corp.,* 878 F.2d 650, 657 (2nd Cir. 1989) (holding that New York law "clearly permits punitive damages").  Accordingly, a conflict of law exists.  *See Curley v. AMR Corp*., 153 F.3d 5, 12 (2nd Cir. 1998) (noting a conflict exists when "the applicable law from each jurisdiction provides different substantive rules").

For tort conflicts, the New York Court of Appeals uses an "interest analysis" which requires that courts give  "controlling effect to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties has the greatest concern with the specific issue raised in the litigation."  *Babcock v. Jackson*, 12 N.Y.2d 473 (N.Y. 1963) (citations omitted).  Further, courts should give the "greatest weight to those contacts which are relevant to the policies animating the particular rules in conflict."  *Hamilton v. ACCU-TEK*, 47 F.Supp. 2d 330, 335-36 (E.D.N.Y. 1999).

**Evidence**

Defendants will present evidence that shows that Plaintiff is a California resident who has never lived in New York.  In addition, Defendants will present documentary and testimonial evidence sufficient to show that each of the Wayans is a California resident and that Wayans Bros. Productions is a California corporation.  Documentary and testimonial evidence will also show that the creation of the work in question occurred in California.  The central issue of this dispute – and indeed the heart of the unfair competition claim – is the nature of the almost-ten-year employment relationship between a California employee and his

15

California employers.  By comparison, the evidence will also show that (i) Plaintiff has not had *any* contact with SMP, the publisher in New York, and that (ii) SMP was entirely unaware of Plaintiff's existence much less the dynamics of Plaintiff's employment relationship with the Wayans.  California—not New York—has the greatest interest in regulating the conduct of its employees and businesses that operate in California. *See Aalmuhammed v. Lee*, 202 F.3d 1227, 1237 (9th Cir. 2000).  It is therefore clear that California law governs Plaintiff's unfair competition claim.

### B.   Plaintiff's Unfair Competition Claim is Preempted Law

A state law claim is preempted by federal copyright law where (1) the work at issue is subject to the Copyright Act, and (ii) the state law claim is "equivalent to any of the exclusive rights within the general scope of copyright" as specified by 17 U.S.C. §106 (1982).  17 U.S.C. §301(a) (1982).  "[T]o survive preemption, the state causes of action must protect rights which are qualitatively different from copyright rights.  The state claim must have an 'extra element' that changes the nature of the action." *Del Madera Properties v. Rhodes & Gardner, Inc*., 820 F.2d 973, 977 (9th Cir. 1987).  An allegation of unfair competition "does not add any 'extra element' which changes the nature of the action . . . [where it] is constructed upon the premise that the documents and information [] furnished to the defendants belonged to the [plaintiff] and were misappropriated by defendants." *Del Madera Properties, supra,* 820 F.2d at 977.

### Evidence

It is clear that Plaintiff's unfair competition claim is "constructed upon the premise" that the manuscript of jokes he purportedly "furnished to the defendants" belonged to him and was "misappropriated" by them.  Plaintiff alleges in the complaint that the "unauthorized *misappropriation* and misuse of Plaintiff's book ... constituted the "wrongful deprivation of Plaintiff's right to public recognition

and credit as *author and owner of the book*."  Complaint ¶ 52.  Plaintiff further states that his "action concerning Defendants' unfair competition is related to Plaintiff's substantial copyright infringement action since *both actions are based on the same operative facts*."  Complaint ¶ 54.  Plaintiff thus concedes and cannot contest that the unfair competition claim asserts rights equivalent to the copyright claim. Plaintiff's unfair competition claim is thus preempted by copyright law as against all of the Defendants.[1]

