Jesse A. Kaplan (SBN 255059)
  jkaplan@ftllp.com
September Rea (SBN 261121)
  srea@ftllp.com
FREEDMAN & TAITELMAN, LLP
1901 Avenue of the Stars, Suite 500
Los Angeles, CA  90067
Telephone: (310) 201-0005
Facsimile:   (310) 201-0045

Attorneys for Defendants Keenen Ivory Wayans,Shawn Wayans,
Marlon Wayans, Wayans Bros. Productions and St. Martin's Press, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JARED EDWARDS,<br><br>                    Plaintiff<br><br>vs.<br><br>KEENEN IVORY WAYANS,<br>SHAWN WAYANS, MARLON<br>WAYANS, WAYANS BROS.<br>PRODUCTIONS, AND ST.<br>MARTIN'S PRESS, LLC,<br><br>                    Defendants. | CASE NO. 2:10-cv-02231 R (RCX)<br><br>[*Hon. Manuel Real, Courtroom 8*]<br><br>**DEFENDANTS' MOTION *IN LIMINE* NO. 1 TO LIMIT PLAINTIFF'S POTENTIAL RECOVERY OF PROFITS TO GROSS REVENUE ATTRIBUTABLE TO THE ALLEGEDLY INFRINGING BOOK**<br><br>Date:          July 12, 2011<br>Time:          9:00a.m.<br>Courtroom:   8<br><br>[Declaration of Jesse Kaplan filed concurrently herewith] |

TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT Defendants Keenen Ivory Wayans, Shawn Wayans, Marlon Wayans, Wayans Bros. Productions (collectively, the "Wayans") will move this honorable Court on July 12, 2011 at 9:00 a.m., at the United States District Court for the Central District of California, located at 312 N. Spring Street, Los Angeles, CA 90012, Courtroom 8, before the Honorable Manuel L. Real, for an Order limiting plaintiff Jared Edward's ("Plaintiff") ability to recover profits attributable to the Wayans' alleged infringement pursuant to 17 U.S.C. § 504(b).

Specifically, the Wayans seek to preclude Plaintiff from recovering any gross revenue that the Wayans did not directly earn from the allegedly infringing book, *101 Ways to Know You're a Golddigger* ("*Golddigger*"). Preclusion of indirect damages is warranted as there is no causal nexus between the Wayans' alleged infringement in *Golddigger* and the indirect gross revenue ($334,000) that the Wayans derived from two other books in the "101 Ways" series of joke books. As only $166,000 (1/3) of the $500,000 advance earned by the Wayans can potentially be attributable to *Golddigger*, Plaintiffs' potential recovery of gross revenue cannot exceed that amount.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on June 15, 17 and 20, 2011.


Dated: June 22, 2011                    FREEDMAN & TAITELMAN, LLP


                                        By: _____/s/_____
                                            Jesse A. Kaplan, Esq.
                                            September Rea, Esq.
                                        Attorneys for Defendants Keenen Ivory
                                        Wayans, Shawn Wayans, Marlon Wayans,
                                        Wayans Bros. Productions, and St.
                                        Martin's Press, LLC

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.    Introduction.**

Instead of streamlining this litigation, plaintiff Jared Edwards ("Plaintiff") is insistent on protracting this matter by improperly pursuing remedies that are clearly unavailable.  Now that the Court has determined that Plaintiff is not entitled to punitive damages, statutory damages or attorney's fees, Plaintiff claims that he is entitled to recover profits that are completely unrelated to the allegedly infringing book.

Defendants Keenen Ivory Wayans, Shawn Wayans, Marlon Wayans, Wayans Bros. Productions (collectively, the "Wayans") are the authors of three illustrated joke books in the "101 Ways to Know" series (the "101 Ways Books"). Plaintiff alleges that the Wayans infringed upon his alleged copyright when the Wayans allegedly included some of Plaintiff's jokes in <u>one</u> of the 101 Ways books, *101 Ways to Know You're a Golddigger* ("*Golddigger*").  Critically, Plaintiff does not claim that the other two 101 Ways Books infringed upon his alleged copyright.

Although Plaintiff only claims that *Golddigger* infringes upon his alleged copyright, Plaintiff inexplicably seeks to recover the Wayans' gross revenue from all three books.  That is, unsatisfied with up to $166,000 in gross revenue attributable to *Golddigger* under the applicable publishing contract, Plaintiff seeks to recover $500,000, the entire advance that the publisher paid to the Wayans for <u>all three 101 Ways Books</u>.