### C.   State Law Claim Fails Even if Not Preempted Law

A claim for unfair competition under California Business & Professions Code §17200 the ("UCL") requires proof that defendant engaged in a business act or practice consisting of either (i) an "unlawful" act or practice, (ii) a fraudulent act or practice, or (iii) an "unfair" act or practice.  Plaintiff must further prove that he suffered injury in fact resulting in the loss of property.  8 Bender California Unfair Competition and Business Torts § 2.06.  Recovery under the UCL is limited to restitution of money, injunctive relief, or declaratory relief.  *See* CAL. BUS. & PROF. CODE § 17203.  "In enacting the UCL, 'the overarching legislative concern [was] to provide a streamlined procedure for the prevention of ongoing or threatened acts of unfair competition.'"  *Hodge v. Superior Court*, 145 Cal. App. 4th 278, 284 (Cal. Ct. 2006) (quoting *Cortez v. Purolator Air Filtration Products Co.*, 23 Cal 4th 163, 173–174 (Cal. 2000)).  "Consistent with this objective, the UCL provides only for equitable remedies." *Id.*   As a result, there is no right to a jury trial for a

---

[1] Even if the Court concludes that New York law applies under New York's choice of law principles, the result is the same.  Plaintiff has failed to allege or provide evidence of an "extra element" that qualitatively changes the nature of his copyright infringement claim. *See Samara Bros. v. Wal-Mart Stores*, 165 F.3d 120, 131 (2d Cir. 1998) (quoting *Mayer v. Josiah Wedgwood & Sons, Ltd.*, 601 F. Supp. 1523, 1535 (S.D.N.Y. 1985) (holding that under New York law the "extra element" must change the "nature of the action so that it is qualitatively different from a copyright infringement claim.").  Instead, Plaintiff has merely re-asserted his infringement claim. Therefore, Plaintiff's unfair competition claim under New York is also preempted by federal copyright law.

17

UCL claim.  *Hodge*, 145 Cal. App. 4th at 284.  A jury's findings are merely advisory and the Court may disregard them.  *Id.*

### **Evidence**

Plaintiff is not alleging that Defendants committed fraud and he cannot prove an unfair competition claim based on an illegal act.  As discussed previously Plaintiff admits that his unfair competition claim is based on the "same operative facts" as his copyright infringement action.  Complaint ¶ 54.  Specifically, the Complaint asserts that the "unauthorized misappropriation" of "Plaintiff's book" constituted a "wrongful deprivation" of his right to "credit as author and owner of the book."  Complaint ¶ 56.  Plaintiff's unfair competition claim is thus based on his purported assumption that he had an exclusive ownership interest in jokes he allegedly drafted for inclusion in *Golddigger* while he was employed by the Wayans.

Defendants will present evidence that shows that Plaintiff was a full-time employee of the Wayans Defendants at the time the underlying work was created.  Thus, if Plaintiff wrote jokes to be included in *Golddigger,* he did so within the scope of his employment on a work-for-hire basis.  The work is thus owned by the Wayans in its entirety.  In the alternative, to the extent Plaintiff did contribute to *Golddigger*, he did so as a join-author with the Wayans under the Copyright Act as discussed above.  A common law copyright infringement or misappropriation theory of liability therefore cannot survive against the Wayans since they are the rightful authors and owners of the work.  Further, by extension, the unfair competition claim fails also against SMP who cannot be said to have committed any wrongdoing in contracting with the exclusive copyright owners to publish the 101 Ways Series.

In addition, Plaintiff will not be able to prove that he suffered an injury in fact separate and apart from a claim that the alleged ownership interest in the underlying work.