In order to recover such indirect profits, Plaintiff is required to demonstrate a causal nexus between the Wayans' alleged infringement in *Golddigger*, and the advance they received for the two other 101 Ways Books.  Plaintiff, however, cannot do so.  As the Wayans' earnings from the two other 101 Ways Books are not even remotely or speculatively attributable to the Wayans' alleged

1  infringement in *Golddigger*, Plaintiff's potential recovery of the Wayans' gross

2  revenue must be limited to the $166,000 earned for *Golddigger*.

3  **II.**   **Factual Background.**

4      **A.**   **The Publishing Agreement**

5      On October 5, 2005, the Wayans entered into an agreement (the "Publishing

6  Agreement") with St. Martin's Press, LLC ("St. Martin's") as publisher whereby

7  the Wayans granted St. Martin's the exclusive right to print, publish, distribute and

8  sell three separate "101 Ways to Know" joke books (collectively, the "101 Ways

9  Joke Books") that the parties contemplated the Wayans would create at some point

10 in the future Declaration of Jesse Kaplan ('Kaplan Decl."), ¶ 3, Ex. 1).

11     Pursuant to the Publishing Agreement, St. Martin's agreed to pay the

12 Wayans an aggregate advance of $500,000 against earnings (the "Advance") on

13 the three 101 Ways Joke Books (Kaplan Decl., ¶ 3, Ex. 1).  This included an initial

14 payment of $250,001.00 upon signing of the Publishing Agreement and separate

15 payments of $41,666 upon the delivery of each book and $41,667 upon the release

16 of each book (Kaplan Decl., ¶ 3, Ex. 1).[1]  As a result, the Publishing Agreement

17 contemplated payment of $166,000 to the Wayans for each of the three 101 Ways

18 Joke Books.

19     **B.**   **The 101 Ways Joke Books.**

20     Subsequently, the Wayans delivered three separate 101 Ways Books to St.

21 Martin's pursuant to the Publishing Agreement: 1) *101 Ways to Know You are*

22 *Having a Ghetto Christmas*; 2) *101 Ways to Know its Time to Move Out of your*

23 *Mamma's House*; and 3) *Golddigger*.  Notably, *Golddigger* was the final 101

24 Ways Book in the series that the Wayans prepared and delivered to St. Martin's.

25     Because the 101 Ways Books, in particular *Goldigger*, was commercially

26 ──────────────

27 [1] For example, the Publishing Agreement contemplated an advance of $41,667.00 upon the
   delivery of the first 101 Ways Joke Book, an advance of $41,666.00 upon the publication of the
28 first 101 Ways Joke Book, and so on and so forth.

1    unsuccessful,[2] the Wayans' earnings under the Publishing Agreement did not

2    exceed the Advance.

3         **C.    St. Martin's December 15, 2006 Letter.**

4              On or about December 15, 2006, after the Wayans had delivered *101 Ways*

5    *to Know You are Having a Ghetto Christmas*, the first book in the series, St.

6    Martin's sent the Wayans a letter regarding their failure to complete the second

7    101 Ways Book (Kaplan Decl., ¶ 4, Ex. 2).[3]  That letter indicated that if the

8    Wayans failed to deliver the second book in the series and St. Martin's terminated

9    the Publishing Agreement with respect to that second book only, the Wayans

10   would be required to return $83,333.66 of the $250,001.00 advance that St.

11   Martin's paid upon signing attributable to the second 101 Ways Book (Kaplan

12   Decl., ¶ 4, Ex. 2).  Specifically, St. Martin's indicated that "If St. Martin's

13   terminates the Agreement with respect to book #2, the $83,333.66 advanced to you

14   with respect to that book will have to be repaid immediately." (Kaplan Decl., ¶ 4,

15   Ex. 2) (emphasis added).

16             Clearly, only one-third of the total Advance was attributable to each of the

17   contemplated 101 Books under the Publishing Agreement.

18        **D.    Plaintiff's Copyright Infringement Claim Based on Golddigger.**

19             Plaintiff, a former Wayans employee, claims that he owns the copyright in

20   certain jokes he wrote for the Wayans.  Plaintiff claims that the Wayans used his

21   jokes in *Golddigger*.  As a result, Plaintiff asserts that *Golddigger* infringes upon

22   Plaintiff's alleged copyright.  Plaintiff does not claim that any of the other 101

23   Ways Books are infringing.

24   / / /

25

26   ---
     [2] *Golddigger* only grossed approximately $5,400.

27   [3] The Wayans would ultimately deliver *101 Ways to Know its Time to Move Out of your*
28   *Mamma's House* as the second 101 Ways Book.

DEFENDANTS' MOTION IN LIMINE NO. 1

### III.   The Meet and Confer.

During the meet and confer process, Plaintiff's counsel was asked on multiple occasions to articulate the causal nexus between the Wayans' alleged infringement in *Golddigger* and the advance they earned from the two other books.