**III.   PLAINTIFF'S THIRD CLAIM FOR BREACH OF IMPLIED CONTRACT**

   A. <u>California Law Governs Breach of Implied Contract Claim Law</u>

When a case is transferred under 28 U.S.C. § 1404(a) from a federal court in one state to a federal court in another state, the choice-of-law provisions of the originating state govern. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 243 n.8 (1981). This case was transferred under 28 U.S.C. 1404(a) from New York to California; thus, New York choice-of-law rules apply. In New York, the choice-of-law analysis "begins with a threshold determination as to whether an actual conflict of laws exists." *GlobalNet Financial.Com, Inc. v. Frank Crystal & Co., Inc.*, 449 F.3d 377, 382 (2d. Cir. 2006). At least one federal court has stated that "[t]here are clear differences between New York and California common law rules with respect to breach of contract in general, and contract interpretation and performance in particular." *Twentieth Century Fox Film Corp. v. Marvel Enters.*, 155 F. Supp. 2d 1, 13 (S.D.N.Y. 2001). New York uses the "center of gravity" test for determining which forum's law to apply to contract breaches. *Lazard Freres & Co. v. Protective Life Ins. Co.,* 108 F.3d 1531 & n.5 (2d Cir. 1997). The "center of gravity" test considers such factors as "the place of contracting, the places of negotiation and performance, the location of the subject matter, and the domicile or place of business of the contracting parties." *Id*. at 1539 (citation omitted). This is a matter that must be decided by the court and not the jury.

   <u>Evidence</u>

Defendants will present incontrovertible evidence, including Plaintiff's own testimony, to show that at no time did Plaintiff contract with anyone from New York, negotiate with anyone in New York, or perform services related to this matter in New York. The evidence presented by Defendants will further show that Plaintiff had zero contact with SMP, in New York or otherwise. The evidence is

19

1   also clear that the underlying *Golddigger* work was created in California and that

2   the state of California is the domicile of the Plaintiff and the Wayans Defendants –

3   the only defendants with whom Plaintiff can be said to have interacted with on

4   either an explicit or implicit basis.  California law applies to Plaintiff's breach of

5   implied contract claim.

6   **B.**  **Plaintiff's California Claim of Breach of Implied Contract is Preempted**

7       **by Federal Copyright Law.**

8       **Law**

9       Section 106 of the Copyright Act confers upon copyright owners the

10   exclusive rights to reproduce, distribute and display original works of authorship,

11   and to prepare works derived from the originals.  17 U.S.C. § 106.   State breach of

12   contract claims are preempted under the Act when they are based on oral or written

13   agreements pertaining to the underlying rights to the work.  *Calente-Kritzer Video*

14   *v. Pinckney*, 881 F.2d 772, 774 (9th Cir. 1989).  When the gravamen of the claim is

15   that the defendants used the plaintiff's work, without authorization, the rights

16   asserted under the implied contract are equivalent to the rights of copyright owners

17   under §106 of the Act – namely, the exclusive right to use.

18       Implied contract claims have been determined to survive copyright

19   preemption only where the implied contract between the parties does not relate to

20   the underlying work but instead pertained to the "services of conveying the

21   underlying idea," in part because ideas are not protected by copyright law.  *Grosso*

22   *v. Miramax Film Corp.,* 2004 U.S. App. LEXIS 28043 at *3 (9th Cir. Sept. 8,

23   2004).  Such claims are referred to as *Desny* claims after the California Supreme

24   Court case *Desny v. Wilder*, 46 Cal.2d 715 (Cal. 1956).  To establish a *Desny* claim

25   for breach of implied-in-fact contract, the plaintiff must show that the plaintiff

26   prepared the work, disclosed the work to the offeree *for sale*, and did so under

27   circumstances from which it could be concluded that the offeree voluntarily

28   accepted the disclosure knowing the conditions on which it was tendered.  *See*

20

*Grosso v. Miramax, supra*, 2004 U.S. App. LEXIS at *3-4.

### Evidence

Defendants will present testimonial evidence, including Plaintiff's testimony, to show that Plaintiff did not provide the underlying idea of the work to the Wayans.  The evidence submitted by Defendants will instead show that Plaintiff knew that his employers were interested and engaged in creating a series of joke books with illustrations - the 101 Ways Project - reminiscent of Shawn Wayans' "150 Ways To Tell If You're Ghetto," which was previously published in 1997.  The evidence will further show that Plaintiff alleges that he dropped a manuscript off at Keenan Ivory Wayans' house for his review without saying or doing anything to indicate that the alleged tender of the manuscript should be construed as a *sale* of the *idea* under the *Desny* factors.  Further, the evidence will show that the manuscript that Plaintiff allegedly dropped off was not the complete list of 101 jokes that Plaintiff now claims he owns.