Plaintiff's counsel initially responded by claiming that Plaintiff did not want to "handcuff" himself at trial (Kaplan Decl., ¶¶ 8-9, Ex. 5).  While cryptic at best, Plaintiff's counsel ultimately claimed that recovery of the entire $500,000 advance was appropriate since the Publishing Agreement was an "all or nothing deal," and that if any one of the three 101 Ways Books were not completed, the deal could have fallen apart (Kaplan Decl., ¶¶ 10-11, Ex. 6).  Plaintiff, however, was unable to articulate any causal nexus between the alleged infringement in *Golddigger* and the portion of the advance the Wayans received for the other two 101 Ways books (Kaplan Decl., ¶¶ 10-11, Ex. 6).

### IV.   Plaintiff Cannot Recover Indirect Profits Attributable To The Two Other 101 Ways Books.

Assuming Plaintiff establishes that *Golddigger* is infringing, Plaintiff's potential recovery must be limited to the $166,000 in direct gross revenue that St. Martin's paid to the Wayans for *Golddigger*.  That is, as there is no causal nexus between the Wayans' alleged infringement in *Golddigger* and the indirect gross profits the Wayans derived from the two other 101 Ways Books, Plaintiff cannot possibly recover any portion of the Advance over $166,000.

The copyright owner is entitled to recover . . . any profits of the infringer that are attributable to the infringement . . ." 17 U.S.C. § 504(b); *Mackie v. Rieser*, 296 F.3d 909, 914 (9th Cir. 2002). "Indirect profits" constitute "revenue that has a more attenuated nexus to the infringement." *Mackie*, 296 F.3d at 914.  Indirect profits cases typically involve a defendant using a copyrighted work to sell another product. *See, e.g., Polar Bear Prods. v. Timex Corp.*, 384 F.3d 700 (9th Cir. 2004) (involving defendant's use of copyrighted film footage in trade shows and a

1   booklet to sell its watches); *Mackie*, 296 F.3d at 909 (involving defendant's use of

2   copyrighted artwork in direct-mail subscription campaign to sell symphony

3   tickets).

4        Plaintiff's ability to recover the Wayans' indirect profits is extremely

5   limited.  A "copyright holder must establish the existence of a causal link before

6   indirect profits damages can be recovered." *Mackie*, 296 F.3d at 914. 17 U.S.C. §

7   504(b) "creates a two-step framework for recovery of indirect profits: 1) the

8   copyright claimant must first show a causal nexus between the infringement and

9   the gross revenue; and 2) once the causal nexus is shown, the infringer bears the

10  burden of apportioning the profits that were not the result of infringement." *Polar*

11  *Bear Productions, Inc. v. Timex Corp.,* 384 F.3d 700, 711 (9th Cir.2004).  A

12  "copyright owner is required to do more initially than toss up an undifferentiated

13  gross revenue number; the revenue stream must bear a legally significant

14  relationship to the infringement." *Polar Bear Productions*, 384 F.3d at 711. "Such

15  an approach dovetails with common sense -- there must first be a demonstration

16  that the infringing acts had an effect on profits before the parties can wrangle about

17  apportionment. To do otherwise would be inconsistent with both rudimentary

18  principles of tort law, to which copyright is often analogized." *Mackie*, 296 F.3d at

19  915. "When an infringer's profits are only remotely and speculatively attributable

20  to infringement, courts will deny recovery to the copyright owner." *Polar Bear*

21  *Productions*, 384 F.3d at 711 (quoting 4 Nimmer on Copyright, § 14.03, 14-34).

22       Here, Plaintiff cannot identify any causal nexus between the portion of the

23  Advance attributable to the other two 101 Ways Books ($334,000) and the

24  Wayans' alleged infringement in *Golddigger*.  Moreover, even if the Publishing

25  Agreement was an "all or nothing deal" as suggested by Plaintiff's counsel during

26  the meet and confer process, Plaintiff has failed to explain why more than one-

27  third of the Advance on the three books could be the product of the alleged

28  infringement in *Golddigger*.  The portion of the Advance in excess of $166,000 is

1   not even remotely or speculatively attributable to the alleged infringement in

2   *Golddigger*.

3

4   Dated: June 22, 2011                     FREEDMAN & TAITELMAN, LLP

5                                            By:    ____/s/_____

6                                                   Jesse Kaplan, Esq.
                                                    September Rea, Esq.
7                                            Attorneys for Defendants Keenen Ivory
                                             Wayans, Shawn Wayans, Marlon Wayans,
8                                            Wayans Bros. Productions, and St.
                                             Martin's Press, LLC

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' MOTION IN LIMINE NO. 1