The evidence will further show that when Plaintiff allegedly dropped off the manuscript at Keenan Wayans' house, he was a full-time employee of the Wayans and any jokes drafted by him constituted work product that he hoped would be included in the anticipated publication of the 101 Series.  Thus, any alleged expectation on Plaintiff's part that he would receive additional compensation for the sale of this idea – an idea that the Wayans actually originated – is contradicted by the record in this case.  Rather, the "gravamen" of Plaintiff's claim is that the Wayans violated Plaintiff's asserted right to use and authorize the use of content he claims belonged to him.  *See* Complaint ¶ 56 (asserting Plaintiff's "property interest" in *Golddigger* and his alleged "understanding" that "any use" by Defendants would be "subject to notification and consent by Plaintiff and compensation for *use* thereof.").  The right to use and authorize the use of creative work, however, is expressly within the exclusive domain of copyright law.  *See* 17 U.S.C. § 106.  Plaintiff's breach-of-implied contract claim is, accordingly,

preempted by federal copyright law. [2]

**C. <u>Plaintiff's Implied Contract Claim Fails Even if Not Preempted</u>**.

**<u>Law</u>**

In an implied-in-fact contract, the existence and terms of the contract are inferred from the conduct of the parties. *See* NCMJI at 10.56. The party asserting an implied-in-fact contract claim must allege the existence of conduct from which a promise may be inferred. *See, e.g., Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 676, fn. 20 (Cal. 1988).

**<u>Evidence</u>**

Plaintiff will not be able to meet his burden on this claim. Plaintiff has not identified and cannot identify any conduct on the part of any of the Defendants that would give rise to an implied-in-fact contract. Plaintiff has testified that SMP did not make any promises or enter into any contracts with him and that he never had any contact with SMP directly or indirectly. As a result, Plaintiff cannot allege that he relied on any conduct on the part of SMP that would give rise to the existence of a valid, binding contract. Further, Plaintiff has admitted that he did not have any understanding or agreement with the Wayans with respect to confidentiality or payment to support a claim for an implied-in-fact contract.

**IV. DAMAGES**

It is clear that Plaintiff will not be able to meet his burden of proof on any of the three claims asserted in this action. Even if Plaintiff were able to prove any of the claims alleged against Defendants, however, he could not recover the damages

---

[2] Even if New York law were to apply, the result would be the same. In *Nadel v. Play-By-Play Toys & Novelties, Inc.*, the Second Circuit addressed the issue of plaintiff's failure to allege the existence of an implied-in-fact contract under New York law. 208 F.3d 368, 367 n.5 (2d Cir. 2000) The Second Circuit held that "the mere disclosure of an . . . idea to a defendant . . . will not automatically entitle a plaintiff to compensation upon the defendant's subsequent use of the idea. An implied-in-fact contract requires such elements as consideration, mutual assent, legal capacity and legal subject matter. . . ." *Id.* at 367 n.5 ((internal quotation marks and citations omitted). When the complaint does not actually plead an implied-in-fact contract claim or forth facts that would arguably support such a claim, but instead relies merely on allegations of copyright infringement, the claim is preempted by federal law. *See, e.g., Willis v. HBO*, 57 Fed. Appx. 902, 903 (2d Cir. 2003).

DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

he seeks under those claims.  This is a matter of law for the court and not for the jury.

## A.   No Statutory Damages or Attorneys' Fees under the Act.

### Law

Plaintiff seeks punitive damages, statutory damages, and attorneys' fees in connection with Plaintiff's copyright claim.  Complaint ¶ 59, B, E, F, G.  When the work that is the subject of a copyright claim has not been published, as is the case with Plaintiff's manuscript, registration of the copyright prior to commencement of the alleged infringement is a prerequisite to recovery of attorneys' fees and statutory damages under the Act.  *See* 17 U.S.C. § 412.  *See also Streeter v. Rolfe*, 491 F. Supp. 416, 421 (W.D. La. 1980) (holding that Section 412(2) "applies only to published works"); *Einhorn v. Mergatroyd Prods.*, 426 F. Supp. 2d 189, 197 (S.D.N.Y. 2006).  Moreover, absent an election for statutory damages, punitive damages are not recoverable under the Act.  *See Davis v. Gap, Inc*., 246 F.3d 152, 172 (2d Cir. 2001) ("As a general rule, punitive damages are not awarded in a statutory copyright infringement action.") (citing 4 NIMMER ON COPYRIGHT § 14.02 B, at 14-23 to 24; *Oboler v. Goldin*, 714 F.2d 211, 213 (2d Cir. 1983)).

### Evidence

Defendants will present testimonial and documentary evidence, including official records from the United States Copyright Office, to show that Plaintiff had not registered the work at the time of the alleged infringement.  Plaintiff is therefore not eligible to recover statutory damages or attorneys' fees.

## B.   No Damages or Attorneys' Fees for Unfair Competition Claim.

### Law

A private litigant may not recover attorney fees or damages, including punitive damages, for unfair competition under California law.  CAL. BUS. & PROF. CODE § 17203.  *See also Korea Supply Co. v. Lockheed Martin Corp*., 29 Cal. 4th 1134, 1147-1148 (Cal. 2003); *Hodge v. Superior Court*, 145 Cal. App. 4th 278,

23

284 (Cal. Ct. 2006).

To the extent Plaintiff seeks recovery of damages (including punitive damages) or attorneys' fees pursuant to his claim for unfair competition, he is prohibited from recovery of the same. *See, e.g., Hodge v. Superior Court*, 145 Cal. App. 4th 278, 284 (Cal. Ct. 2006); *Pacific MDF Prods. v. Bio-Mass Energy Concepts, LLC*, 2006 U.S. Dist. LEXIS 89844, at *26-27 (Nov. 17, 2006 E.D. Cal.) (granting partial summary adjudication with respect to the issue of damages for unfair competition).

**C.   No Attorneys' Fees or Punitive Damages for Breach of Contract.**

**Law**

Section 3294 of the California Civil Code clearly prohibits recovery of punitive damages for a claim sounding in contract. CAL. CIV. CODE § 3294(a). Attorneys' fees are not recoverable for a breach of contract claim unless expressly provided by a statute, law or the terms of the contract. CAL. CIV. PRO. § 1033.5 (a)(10). [3]

**Evidence**

Plaintiff has not shown and will not be able to show any provision of a contract, statute or law that permits him to recover attorneys' fees in connection with his breach of contract claim. *See* Complaint ¶¶12-38, 56-58. Plaintiff is therefore prohibited from recovery of punitive damages and attorneys' fees in connection with his third cause of action for breach of implied contract. Moreover, there is no evidence of consideration or the existence of a contract.

**D.   Plaintiff Will Not Be Able to Show that He Suffered Any Damages**

Plaintiff will not be able to show that he suffered any damages. Defendants will present evidence that demonstrates that the work in question did not make any

---

[3] Under New York law, Plaintiff is also precluded from recovery. *See Locascio v. Aquavella*, 185 A.D.2d 689 (N.Y. App. Div. 4th Dep't 1992) ("in the absence of a statutory or contractual basis for payment of attorney's fees they are generally not recoverable"); *Umfrey v. NeMoyer*, 184 A.D.2d 1047, 1048 (N.Y. App. Div. 4th Dep't 1992) (same).

DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

1  profits.  The plaintiff must prove damages by a preponderance of the evidence.

2  NCMJI § 17.22.

3

4  Dated December 20, 2010

5  By: ___/s/_____

6  Bryan J. Freedman, Esq.
   September Rea, Esq.

7  Attorneys for Defendants Keenen Ivory
   Wayans, Shawn Wayans, Marlon Wayans,
   Wayans Brothers Productions, and St.

8  Martin's Press, Inc. (now known as SMP
   (1952) Inc.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28